STEPHEN R. BASSER (121590)
SAMUEL M. WARD (216562)
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone:  (619) 230-0800
Facsimile:  (619) 230-1874
sbasser@barrack.com
sward@barrack.com

JEFFREY A. BARRACK*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-0600
Facsimile:   (215) 963-0838
jbarrack@barrack.com
*Pro Hac Vice* application to be filed

  *Counsel for the UK Public Pension Funds and
  Proposed Lead Council for the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| THE TRUSTEES OF THE WELFARE AND PENSION FUNDS OF LOCAL 464A – PENSION FUND, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ENPHASE ENERGY, INC., BADRINARAYANAN KOTHANDARAMAN, and RAGHUVEER BELUR, <br><br> Defendants. | CASE NO. 4:24-CV-09038-JST <br><br><br> **UK PUBLIC PENSION FUNDS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL** <br><br><br> Date:        April 10, 2025 <br> Time:        2:00 P.M. <br> Judge:      Jon S. Tigar <br> Courtroom: 6 – 2nd Floor |

UK PUBLIC PENSION FUNDS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

**TABLE OF CONTENTS**

STATEMENT OF ISSUES ...............................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

    I.      PRELIMINARY STATEMENT ......................................................................................1

    II.     ARGUMENT ...................................................................................................................3

        A.    UK Funds Meet the Clarion Call of Congress for Participation of Institutional Investors ........3

        B.    UK Funds Possess the Largest Financial Interest in the Relief Sought by the Class .................4

            1.    UK Funds Purchased the Largest Number of Shares ................................................7

            2.    UK Funds Are the Largest Net Purchaser of Shares ................................................7

            3.    UK Funds Have the Largest Net Investment ...........................................................8

            4.    UK Funds Suffered the Largest Loss .......................................................................8

        C.    UK Funds Meet the Required Prima Facia Showing of Adequacy and Typicality Under Rule 23 .......................................................................................................................10

            1.    UK Funds' Interests Are Aligned with the Class ..................................................10

            2.    HANSAINVEST Raises Possible Concerns of a Litigation Sideshow .................11

CONCLUSION.............................................................................................................................14

**TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Alkhoury v. Lululemon Athletica, Inc.,* No. 13 Civ. 4596,
    2013 WL 5496171 (S.D.N.Y. Oct. 1, 2013) ................................................................ 10

*Backe v. Novatel Wireless,* Nos. 08–CV–01689–H (RBB),
    08–CV–01714–H (RBB), 2008 WL 521426 (S.D. Cal., Dec. 10, 2008) ............................... 3

*Bao v. SolarCity Corp.,* No. 14-cv-01435-BLF,
    2014 WL 3945879 (N.D. Cal. Aug. 11, 2014) ................................................................ 10

*Baydale v. Am., Esp. Co.,* No. 09 Civ. 3016 (WHP),
    2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) ................................................................ 13

*Borochoff v. Glaxosmithkline PLC*,
    246 F.R.D. 201 (S.D.N.Y. 2007) ................................................................................... 13

*Bricklayers & Allied Craftworkers Loc. #2 Albany NY Pension Fund v. New Oriental Educ. & Tech.
Grp., Inc.,* 22 Civ. 1014 (VM)
    22 Civ. 1876 (VM), 2022 WL 1515451 (S.D.N.Y. May 13, 2022) ..................................... 13

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, Nos. 17 CV 1677,
    2017 WL 6028213 (N.D. Ohio Dec. 5, 2017) ................................................................... 9

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.,* No. 11-CV-04003-LHK,
    2012 WL 78780 (N.D. Cal. Jan. 9, 2012) ......................................................................... 4

*Das v. Unify Software, Inc.,* No. 5:22-CV-03962-EJD,
    2023 WL 1927739 (N.D. Cal. Feb. 10,2023) ..................................................................... 3

*Doherty v. Pivotal Software, Inc.* 3:19-CV-03589-CRB,
    2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) ..................................................................... 3

*Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Cap. Advisors*,
    498 F.3d 920, 922 (9th Cir. 2007) ................................................................................. 12

*Felix v. Symantec Corp.,* No. C 18-02902 WHA
    2018 WL 4029053 (N.D. Cal. Aug. 23, 2018) ................................................................ 11

*Feyko v. Yuhe Int'l Inc.,* No. CV 11–05511 DDP
    (PJWx), 2012 WL 682882 (C.D. Cal., Mar. 2, 2012) ........................................................ 3

*Foley v. Transorgan, Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. Jan. 3, 2011) ......................................................................... 13

*Green v. Gerber Prods. Co.*,
    262 F. Supp. 3d 38 (E.D.N.Y. 2017) .............................................................................. 12

*Gross v. AT&T Inc.,* 19-CV-2892
    (VEC), 2019 WL 3500496 (S.D.N.Y. July 31, 2019) ....................................................... 11

UK PUBLIC PENSION FUNDS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD
COUNSEL

*Hanon v. Dataproducts Corp.*,
　976 F.2d 497 (9th Cir. 1992) ........................................................................................................ 11

*Hessefort v. Super Micro Comput., Inc.*,
　317 F. Supp. 3d 1056 (N.D. Cal. 2018) ........................................................................................ 10

*In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, et al.
　2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ................................................................................. 11

*In re Cavanaugh*,
　306 F.3d 726 (9th Cir. 2002) ......................................................................................................... 4

*In re Imax Secs. Litig.,* Master File No. 06-cv-612S
　(NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009) ................................................................ 12

*In re McKesson HBOC, Inc. Sec. Litig.*,
　97 F. Supp. 2d 993 (N.D. Cal. 1999) ............................................................................................. 8

*In re Mersho*,
　6 F. 4th 891 (9th Cir. 2021) ........................................................................................................... 3

*In re Network Assoc., Inc. Sec. Litig.*,
　76 F. Supp. 2d 1017 (N.D. Cal. 1999) ........................................................................................... 7

*In re Nike Inc. Sec. Litig.,* Case No. 3:24-cv-00974-AN,
　2024 WL 4579499 (D. Or., Oct. 25, 2024) ................................................................................. 13

*In re Olsten Corp. Sec Litig.*,
　3 F. Supp. 2d. 286 (E.D.N.Y. 1998) ........................................................................................... 4, 7

*In re SolarCity Corp. Sec. Litig.,* Nos. 16-CV-04686-LHK et al.,
　2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan 25, 2017) ............................................................ 10

*Jayce v. Forescout Techs., Inc.,* Case No. 20-cv-00076-SI,
　2020 WL 6802469 (N.D. Cal. Nov. 19, 2020) ............................................................................. 11

*Kowalski v. Tesmer*,
　543 U.S. 125 (2004) ..................................................................................................................... 12

*Lax v. First Merchants Acceptance Corp.,*
　No. 97-C-2715-DHC, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ............................................... 4

*Nicolow v. Hewlett-Packard Co.,* Nos. 12-05980 CRB et al.,
　2013 WL 792642 (N.D. Cal. Mar. 4, 2013) .................................................................................... 4

*Perlmutter v. Intuitive Surgical, Inc.* Case No. 10-CV-03451-LHK,
　2011 WL 56681 (N.D. Cal. Feb. 15, 2011) .................................................................................... 8

*Police & Fire Ret. Sys. of City of Detroit v. Safenet, Inc.,* No. 06 Civ. 5797,
　2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) ............................................................................... 10

*Richardson v. TVIA, Inc.,* No. C-06-06304 RMW,
　2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ....................................................................... 4, 8, 11

iv

*Schriver v. Impac Mortg. Holdings, Inc.,* Case No. SACV 06-81 CJC,
2006 WL 68860 (C.D. Cal. May 2, 2006) ............................................................................... 4

*Schueneman v. Arena Pharms. Inc.,* No. 10-CV-1959-BTM,
2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ........................................................................... 7

*South Ferry LP No. 2 v. Killinger,*
271 F.R.D. 653 (W.D. Wash. Jan. 6, 2011) ........................................................................... 13

*Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.,* Civil Action Nos. 11–6247
(JBS/KMW)–7085 (JBS/KMW), 2012 WL 3638629 (D.N.J. Aug. 22, 2012) .................... 11

*W.R. Huff Asset Mgmt. Co. LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008) .................................................................................................. 12

*Xu v. FibroGen, Inc.,* Case No. 21-cv-02623-EMC
2021 WL 3861454 (N.D. Cal. Aug. 30, 2021) ........................................................................ 3

*Youakim v. Isilon Sys.,* No. 07-1764 MJP,
2008 WL 11343655 (W.D. Wash. Feb. 4, 2008) ..................................................................... 4

**Statutes**

15 U.S.C. § 78u-4 (a)(3)(B) ..................................................................................................... 1
15 U.S.C. § 78u-4 (a)(3)(B)(i) ................................................................................................. 1
15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................................ 1
15 U.S.C. § 78u-4(a)(3)(B)(v). ................................................................................................ 1
15 U.S.C § 78u-4(a)(3)(B)(iii)(II)(bb) ................................................................................... 11

**Rules**

Rule 23 ............................................................................................................................ *passim*

UK Public Pension Funds ("UK Funds"), consisting of the Cheshire Pension Fund and the Rhondda Cyon Taf Pension Fund, respectfully submit this Memorandum of Points and Authorities in Opposition to the Competing Motions for Appointment of Lead Plaintiff and Approval of Selection of Lead Counsel.

## STATEMENT OF ISSUES

1**.** Whether the UK Public Pension Funds, consisting of the Cheshire Pension Fund and the Rhondda Cyon Taf Pension Fund, are the "most adequate plaintiff," pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(i).

2**.** Whether the Court should appoint the UK Public Pension Funds' selection of Barrack, Rodos & Bacine as lead counsel, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

On February 11, 2025, there were five motions filed in this Action for appointment of lead plaintiff and approval of lead counsel.[1] Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), this Court is required to appoint as lead plaintiff the movant that is "most capable of adequately representing the interest" of Class members. 15 U.S.C. § 78u4(a)(3)(B). To that end, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that has the "largest financial interest in the relief sought by the Class" and "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The UK Funds are sophisticated public pension funds and institutional investors whose appointment as lead plaintiff would be consistent with the PSLRA's preference for the appointment of institutional investors as class representatives in securities class actions. The Cheshire Pension Fund provides pension benefits, long term disability, and other benefits to employees of local governments and other qualifying organizations in England, and manages long term investments valued in excess of £6.6

---

[1] The motions were filed by HANSAINVEST (Dkt. No. 16), Jeffrey Schumacher & Haridarshan Singh (Dkt. No. 20), Curt L. Cother (Dkt. No. 24), UK Funds (Dkt. No. 31) and Plymouth County Retirement Association (Dkt. No. 37). Movant UK Funds, as a consequence of an inadvertent oversight and without intending to disrespect the Court, filed its moving papers on the required date, but after 5:00 p.m. Pacific. We apologize and respectfully request that the Court not allow this to distract from the important substantive issues under consideration.

UK PUBLIC PENSION FUNDS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

billion (approximately $8.23 billion). As reflected in its certification, Cheshire purchased a significant amount of Enphase Energy, Inc. ("Enphase") common stock on the NASDAQ exchange during the Class Period and incurred a substantial loss as a result of the violations of the federal securities laws as alleged in this Action. *See* Jones Cert., filed as Exhibit 1 to the Declaration of Samuel M. Ward filed February 11, 2025 ("Ward Decl."). The Rhondda Cynon Taf Pension Fund, one of the largest occupational pension plans in Wales, which provides pensions, long term disability, and other benefits to over 60,000 people, manages investments valued in excess of £4.7 billion (approximately $5.93 billion). As reflected in its certification, Rhondda also purchased a significant amount of Enphase common stock during the Class Period and incurred a substantial loss as a result of the violations of the federal securities laws as alleged in this action. *See* Davies Cert., filed as Ex. 2 to the Ward Decl.

Collectively, during the class period asserted in this Action which runs from April 25, 2023 through October 22, 2024 (the "Class Period"), the UK Funds (i) purchased 69,892 shares of Enphase common stock; (ii) expended $7,539,948 on their purchases of Enphase common stock; (iii) retained all of their shares of Enphase common stock through the end of the Class Period; and (iv) as a result of the disclosures of the fraud, incurred losses of approximately $2.512 million in connection with their Class Period purchases of Enphase common stock. As shown below, when their financial interest is analyzed in accordance with the well accepted Lax factors adopted by courts within the Ninth Circuit, and the losses claimed by competing movants are appropriately accounted for and calculated, it becomes clear that the UK Funds possess the largest financial interest in the relief sought in this Action.

Beyond having the largest financial interest in the relief sought in the Action, the UK Funds also meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class. In that regard, the UK Funds' *prima facia* showing of adequacy and typicality satisfying Rule 23 stands in contrast to movant HANSAINVEST, whose submission raises potential issues that could create distractions regarding its ability to pursue the claims in this case and/or withstand an opposition to be appointed a class representative in the event that the defendants choose to oppose that appointment during class certification on adequacy or typicality grounds.

Given that the UK Funds possess the largest financial interest in the outcome of the litigation, having purchased the largest number of shares in total and, especially on a net basis, made the largest net investment of all movants, and – when all movants' losses are appropriately calculated using a rational and fair methodology – suffered the largest loss of any movant, the UK Funds respectively request appointment as Lead Plaintiff for the putative Class, and the approval of their selection of Barrack, Rodos & Bacine as Lead Counsel.

## II.    ARGUMENT

### A.  UK Funds Meet the Clarion Call of Congress for Participation of Institutional Investors

UK Funds are two large and sophisticated institutional investors.  As such, their appointment would be consistent with the PSLRA's preference for the appointment of institutional investors as class representatives in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995) ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").[2]  Moreover, courts within the Ninth Circuit have consistently recognized the appropriateness of appointing a grouping of institutional investors that demonstrate an ability and willingness to represent the interests of the class.  *See Das v. Unify Software, Inc.*, No. 5:22-CV-03962-EJD, 2023 WL 1927739, *1 (N.D. Cal. Feb. 10, 2023 (appointing as lead plaintiff a group of institutional investors); *In re Mersho*, 6 F. 4th 891, 903 n. 4 (9th Cir. 2021) ("[I]t is clear from the statutory language" that "group(s) can serve as a lead plaintiff[.]");*Doherty v. Pivotal Software, Inc.* 3:19-CV-03589-CRB, 2019 WL 5864581, *11-12 (N.D. Cal. Nov. 8, 2019) (appointing group of institutional investors as lead plaintiff); *Xu v. FibroGen, Inc.*, Case No. 21-cv-02623-EMC 2021 WL 3861454, *16 (N.D. Cal. Aug. 30, 2021) (same).

---

[2]  *See also, e.g., Backe v. Novatel Wireless*, Nos. 08–CV–01689–H (RBB), 08–CV–01714–H (RBB), 2008 WL 521426, *12 (S.D. Cal., Dec. 10, 2008)  (noting that movant was "the sort of lead plaintiff envisioned by Congress in the enactment of the PSLRA – a sophisticated institutional with a real financial interest in the litigation"); *Feyko v. Yuhe Int'l Inc.*, No. CV 11–05511 DDP (PJWx), 2012 WL 682882, *3 (C.D. Cal., Mar. 2, 2012) (appointing institutional investor as lead plaintiff, finding it to be "exactly the type of sophisticated market participant[] Congress intended to take on the role of lead plaintiff following the PSLRA's reforms").

3

UK PUBLIC PENSION FUNDS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

**B. UK Funds Possess the Largest Financial Interest in the Relief Sought by the Class**

Neither the Ninth Circuit nor the PSLRA establishes a standard or specific procedure for determining or calculating which investor has the "largest financial interest" in the relief sought by the class. *Schriver v. Impac Mortg. Holdings, Inc.*, Case No. SACV 06-81 CJC, 2006 WL 68860, *5-8 (C.D. Cal. May 2, 2006); *In re Cavanaugh,* 306 F.3d 726 (9th Cir. 2002).

In an effort to determine which movant possesses the "largest financial interest" in the relief sought by the putative Class, and in accord with courts nationwide, the so-called Lax factors have been adopted by courts in the Ninth Circuit. *See, e.g., Nicolow v. Hewlett-Packard Co.*, Nos. 12-05980 CRB et al.*,* 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) ("District Courts commonly refer to the four-factor [LAX] test, which considers (1) total shares purchased, (2) net shares purchased, (3) net funds expended, and (4) approximate losses suffered"); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 WL 78780, *3-4 (N.D. Cal. Jan. 9, 2012); *Richardson v. TVIA, Inc.,* No. C-06-06304 RMW, 2007 WL 1129344, *3 (N.D. Cal. Apr. 16, 2007); *Youakim v. Isilon Sys.,* No. 07-1764 MJP, 2008 WL 11343655, *2-3 (W.D. Wash. Feb. 4, 2008); *see also Lax v. First Merchants Acceptance Corp*., No. 97-C-2715-DHC, 1997 WL 461036, *2 (N.D. Ill. Aug. 11, 1997) and *In re Olsten Corp. Sec Litig.,* 3 F. Supp. 2d. 286, 295 (E.D.N.Y. 1998)).

Because the PSLRA is silent on how to assess the financial interests of competing movants, "the court may select accounting methods that are both rational and consistently applied" in order to "compare the financial stakes of the various plaintiffs and determine which one has the most to gain." *In re Cavanaugh*, 306 F.3d at 730 & n.4. Under the Lax factor analysis, and as more fully discussed below, movant UK Funds is presumptively the most adequate lead plaintiff. Table A below at page 6 summarizes the Lax factors for UK Funds, HANSAINVEST and Messrs. Schumacher and Singh, the three applicants with the most share purchases and investments in Enphase stock, and provides similar information in a footnote for the other two. But before comparing each movants' Lax factors, it is necessary to analyze the motion filed by HANSAINVEST, which shows that its purchases and sales of Enphase stock should be viewed in a unified, consolidated fashion rather than on the account-by-account basis that HANSAINVEST presented in its lead plaintiff motion.

UK PUBLIC PENSION FUNDS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

The Sworn Certification of Hansainvest Hanseatische Investment-GmbH, executed by its "Managing Director" and its "Head of Legal" ("HANSAINVEST Certification" or "Certification"), affirms and states that "[A]s capital management company for FondsSecure Systematik, Green Benefit Global Impact Fund, HANSApost Triselect, HANSAspezial 22, PGB Global Innovative Markets Equal Weight, RSA WeltWerte Fonds, STAREN ÖkoStars, and TBF SMART POWER (*which are not legal entities*)" …"HANSAINVEST Hanseatische Investment-GmbH represents the HANSAINVEST funds in all legal and financial matters." HANSAINVEST Certification, ¶ 4 (emphasis supplied). Tellingly, beyond confirming that it represents the accounts it manages in "all legal and financial matters," its Certification refers to "*Plaintiff's* Class Period purchase and sale transactions," and that "HANSAINVEST Hanseatische Investment-GmbH has full power and authority to bring suit to recover *its* investment losses" (emphasis supplied). HANSAINVEST is the sole legal entity respecting the transactions, administration and management of the accounts it sets up – which it has characterized as the "HANSAINVEST Funds" – thus further explaining and confirming that its sworn Certification is speaking for itself in terms of *Plaintiff's* Class Period "purchase and sale transactions" and its authority to sue "to recover for *its* investment losses." HANSAINVEST Certification, ¶¶ 3-4 (emphasis supplied).

As HANSAINVEST further admits, the identified accounts are not juridical entities. They have no legal existence. They cannot sue or prosecute any recovery. Moreover, they appear not to have title or ownership of the Enphase securities given that they are not legal entities according to HANSAINVEST. Since they are not legal entities, they cannot assign their rights, if any, to a third party. Indeed, they appear to lack such power precisely because – unlike an individual, trust, partnership, corporation, or pension fund – they do not have a legal existence or entity. In reality, HANSAINVEST is the alter ego of and for such accounts and the only entity capable or permitted to bring suit to recover "its" losses, arising from what are ostensibly "its" own investment management and decisions.

Since HANSAINVEST Hanseatische Investment-GmbH is the only legal entity with any right to commence suit and recover "its losses" from Defendants, and none of the accounts under its aegis and control exist as legal entities, UK Funds respectfully submits that it is most appropriate, rational, and fair to account for the losses for which HANSAINVEST seeks to recover using a unified approach, rather than a piecemeal, individual, non-legal entity, account-by-account approach that skews its numbers. Logic and

5

fairness dictate that one must assess HANSAINVEST's loss in the context of who the real transacting party is, rather than accumulating alleged losses of investment accounts with no legal status.

When viewed in this fashion, the following Table A and its footnote summarizes the results of the Lax factor analysis for the movants. The underlying information for movants in Table A is presented in a set of exhibits attached to the Declaration of Stephen R. Basser submitted herewith, as follows:

Exhibit 1: Cheshire Pension Fund LIFO Loss Chart;

Exhibit 2: Rhondda Cynon Taff Borough Council LIFO Loss Chart;

Exhibit 3: HANSAINVEST LIFO Loss Chart (presented in a consolidated fashion);[3] and

Exhibit 4: Jeffrey Schumacher and Haridarshan Singh LIFO Loss Chart.

The exhibits are taken from information supplied in each of these movants' certifications, including their beginning balances, if any, and their purchases and sales of Enphase stock by date, price, and amount.

---

[3] The HANSAINVEST Certification listed its accounts' opening balances at the start of the Class Period and their transactions in Enphase stock during the Class Period on an account-by-account basis. In contrast, and for the reasons stated above, Exhibit 3 shows the opening balance and each of those transactions in a unified, chronological fashion, from which we derived the unified LIFO loss, as well as the figures for HANSAINVEST's total shares purchased, net shares purchased, total investment, sales proceeds, and net investment in Table A. For purposes of calculating each of the applicants' LIFO losses, we utilized a consistent methodology for valuing all shares retained by each of the applicants at the end of the Class Period and the same last-in-first-out methodology.

UK PUBLIC PENSION FUNDS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

**Table A**

| Competing Movants' Lax Factor Summary[4] | | | |
|---|---|---|---|
| | **UK Funds** | **HANSAINVEST** | **Schumacher & Singh** |
| Shares Purchased | 69,892 | 47,905 | 54,660 |
| Shares Sold | 0 | 43,600 | 47,700 |
| Net Shares Purchased | 69,892 | 4,305 | 6,960 |
| Investment ($) | 7,539,948 | 6,888,366 | 6,299,600 |
| Sales Proceeds ($) | 0 | 5,344,422 | 5,585,808 |
| Net Investment ($) | 7,539,948 | 1,543,944 | 713,792 |
| LIFO Total Loss ($) | -2,512,050 | -1,608,812 | -210,523 |

### 1.  UK Funds Purchased the Largest Number of Shares

The first factor set forth in the Lax analysis is the number of shares purchased during the class period. *See In re Olsten Corp.,* 3 F. Supp. 2d at 295, citing *Lax*, 1997 WL 461036, at *2.  During the Class Period, the UK Funds purchased a total of 69,892 shares of Enphase stock. As Table A above shows, UK Funds is the largest purchaser of shares during the Class Period, with significantly more shares purchased than any other movant.

### 2.  UK Funds Are the Largest Net Purchaser of Shares

The second Lax factor is the number of net shares purchased during the class period. *See In re Olsten Corp.,* 3 F. Supp. 2d at 295, citing *Lax*, 1997 WL 461036, at *2.  In *Schueneman v. Arena Pharms. Inc.*, No. 10-CV-1959-BTM, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011), the court named the lead plaintiff on the presumption that the movant with "the most net shares purchased will normally have the largest potential damage recovery." *Id.* at *4, quoting *In re Network Assoc., Inc. Sec. Litig.,* 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999).  Here, as set forth in Table A above, the UK Funds with net purchases of 69,892

---

[4]  We note that on February 24, 2025, Schumacher/Singh filed a Statement of Non-Opposition to the competing motions (Dkt No. 47).  The two remaining movants – Mr. Cotner and the Plymouth County Retirement Association – have far fewer purchases and losses than UK Funds.  Mr. Cotner purchased only 2,100 shares; had no Class Period sales; made a net investment of $382,800 in Enphase stock; and suffered a LIFO loss of $232,311.  Plymouth County purchased just 4,288 shares and sold 489 shares during the Class Period, for net purchases of 3,799 shares; made a net investment of $524,292; and suffered a LIFO loss of $235,116.

7

UK PUBLIC PENSION FUNDS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

shares is the largest net purchaser during the Class Period by a wide margin. In fact, the UK Funds' net purchase of Enphase shares is *16.23 times higher* than HANSAINVEST's net purchase of shares.

### 3. UK Funds Have the Largest Net Investment

The third Lax factor is a determination of which plaintiff made the largest net investment of during the class period. *See In re Olsten Corp.,* 3 F. Supp. 2d at 295, citing *Lax*, 1997 WL 461036, at *2. This calculation is made by subtracting cash receipts for sales of Enphase stock during the class period from cash expenditures during the same period. *See In re McKesson HBOC, Inc. Sec. Litig.,* 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999). This factor is significant because "[a] net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed." *Id.* As indicated in Table A above, UK Funds had a net investment of $7,539,948 during the Class Period. The next closest net investment is HANSAINVEST's net investment of only $1,543,944 – almost *$6 million lower* than that of UK Funds.

### 4. UK Funds Suffered the Largest Loss

For purposes of analyzing competing lead plaintiff motions, two different accounting methods for the calculation of losses have been recognized: the last in, first out ("LIFO") method and the first in, first out method ("FIFO") method. Under the LIFO method, the plaintiff's stock sales during the class period are matched first against the plaintiff's most recent purchases of the shares, and gains or losses from those transactions are considered. Under the FIFO method, losses are calculated on the assumption that stocks that are acquired first are sold first. In the context of calculating claimed losses at the lead plaintiff motion stage, courts within the Northern District favor the LIFO method. *See Richardson,* 2007 WL 1129344, at *4 (applying LIFO). *See also Perlmutter v. Intuitive Surgical, Inc.* Case No. 10-CV-03451-LHK, 2011 WL 56681, *10 (N.D. Cal. Feb. 15, 2011) ("the Court finds the arguments in favor of LIFO more persuasive and will place more weight on the losses calculated using that method").

It is thus appropriate here to compare the movants' losses under LIFO. Upon doing so, and as summarized in Table A above, UK Funds have the largest LIFO loss, which is well in excess of the second highest loss of HANSAINVEST when its loss is appropriately calculated based on the facts asserted in its

sworn certification. UK Funds' loss, done on a LIFO basis, is $2,512,050.[5] Next is HANSAINVEST, with a LIFO loss of $1,608,812. And the other three movants have far lower losses between $210,000 and $236,000.

In its lead plaintiff motion, HANSAINVEST claims that it has a LIFO loss greater than UK Funds' loss, based on an approach and method of calculating its loss done on an account-by-account basis that, UK Funds respectfully submits, skews its loss to appear far higher than it would be if it deployed an accounting method that is "rational" and consistently applied by a juridical fund engaged in the purchase and sale transactions that seeks recovery of its losses. Specifically, HANSAINVEST represents that "HANSAINVEST suffered total losses of more than $2.8 million under a LIFO analysis in connection with *its* Class Period transactions in Enphase Common stock." HANSAINVEST's Memorandum of Points and Authorities in Support of its motion for appointment (Dkt. No. 16) ("HANSAINVEST Br.") at 6. HANSAINVEST states that "*it* seeks recovery of losses on *its* investments in Enphase Common Stock that *it* incurred," and that it is "the prototypical investor…." HANSAINVEST Br. at 6-7 (emphasis supplied). However, when the HANSAINVEST's opening balance and transactions in Enphase stock during the Class Period are calculated in a unified fashion, HANSAINVEST's LIFO loss totals $1,608,812. This loss is $903,238 less than that of UK funds, and more than $1.2 million lower than what HANSAINVEST is claiming based on its account-by-account methodology notwithstanding that the accounts are non-legal entities without a juridical existence.

Hence, when the Movants' losses are calculated appropriately, UK Funds, not HANSAINVEST or any other movant, has suffered the largest financial loss and it is UK Funds that has the largest financial interest in the relief sought in this Action ***based on each of the four Lax factors***. Importantly, where institutional investors have moved for appointment as lead plaintiff, several courts, recognizing the importance of all four of the *Lax* factors, have not attached primary significance to the amount of the loss rather than considering weighing them altogether with equal importance. *See e.g. City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.,* Nos. 17 CV 1677, 1958, 2017 WL 6028213, *3 (N.D. Ohio Dec. 5, 2017) ("[T]he Court finds that the difference in the approximate losses does not overcome

---

[5] UK Funds' LIFO loss in Table A is slightly lower than reported in their motion due to a small adjustment made to the retention shares sold during the 90 days following the end of the Class Period.

UK PUBLIC PENSION FUNDS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

the combined weight of the first three factors," giving equal weight to all four of the Lax factors); *Alkhoury v. Lululemon Athletica, Inc.,* No. 13 Civ. 4596, 2013 WL 5496171, *1 (S.D.N.Y. Oct. 1, 2013) (appointing movant that had smaller loss because first three factors weighed in its favor); *Police & Fire Ret. Sys. of City of Detroit v. Safenet, Inc.,* No. 06 Civ. 5797, 2007 WL 7952453, *2 (S.D.N.Y. Feb. 21, 2007) (same). Hence, even if the HANIAINVEST loss is calculated as an aggregate total of each non-legal entity account, UK Funds submits respectfully that the loss is not so much higher than UK Funds' loss that it overcomes the clear fact that the first three Lax factors tilt heavily in UK Funds' favor. In sum, when all the factors are considered, it is unquestionable that UK Funds have the largest financial interest in the outcome of this litigation – far exceeding all others, as reflected in Table A.

### C. UK Funds Meet the Required *Prima Facia* Showing of Adequacy and Typicality Under Rule 23

#### 1. UK Funds' Interests Are Aligned with the Class

As discussed above, UK Funds are public pension funds and prototypical institutional lead plaintiffs and investors. They easily satisfy the *prima facie* showing of typicality and adequacy necessary to be appointed to serve as the Lead Plaintiff in this Action. They invested over $7.5 million in Enphase stock and did not sell any of their acquired shares during the Class Period. They, like all proposed class members, are suing to recover for the losses incurred on their invested funds as a result of the defendants' alleged fraud. Indeed, UK Funds lost over $2.5 million on a LIFO basis. Thus, they clearly suffered a loss and, as the real party in interest, satisfy Article III standing. And their interests are totally aligned with the alleged Class as a whole. They stand willing and able to vigorously prosecute the claims for the Class.

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, a court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, a *prima facie* showing that the movant satisfies the "typicality" and "adequacy" requirements of Rule 23 is sufficient. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018); *Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 WL 3945879, *3 (N.D. Cal. Aug. 11, 2014). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured

10

by the same course of conduct.'" *Richardson*, 2007 WL 1129344, at *4 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). *See also*, *Felix v. Symantec Corp.*, No. C 18-02902 WHA, 2018 WL 4029053, *3 (N.D. Cal. Aug. 23, 2018). "This showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy." *In re SolarCity Corp. Sec. Litig.*, Nos. 16-CV-04686-LHK *et al.*, 2017 U.S. Dist. LEXIS 11553, *13 (N.D. Cal. Jan 25, 2017).

### 2.  HANSAINVEST Raises Possible Concerns of a Litigation Sideshow

A class representative's claim may not be typical if it is "subject to unique defenses which threaten to become the focus of the litigation" and prevents the representative's interests from "align[ing]" with those of the class. *Jayce v. Forescout Techs., Inc.*, Case No. 20-cv-00076-SI, 2020 WL 6802469, *4 (N.D. Cal. Nov. 19, 2020) (Illston, J.) (quoting *Hanon*, 976 F.2d at 508). The PSLRA precludes the appointment of a lead plaintiff that "is subject to unique defenses that render [it] incapable of representing the class." 15 U.S.C § 78u-4(a)(3)(B)(iii)(II)(bb). Accordingly, "[T]he PSLRA…provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense…; we do not have to determine that the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.,* Nos. 04 C 3530, et al., 2005 WL 627960, *6 (N.D. Ill. Mar. 15, 2005); *see also Gross v. AT&T Inc.,* 19-CV-2892 (VEC), 2019 WL 3500496, *2 (S.D.N.Y. July 31, 2019) ("Before disqualifying a potential lead plaintiff [as subject to a unique defense], the Court need not conclude the defense is likely to or will succeed. Rather, 'many courts have rejected appointments of lead plaintiffs based on potential risks.'"); *Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.,* Civil Action Nos. 11–6247 (JBS/KMW), 11–7085 (JBS/KMW), 2012 WL 3638629, *13 (D.N.J. Aug. 22, 2012) (denying motion by movants subject to unique defense, "declin[ing] to decide [the issue] at this time" because "[t]o decide the lead plaintiff motions, the Court need only decide whether the issue of standing is a unique defense that is ***likely*** to become a major focus at litigation") (emphasis supplied).

If HANSAINVEST were to be appointed Lead Plaintiff, the peculiarities of German law upon which it may ultimately rely to support Article III standing, and the evident incompleteness of its own submission that raises unanswered questions, could bear on it being appointed as the Class Representative

11

under Rule 23.  While UK Funds do not challenge HANSAINVEST's *prima facie* showing of Article III standing, defendants might well do so at a later stage in the litigation.  Indeed, based on the statements and representations in the HANSAINVEST Certification and in its motion papers, it is entirely possible that defendants will argue that HANSAINVEST does not have standing to sue under Article III and, even if it does, whether it can meet Rule 23's adequacy and typicality requirements.[6]

HANSAINVEST's Certification, at § 4, n.1, reveals that it provides investment and legal advice to the non-legal entity accounts, which it may have created and that it manages.  Investment advisors who do not have an assignment of claims from the funds they manage have been found to lack Article III standing. *See W.R. Huff Asset Mgmt. Co. LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) (investment advisors lack constitutional standing); *see also Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Cap. Advisors,* 498 F.3d 920, 922 n.1 (9th Cir. 2007) (pointing out that there is a divergence of authority on whether investment advisors have standing to serve as lead plaintiff in a securities class action); *In re Imax Secs. Litig.*, Master File No. 06-cv-612S (NRB), 2009 WL 1905033, *3 (S.D.N.Y. June 29, 2009) (noting court's hesitance to appoint a lead plaintiff movant with questionable constitutional standing, since movant would face unique legal issues that other class members would not and its appointment "could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal").

HANSAINVEST may very well claim that it fits into a narrow "prudential exception" to the Article III's injury-in-fact requirement, which permits third party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *Huff*, 549 F.3d at 109.  However, third-party standing is strongly disfavored, and thus narrowly construed and applied.  "[T]he Supreme Court has made clear that it does 'not look favorably upon third party standing' except in certain circumstances." *Green v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 56-57 (E.D.N.Y. 2017) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)).

---

[6]  UK Funds reserve the right to raise an issue of whether HANSAINVEST has adequately made a *prima facie* showing of Rule 23 adequacy and typicality after the opportunity to review any additional assertions made in HANSAINVEST's opposition brief and/or reply brief.  UK Funds, however, acknowledge that counsel for HANSAINVEST are adequate.

UK PUBLIC PENSION FUNDS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

Relying on *Foley v. Transorgan, Ltd.*, 272 F.R.D. 126, 134 (S.D.N.Y. Jan. 3, 2011), HANSAINVEST may submit that it is not a foreign "investment advisor" under *Huff* because, as a German fund, it maintains exclusive control over the money it receives, invests that money in its own name, and owns the assets it purchases. Or, relying on *In re Nike Inc. Sec. Litig.*, Case No. 3:24-cv-00974-AN, 2024 WL 4579499 (D. Or., Oct. 25, 2024), appointing a German investment manager over other institutional funds, it may contend that even if it is an investment advisor managing non-legal entity accounts, it is given sole authority to sue under German law – basically the power of attorney to act on behalf of accounts that have no ability to sue or assign any rights or claims as they are not legal entities. *See also, Bricklayers & Allied Craftworkers Loc. #2 Albany NY Pension Fund v. New Oriental Educ. & Tech. Grp., Inc.,* 22 Civ. 1014 (VM), 22 Civ. 1876 (VM), 2022 WL 1515451, *4 (S.D.N.Y. May 13, 2022) (rejecting standing challenge to German fund manager contending it lacked authority to sue on its own).

Here, the issues that might be raised requiring the Court's consideration that may bear on unique defenses or the adequacy of HANSAINVEST could be a distraction and an unwelcome "sideshow." It is likely that there are novel issues of law relevant to a German fund, or an investment advisor, that will require extensive factual and foreign legal analysis. *See, e.g.*, *Baydale v. Am., Esp. Co.*, No. 09 Civ. 3016(WHP), 2009 WL 2603140, *2-3 (S.D.N.Y. Aug. 14, 2009) (where a foreign investment advisor sought to be a lead plaintiff, noting that the advisor's status "raises complex and novel issues of law" which would be a "needless side-show"); *South Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653, 655, 659 (W.D. Wash. Jan. 6, 2011) (ruling that the lead plaintiff is "a capital investment company headquartered in Germany" that "claimed standing from its position as an investment manager" was not an adequate class representative, and that the "uncertain standing of a class representative creates unique legal issues for that plaintiff and destroys its typicality and adequacy as a class representative"); *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 203 (S.D.N.Y. 2007) (denying lead plaintiff status to German entity). Such a diversion would create needless litigation if HANSAINVEST were appointed, thereby providing yet another reason for appointment as Lead Plaintiff of UK Funds rather than HANSAINVEST.

UK PUBLIC PENSION FUNDS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

**CONCLUSION**

For the foregoing reasons, and those stated in the UK Funds' opening motion and brief, UK Funds respectfully submit that they possess the largest financial interest in the relief sought by the litigation and that potential unique defenses undermine HANSAINVEST's motion.  Accordingly, UK Fund request that they be appointed to serve as Lead Plaintiff and that their selection of Barrack, Rodos & Bacine as Lead Counsel be approved.

DATED:  February 25, 2025

Respectfully submitted,

BARRACK, RODOS & BACINE
STEPHEN R. BASSER
SAMUEL M. WARD

/s/ STEPHEN R. BASSER

600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:   (619) 230-1874

JEFFREY A. BARRACK*
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
E-mail:  jbarrack@barrack.com
Telephone:  (215) 963-0600
Facsimile:   (215) 963-0838

*Counsel for the UK Public Pension
Funds and Proposed Lead Counsel
for the Class*

*Pro Hac Vice* application to be filed

UK PUBLIC PENSION FUNDS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL