**KESSLER TOPAZ MELTZER**
  **& CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
(jjoost@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:    (415) 400-3000
Fax:    (415) 400-3001

*Counsel for Proposed Lead Plaintiff HANSAINVEST*
*Hanseatische Investment-GmbH and Proposed Lead*
*Counsel for the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| THE TRUSTEES OF THE WELFARE AND PENSION FUNDS OF LOCAL 464A – PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    v.<br><br>ENPHASE ENERGY, INC., BADRINARAYANAN KOTHANDARAMAN, and RAGHUVEER BELUR,<br><br>               Defendants. | Case No. 4:24-cv-09038-JST<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF HANSAINVEST HANSEATISCHE INVESTMENT-GMBH FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>**CLASS ACTION**<br><br>Date: April 10, 2025<br>Time: 2:00 p.m.<br>Place: Courtroom 6 – 2nd Floor<br>Judge: Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

STATEMENT OF ISSUES ...................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES......................................................... 1

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     ARGUMENT .............................................................................................................. 3

        A.      HANSAINVEST Is the Presumptive Lead Plaintiff .................................... 3

                1.      HANSAINVEST Properly Calculated Its Losses ........................... 4

                2.      HANSAINVEST Has the Largest Financial Interest Under This
                        Court's Standard .............................................................................. 6

        B.      The UK Funds Do Not Challenge HANSAINVEST's Standing and Provide
                No "Proof" Rebutting Its Presumptive Status ................................................ 9

        C.      The UK Funds Cannot Meet the Requirements of the PSLRA ................................. 11

                1.      The UK Funds Failed to File a Timely Motion ............................. 11

                2.      The UK Funds Are Subject to Unique Defenses That Render Them
                        Atypical and Inadequate to Represent the Class ........................... 12

III.    CONCLUSION ........................................................................................................ 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alkhoury v. Lululemon Athletica, Inc.*,
   No. 13 Civ. 4596(KBF),
   2013 WL 5496171 (S.D.N.Y. Oct. 1, 2013) ......................................................................... 8, 9

*Baydale v. Am. Express Co.*,
   No. 09 Civ. 3016(WHP),
   2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) ....................................................................... 11

*In re: Beyond Meat, Inc. Derivative Litig.*,
   No. CV 20-963-MWF,
   2020 WL 6826482 (C.D. Cal. May 18, 2020).......................................................................... 9

*Bhangal v. Hawaiian Elec. Indus., Inc.*,
   No. 3:23-cv-04332-JSC,
   2023 WL 8482871 (N.D. Cal. Dec. 7, 2023) ......................................................................... 13

*Bodri v. GoPro, Inc.*,
   Nos. 16-cv-00232-JST, *et al.*,
   2016 WL 1718217 (N.D. Cal. Apr. 28, 2016)............................................................... 2, 6, 7, 8

*Bricklayers' & Allied Craftworkers Loc. #2 Albany NY Pension Fund v. New*
   *Oriental Educ. & Tech. Grp. Inc.*,
   Nos. 22 Civ. 1014 (VM), *et al.*,
   2022 WL 1515451 (S.D.N.Y. May 13, 2022). ..................................................................... 3, 10

*Cavanaugh v. U.S. Dist. Court for N. Dist. of Cal.*,
   306 F.3d 726 (9th Cir. 2002)...................................................................................... 1, 4, 5, 9

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
   Nos. 1:17 CV 1677, *et al.*,
   2017 WL 6028213 (N.D. Ohio Dec. 4, 2017)........................................................................... 8

*City of Taylor Police & Fire Ret. Sys. v. Western Union Co.*,
   No. 13-cv-03325-MSK-MJW,
   2014 WL 4799659 (D. Colo. Sept. 26, 2014) ....................................................................... 10

*Faris v. Longtop Fin. Techs. Ltd.*,
   No. 11 Civ. 3658(SAS),
   2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ..................................................................... 13, 14

*Hessefort v. Super Micro Comput., Inc.*,
   317 F. Supp. 3d 1056 (N.D. Cal. 2018)......................................................................... 2, 6, 8

*Hoang v. ContextLogic, Inc.*,
    No. 21-cv-03930-BLF,
    2022 WL 1539533 (N.D. Cal. May 16, 2022) .......................................................................... 6, 7

*Huang v. Depomed, Inc.*,
    289 F. Supp. 3d 1050 (N.D. Cal. 2017)........................................................................ 2, 6, 12

*In re: JCK Legacy Co.*,
    No. 20-10418 (MEW),
    2022 WL 3009619 (Bankr. S.D.N.Y. July 28, 2022) ............................................................ 12

*Leventhal v. Chegg, Inc.*,
    No. 5:21-cv-09953-EJD,
    2022 WL 4099454 (N.D. Cal. Sept. 7, 2022)......................................................................... 9

*Linder v. Golden Gate Bridge, Highway & Transp. Dist.*,
    No. 14-CV-03861 SC,
    2015 WL 1778608 (N.D. Cal. Apr. 17, 2015)...................................................................... 12

*Longo v. OSI Sys., Inc.*,
    No. LA 17-cv-08841 VAP (SKx),
    2018 WL 4860145 (C.D. Cal. Mar. 1, 2018) ....................................................................... 7

*Lundy v. Ideanomics, Inc.*,
    No. 20 Civ. 4944 (GBD),
    2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020)...................................................................... 13

*Melucci v. Corcept Therapeutics Inc.*,
    No. 19-CV-01372-LHK,
    2019 WL 4933611 (N.D. Cal. Oct. 7, 2019) ........................................................................ 7

*Mersho v. U.S. Dist. Court for D. of Ariz.*,
    6 F.4th 891 (9th Cir. 2021)................................................................................................ 9

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999)................................................................................ 7

*Nicolow v. Hewlett Packard Co.*,
    Nos. 12-05980 CRB, *et al.*,
    2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ...................................................................... 7, 8

*In re Nike, Inc. Sec. Litig.*,
    No. 3:24-CV-00974-AN,
    2024 WL 4579499 (D. Or. Oct. 25, 2024) ....................................................................*passim*

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
    63 F. Supp. 3d 394 (D. Del. 2014) ............................................................................... 10, 11

*Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*,
   Nos. 21-cv-08812-JST, *et al.*,
   2022 WL 3571995 (N.D. Cal. July 26, 2022) ............................................................................. 10

*Pampena v. Musk*,
   No. 22-cv-05937-CRB,
   2024 WL 4331811 (N.D. Cal. Sept. 27, 2024) ........................................................................... 13

*Patel v. Coinbase Glob., Inc.*,
   Nos. 22-4915 (BRM) (LDW), *et al.*,
   2022 WL 17582549 (D.N.J. Dec. 12, 2022) .............................................................................. 11

*Plaut v. Goldman Sachs Grp., Inc.*,
   No. 18-CV-12084 (VSB),
   2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ........................................................................... 11

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
   Nos. 06 Civ. 5797(PAC), *et al.*,
   2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) ............................................................................... 9

*Richman v. Goldman Sachs Grp., Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011) ......................................................................................... 7, 8

*Schaeffer v. Depaolo*,
   Nos. 23-CV-1921-FB-JRC, *et al.*,
   2023 WL 5153481 (E.D.N.Y. Aug. 10, 2023) ........................................................................... 11

*Skwortz v. Crayfish Co., Ltd.*,
   Nos. 00 CIV. 6766(DAB), *et al.*,
   2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) .......................................................................... 12

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) ............................................................................................................... 4

*In re Vivendi Universal, S.A. Sec. Litig.*,
   605 F. Supp. 2d 570 (S.D.N.Y. 2009) ......................................................................... 3, 10, 11

*Weston v. DocuSign, Inc.*,
   No. 22-cv-00824-WHO,
   2022 WL 1301770 (N.D. Cal. Apr. 18, 2022) ................................................................... 2, 3, 9

*Zhu v. UCBH Holdings, Inc.*,
   682 F. Supp. 2d 1049 (N.D. Cal. 2010) .................................................................................. 12

**Statutes**

15 U.S.C. § 78u-4(a) ...................................................................................................... 1, 4, 9

HANSAINVEST respectfully submits this Reply Memorandum of Points and Authorities in further support of its motion for appointment as Lead Plaintiff (ECF No. 16), and in opposition to the remaining competing motion filed by the UK Funds (ECF No. 31).[1]

## STATEMENT OF ISSUES

1.      Whether HANSAINVEST is the "most adequate plaintiff" and should be appointed Lead Plaintiff, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(i).

2.      Whether this Court should approve of HANSAINVEST's selection of Kessler Topaz as Lead Counsel, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      PRELIMINARY STATEMENT

HANSAINVEST is entitled to appointment as Lead Plaintiff under the analysis required by the PSLRA and the Ninth Circuit.  *See Cavanaugh v. U.S. Dist. Court for N. Dist. of Cal.*, 306 F.3d 726, 729-30, 741 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).  HANSAINVEST asserts the largest loss of any movant before the Court, is adequate, is typical, and there is no "proof" rebutting its presumptive status.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (explaining that the presumption of most adequate plaintiff "may be rebutted only upon ***proof***").

Faced with the indisputable fact that HANSAINVEST suffered greater losses than the UK Funds, the UK Funds attempt to construct an alternative reality requiring HANSAINVEST to somehow combine the transactions of its ***economically independent*** investment funds when calculating its losses.  *See* ECF No. 51 at 4-5.  The UK Funds' approach has no footing in either the law or the facts and—based on the UK Funds' counsel's own submissions in other cases[2]—is an argument the UK Funds know violates *Cavanaugh*'s mandate that financial interest calculations be "rational and consistently applied."  306 F.3d at 730 n.4.  HANSAINVEST's funds are eight distinct investment funds with ***separate*** prospectuses, ***separate*** assets, ***separate*** investors, ***separate*** strategies,

---

[1]      Unless otherwise noted, all capitalized terms are defined in HANSAINVEST's opening brief or response brief, *see* ECF Nos. 16 & 50, all emphasis is added, and all internal citations and quotation marks are omitted.

[2]      *See* Joost Reply Decl., Ex. A.

*separate* portfolios, and more.  *See, e.g.*, Joost Reply Decl., Ex. B (relevant excerpts from prospectuses).  The funds do not commingle trading nor are the gains or losses from one fund used to support another.  Any requirement that the funds combine their trading here contradicts how investment funds are structured and function.  The UK Funds provide no "proof" requiring HANSAINVEST to commingle funds.

Recognizing the weakness of their claim to having larger losses (only when ignoring the economic realities of HANSAINVEST's investment funds), the UK Funds pivot and suggest that the Court should instead look to non-loss metrics when assessing financial interest, because, among other things, HANSAINVEST's greater loss (by nearly $300,000) is "not so much higher than UK Funds' loss." ECF No. 51 at 9-10.  However, the UK Funds ignore that this Court has repeatedly held that losses are the most important consideration when identifying the movant with the largest financial interest under the PSLRA.  *See, e.g.*, *Bodri v. GoPro, Inc.*, Nos. 16-cv-00232-JST, *et al.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (Tigar, J.) ("[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a [LIFO] methodology") (first alteration in original); *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1059 (N.D. Cal. 2018) (Tigar, J.) ("approximate losses in the subject securities is the preferred measure"); *Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1052 (N.D. Cal. 2017) (Tigar, J.) (same).  The Court has also rejected attempts to minimize differences in losses and noted that "any financial difference is meaningful." *Super Micro Comput.,* 317 F. Supp. 3d at 1060.   Accordingly, HANSAINVEST has the largest financial interest among the movants and is the presumptive Lead Plaintiff in this action.

Seeking to undermine HANSAINVEST's presumptive status, the UK Funds speculate that HANSAINVEST "might" face challenges to its standing at some unknown point later in the litigation. ECF No. 51 at 12.  This is precisely the type of conjecture that courts have repeatedly rejected as insufficient under the PSLRA's "proof" requirement.  *See, e.g.*, *In re Nike, Inc. Sec. Litig.*, No. 3:24-CV-00974-AN, 2024 WL 4579499, at *8 (D. Or. Oct. 25, 2024) (rejecting argument that a European investment manager may not have standing to sue on behalf of its German investment funds as "speculative at best"); *Weston v. DocuSign, Inc.*, No. 22-cv-00824-WHO, 2022 WL 1301770, at *5

(N.D. Cal. Apr. 18, 2022) (rejecting standing challenge where, "[a]t best, [the competing movant] speculates that [the Luxembourgian investment manager] will be subject to a unique defense"). The Court should do the same here.

Tellingly, the UK Funds do not actually argue that HANSAINVEST lacks standing. As the UK Funds effectively acknowledge, HANSAINVEST has standing to sue on behalf of its investment funds under the long-recognized "prudential exception" to Article III. Courts in the Ninth Circuit and across the United States routinely apply the prudential exception to investment managers seeking appointment as lead plaintiff under the PSLRA who—like HANSAINVEST—manage the assets of German and Luxembourgian investment funds. *See* ECF No. 51 at 12-13 (stating that the "UK Funds *do not* challenge HANSAINVEST's . . . Article III standing" and noting, among other things, that German investment managers were found to have standing in *Nike* and *Bricklayers' & Allied Craftworkers Local #2 Albany NY Pension Fund v. New Oriental Education & Technology Group Inc.*, Nos. 22 Civ. 1014 (VM), *et al.*, 2022 WL 1515451 (S.D.N.Y. May 13, 2022)); *see also, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 577-80 (S.D.N.Y. 2009) (holding that investment managers had standing to sue on behalf of their funds governed by German and Luxembourgian law). Accordingly, the UK Funds' speculative arguments about theoretical concerns should be rejected.

Finally, even if HANSAINVEST did not have a larger financial interest, HANSAINVEST would still be entitled to appointment because the UK Funds cannot satisfy the PSLRA's requirements and must be disqualified. *See infra* at pp. 11-14.

Accordingly, HANSAINVEST respectfully requests that the Court grant its motion in its entirety and deny the competing motions.

II.   **ARGUMENT**

A.   **HANSAINVEST Is the Presumptive Lead Plaintiff**

HANSAINVEST's more than $2.8 million LIFO loss is the largest loss before the Court. The magnitude of HANSAINVEST's loss establishes that it has the largest financial interest in the litigation and is the presumptive Lead Plaintiff under the PSLRA and well-established Ninth Circuit

law.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d 726 at 741.  The UK Funds' baseless efforts to both recalculate HANSAINVEST's losses and downplay the importance of LIFO losses in determining movants' financial interests are contrary to law—including this Court's prior rulings.

### 1.    HANSAINVEST Properly Calculated Its Losses

The UK Funds' argument that the Court should disregard the legal separation between HANSAINVEST's economically independent investment funds and commingle all of their respective transactions to calculate losses is predicated on a baseless theory that HANSAINVEST's investment funds are mere "accounts" all belonging to HANSAINVEST.  *See* ECF No. 51 at 5.  As set forth in HANSAINVEST's certification and loss charts, the relevant investments in Enphase stock were made by eight unique investment funds—not accounts.  *See* ECF Nos. 16-2 & 16-3.  As basic research makes clear, each of these investment funds—which are organized under the laws of either Luxembourg or Germany—has **separate** prospectuses, **separate** assets, **separate** investment strategies, **separate** portfolios, **separate** investors, and more.  *See, e.g.*, Joost Reply Decl., Ex. B.

While these investment funds do not have legal personhood, such that they cannot file suit in their own names, *see infra* at pp. 9-11, they are legally separate from one another ***and*** from HANSAINVEST.[3]  Indeed, the investment funds' prospectuses make clear that the funds' assets are invested for the benefit of the funds' investors and are kept separate from HANSAINVEST's assets.  *See, e.g.*, Joost Reply Decl., Ex. B-2 (green benefit Global Impact Fund prospectus at 8.1) (providing that HANSAINVEST invests the fund's capital "in its own name for the joint account of the [fund's] investors" and that these assets "are ***held separately*** from [HANSAINVEST's] own assets" and "***do not*** form part of the insolvency estate of [HANSAINVEST]"); Joost Reply Decl., Ex. B-6 (HANSApost Triselect prospectus at 9) (providing that HANSAINVEST "invests the capital

---

[3]    HANSAINVEST's separation of its investment funds is no different than, for example, a trustee who oversees multiple trusts.  *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287-88 (2008) ("federal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit").  The trusts are not merged and their trading commingled as though the trusts have no legal and economic distinction from one another simply because they have the same trustee.

deposited with it in its own name for the joint account of the [fund's] investors . . . separate from its own assets" and that the "[investment] fund ***does not*** belong to [HANSAINVEST's] insolvency estate").[4]

By asking the Court to disregard this clear separation—which the UK Funds either ignored or did not bother to investigate—the UK Funds invent the false idea that assets in multiple funds managed by a single investment manager can be treated as one collective pot of assets, regardless of how those funds are organized or invested. Ultimately, the UK Funds are suggesting that when one investment fund sells shares of a company's common stock, the shares being sold are actually shares that were purchased by an entirely separate investment fund (on behalf of an entirely separate group of fund investors). Tellingly, the UK Funds cite to no authority for this completely unworkable approach, which has no basis in either the law or the facts, and clearly violates the Ninth Circuit's requirement that courts calculate movants' financial interests using "accounting methods that are both ***rational and consistently applied***." *Cavanaugh*, 306 F.3d at 730 n.4. Indeed, investment managers (including managers representing German and Luxembourgian funds) routinely—and successfully— move for appointment on the basis of losses calculated separately for their investment funds. *See* Joost Reply Decl., Ex. C (chart showing cases within approximately the last year alone in which investment managers were appointed lead plaintiff based on the separate losses of multiple investment funds).

Moreover, even if HANSAINVEST's distinct investment funds *were* simply HANSAINVEST's own accounts—which is indisputably untrue—it would still be irrational and inconsistent to calculate HANSAINVEST's losses by commingling transactions between various accounts. The UK Funds' proposed lead counsel knows this well, having repeatedly moved on behalf of institutional investors who have kept their accounts separate when calculating losses. *See id.*, Ex.

---

[4]    The credibility of the UK Funds' assertion that the investment funds are mere "accounts" belonging to HANSAINVEST is further belied by their later arguments regarding the need for HANSAINVEST to establish prudential standing on behalf of its investment funds (which would certainly not be the case if the HANSAINVEST Funds were simply HANSAINVEST's "accounts"). ECF No. 51 at 11-13; *see also infra* at pp. 9-11.

A (chart of cases in which Barrack, Rodos & Bacine has treated movants' various accounts separately for the purposes of loss calculation).  One of those motions was filed on behalf of an investor group that included UK Funds member Rhondda Cynon Taf Pension Fund.  *See id.* (*Clark v. Barrick Gold Corp.*, No. 13-cv-03851 (S.D.N.Y.)).  The UK Funds provide no "proof" or legal support establishing why its own counsel's prior (rational) approach should now be abandoned and the economically independent structure of HANSAINVEST's investment funds should be ignored for purposes of calculating financial interest under the PSLRA (but for no other purpose).[5]

Accordingly, HANSAINVEST correctly calculated its losses in excess of $2.8 million, making HANSAINVEST the movant with the largest losses in this action.

> **2.      HANSAINVEST Has the Largest Financial Interest Under This Court's Standard**

The UK Funds attempt to downplay the primary importance of losses (which they falsely claim are not all that different) in determining movants' respective financial interests and argue that the Court should instead look to factors such as shares purchased and net funds expended.  *See* ECF No. 51 at 4.  This argument, too, urges the Court to ignore the weight of clearly established law— ***including this Court's own prior case law***.

As this Court has repeatedly held, in determining which movant has the largest financial interest, the "weight of authority puts the ***most emphasis*** on the competing movants' ***estimated losses***, using a [LIFO] methodology."  *GoPro*, 2016 WL 1718217, at *3; *see also Super Micro Comput.*, 317 F. Supp. 3d at 1059 (agreeing that "approximate losses in the subject securities is the preferred measure" for "how to calculate the largest financial interest"); *Depomed*, 289 F. Supp. 3d at 1052 (same).  Many other courts in the Ninth Circuit—and across the country—have done the same.  *See, e.g.*, *Hoang v. ContextLogic, Inc.*, No. 21-cv-03930-BLF, 2022 WL 1539533, at *6 (N.D. Cal. May 16, 2022) (explaining that losses are "given the greatest weight" amongst the possible loss calculation

---

[5]      The UK Funds' argument that HANSAINVEST must commingle its funds' trading because HANSAINVEST's certification refers to "its" transactions in Enphase stock, *see* ECF No. 51 at 5, 9, is without merit.  HANSAINVEST—not its funds—is seeking appointment as lead plaintiff.  Since HANSAINVEST is asserting standing under the prudential exception to Article III, HANSAINVEST is effectively standing in the shoes of its funds and all references to "its" are simply to HANSAINVEST acting on behalf of its funds.

factors); *Longo v. OSI Sys., Inc.*, No. LA 17-cv-08841 VAP (SKx), 2018 WL 4860145, at \*4 (C.D. Cal. Mar. 1, 2018) ("Courts in the Ninth Circuit have tended to give [losses] the most emphasis . . . ."); *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB, *et al.*, 2013 WL 792642, at \*4 (N.D. Cal. Mar. 4, 2013) ("The weight of authority puts the most emphasis on the competing movants' estimated losses, using a [LIFO] methodology."). Courts have also held that "the number of shares purchased . . . is the least important." *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011).

Focusing on secondary, non-loss metrics also ignores this Court's previous guidance explaining that LIFO losses are particularly important (and the net shares and net funds metrics are particularly unhelpful) where—**as is the case is here**—the truth is alleged to have been revealed through multiple corrective disclosures. *See GoPro*, 2016 WL 1718217, at \*3 (considering LIFO losses instead of retained shares because "net shares purchased and a retained shares calculation are less useful analytical tools where, as here, gradual disclosures are involved, because those methods assume a constant fraud premium throughout the class period"). Here, as the UK Funds have already acknowledged, *see* ECF No. 31 at 4-5, the truth about Enphase's business began to emerge through a partial corrective disclosure on October 26, 2023, but was not fully revealed until nearly **an entire year later** on October 22, 2024. *See* ECF No. 1, ¶¶ 39-54. Accordingly, as the Court explained in *GoPro*, the value of any secondary metrics is significantly reduced here, where there are multiple disclosures at issue. *See* 2016 WL 1718217, at \*3; *see also Melucci v. Corcept Therapeutics Inc.*, No. 19-CV-01372-LHK, 2019 WL 4933611, at \*3 (N.D. Cal. Oct. 7, 2019) (explaining that the "net shares purchased analysis has limited usefulness" where multiple corrective disclosures are pled); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (explaining that the net shares metric "gets into trouble" in actions involving multiple corrective disclosures because "some transactions result[] in greater losses than others and thus not all transactions [a]re equal").[6]

---

[6]    The UK Funds cite *Hewlett Packard* for the proposition that courts in the Ninth Circuit consider factors other than losses suffered to calculate financial interest, *see* ECF No. 51 at 4, but omit the crucial facts that the *Hewlett Packard* court "decline[d] to give significant weight to net shares purchased and a retained shares calculation" and ultimately appointed the movant with the greatest losses, even though another movant had purchased more net shares and had larger net

The UK Funds round out their effort to promote non-loss factors by suggesting that HANSAINVEST's losses—which exceed the UK Funds' losses by approximately $300,000—are "not so much higher than UK Funds' loss that [the difference] overcomes" other factors.  ECF No. 51 at 10.  This too, inexplicably, ignores that this Court has already rejected such a rationale, having explained that "***any financial difference is meaningful in determining a lead plaintiff***."  *Super Micro Comput.*, 317 F. Supp. 3d at 1060.  Specifically, *Super Micro Computer* rejected the argument that a loss of less than $8,000 was "*de minimis* and therefore should not control the selection of lead plaintiff."  *Id.*  If a difference less than $8,000 has already been held to be outcome determinative, the UK Funds cannot credibly argue that the approximately $300,000 difference in losses should be ignored.  *See id.* (finding no authority "suggesting that the Court should not determine that a plaintiff has largest financial share when its lead is small").

Given the existence of multiple corrective disclosures and the magnitude of HANSAINVEST's losses under the preferred LIFO methodology, the secondary metrics relied upon by the UK Funds cannot supplant HANSAINVEST's losses.  *See GoPro*, 2016 WL 1718217, at *3; *Goldman Sachs*, 274 F.R.D. at 478-79 (rejecting movant's "argument that the loss factor can be ignored and that it should be selected based on [its] larger net shares purchased and net expenditures" because "[m]ost courts agree that the largest loss is the critical ingredient . . . and outweighs net shares purchased and net expenditures"); *Hewlett Packard*, 2013 WL 792642, at *4 (appointing movant that had the largest losses but did not purchase the most net shares or have the largest net expenditures).  The UK Funds' deviation from this Court's prior holdings and the Ninth Circuit's well-settled preference for losses must be rejected.[7]

---

expenditures.  2013 WL 792642, at *4-5.  Moreover, even if the UK Funds failed to locate this Court's opinion in *GoPro* undercutting their arguments in support of using non-loss factors where there are multiple corrective disclosures, *Hewlett Packard* also makes clear that "net shares purchased and a 'retained shares' calculation are less useful analytical tools where gradual disclosures are involved."  *Id.*  at *4.

[7]    Disregarding this Court's prior case law on this precise issue, the UK Funds instead cite inapposite, out-of-circuit case law.  *See City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, Nos. 1:17 CV 1677, *et al.*, 2017 WL 6028213, at *2 (N.D. Ohio Dec. 4, 2017) (giving "[a]ll four factors . . . equal weight," inconsistent with the long-standing preference for losses in the Ninth Circuit); *Alkhoury v. Lululemon Athletica, Inc.*, No. 13 Civ. 4596(KBF), 2013 WL 5496171,

**B.      The UK Funds Do Not Challenge HANSAINVEST's Standing and Provide No "Proof" Rebutting Its Presumptive Status**

HANSAINVEST's status as the presumptive lead plaintiff can be rebutted only through "proof that the presumptive lead plaintiff is not adequate." *Mersho v. U.S. Dist. Court for D. of Ariz.*, 6 F.4th 891, 899 (9th Cir. 2021). *See also, e.g.*, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Cavanaugh*, 306 F.3d at 729 n.2 (same). Unsupported speculation is not "proof" and "does not comport with the burden-shifting process Congress established in the PSLRA," under which "competing movants must point to evidence." *Mersho*, 6 F.4th at 901; *see also DocuSign*, 2022 WL 1301770, at *4 ("Proof is key—the presumption may not 'be set aside for any reason that the court may deem sufficient.'" (quoting *Mersho*, 6 F.4th at 899)).

The UK Funds' suggestion that HANSAINVEST may face challenges to its standing while admitting that they "***do not*** challenge HANSAINVEST's . . . showing of Article III standing" ends the analysis. ECF No. 51 at 12. Musing about theoretical arguments that are unsupported by any evidence is exactly the type of speculation that is routinely rejected. *See, e.g.*, *Nike*, 2024 WL 4579499, at *8 (rejecting as speculative an argument that an investment manager may not have standing to sue on behalf of its German investment funds); *Leventhal v. Chegg, Inc.*, No. 5:21-cv-09953-EJD, 2022 WL 4099454, at *3 (N.D. Cal. Sept. 7, 2022) (holding that "speculation about the validity" of an assignment of claims to a foreign investment manager was "insufficient to rebut the lead plaintiff presumption"); *In re: Beyond Meat, Inc. Derivative Litig.*, No. CV 20-963-MWF (AFMx), 2020 WL 6826482, at *3 (C.D. Cal. May 18, 2020) (holding that vague concerns about the structure of an investment company were "nothing more than speculation," as "opposed to ***proof***" (emphasis in original)).

at *1 (S.D.N.Y. Oct. 1, 2013) (finding that a small difference in losses did not outweigh other factors, contrary to this Court's holding in *Super Micro Computer*); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, Nos. 06 Civ. 5797(PAC), *et al.*, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (same). Moreover, the approximate loss differences in these cases—$35,000, $2,000, and $40,000, respectively—are significantly smaller than the approximately $300,000 disparity here.

Contrary to the UK Funds' conjecture, the actual evidence—which includes HANSAINVEST's PSLRA certification—establishes HANSAINVEST's standing. *See* ECF No. 16-2 at 2 n.1 (certification explaining that HANSAINVEST is the capital management company for the funds at issue, "which are not legal entities," and that it "represents the HANSAINVEST Funds in all legal and financial matters"); *Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, Nos. 21-cv-08812-JST, *et al.*, 2022 WL 3571995, at *2 (N.D. Cal. July 26, 2022) (Tigar, J.) (rejecting as speculative a challenge to an investment manager's legal title to the shares at issue, given the manager's "sworn testimony and transaction statements").

HANSAINVEST has standing to sue on behalf of its investment funds under the well-established "prudential exception," which allows investment managers to represent their investment funds if there is "(1) a close relationship to the injured [funds] and (2) a barrier to the injured [funds'] ability to assert [their] own interests." *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 402 (D. Del. 2014) (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008)). As the UK Funds expressly acknowledged, *see* ECF No. 51 at 13, courts routinely hold that investment managers representing funds in Germany and Luxembourg possess standing under the prudential exception.[8] *See, e.g.*, *Nike,* 2024 WL 4579499, at *7-8 (holding that the prudential exception applied to an investment manager where its German investment funds were "not legal entities under German law and cannot themselves control investments," and were "barred from bringing claims on their own behalf under German law"); *New Oriental Educ.*, 2022 WL 1515451, at *4-5 (same); *City of Taylor Police & Fire Ret. Sys. v. Western Union Co.*, No. 13-cv-03325-MSK-MJW, 2014 WL 4799659, at *5 (D. Colo. Sept. 26, 2014) (holding that an investment manager "comfortably fit within *Huff's* 'prudential exception,' given that [the manager] holds trustee-like powers over the funds['] property and the funds are prohibited under . . . Luxembourg law from bringing the claims herein in their own right," and concluding that "concerns about [the manager's] standing are insufficient to overcome its presumptive status as 'most adequate plaintiff'"); *Vivendi*,

---

[8]    green benefit Global Impact Fund is a Luxembourgian fonds commun de placement ("FCP"), and the other HANSAINVEST Funds are German investment funds. *See* Joost Reply Decl., Ex. B.

605 F. Supp. 2d at 578-80 (holding that investment managers had standing to sue on behalf of their funds governed by German law, because the funds were not legal entities that could bring suit, as well as their Luxembourgian FCPs, because the FCPs were unable to bring suit on their own and the investment managers were "the legal representative of the fund[s] under Luxembourg law").[9]  Here, HANSAINVEST's representations about its relationship to the investment funds and the funds' inability to protect their legal interests themselves are exactly the type of facts needed to establish the prudential exception.  *See* ECF No. 16-2 at 2 n.1; *Nike*, 2024 WL 4579499, at *7 (applying the prudential exception on the basis of a foreign investment manager's representations that its German funds "depend[ed] on [the asset manager] to invest assets into the funds and assert legal claims arising from those investments").

The UK Funds have failed to offer any proof to rebut the presumption that HANSAINVEST is the most adequate plaintiff, and HANSAINVEST should be appointed Lead Plaintiff.

**C.    The UK Funds Cannot Meet the Requirements of the PSLRA**

Even if HANSAINVEST did not have the largest financial interest, the UK Funds are still unable to meet the requirements of the PSLRA and should be disqualified.

**1.    The UK Funds Failed to File a Timely Motion**

The UK Funds concede that their motion for appointment as Lead Plaintiff was untimely.  *See* ECF No. 51 at 1 n.1.  However, instead of properly filing a motion for relief from the Court's deadlines, *see* Civil L.R. 6-1(b) ("A Court order is required for any enlargement or shortening of time

---

[9]     The UK Funds' reliance, *see* ECF No. 51 at 13, on *Baydale v. American Express Co.*, No. 09 Civ. 3016(WHP), 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009), is misplaced.  *Baydale* has been repeatedly rejected by other courts as "rely[ing] on mere speculation, not actual proof provided by the opposing movant" in order to avoid "engag[ing] in any inquiry regarding a foreign asset manager's standing." *Cooper Tire*, 63 F. Supp. 3d at 403; *see also Patel v. Coinbase Glob., Inc.*, Nos. 22-4915 (BRM) (LDW), *et al.*, 2022 WL 17582549, at *4 n.3 (D.N.J. Dec. 12, 2022) (confirming European investment manager's third-party standing and finding that the investment manager's prior rejection in *Baydale* was not "persuasive authority").  Indeed, even courts in the Southern and Eastern Districts of New York have rejected *Baydale*'s approach. *See, e.g.*, *Schaeffer v. Depaolo*, Nos. 23-CV-1921-FB-JRC, *et al.*, 2023 WL 5153481, at *6 (E.D.N.Y. Aug. 10, 2023) (noting "recent cases in this circuit rejecting *Baydale*"); *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *6 (S.D.N.Y. Sept. 19, 2019) (rejecting approach as "not grounded in evidence").

that alters an event or deadline already fixed by Court order or that involves papers to be filed or lodged with the Court[.]"), the UK Funds simply ask in a footnote that "the Court not allow this to distract from the important substantive issues under consideration." ECF No. 51 at 1 n.1   There is no explanation or attorney declaration provided for why the UK Funds ignored the Court's deadline or why relief would be appropriate.  *See Linder v. Golden Gate Bridge, Highway & Transp. Dist.*, No. 14-CV-03861 SC, 2015 WL 1778608, at *4 (N.D. Cal. Apr. 17, 2015) (granting leave to file an untimely brief, where the party had filed a motion to extend the deadline and explained why they failed to file on time).  Most missed deadlines are likely the result of an "oversight," ECF No. 51 at 1 n.1, but saying just this without more is insufficient.  *Cf. In re: JCK Legacy Co.*, No. 20-10418 (MEW), 2022 WL 3009619, at *3 (Bankr. S.D.N.Y. July 28, 2022) ("parties are responsible for the conduct of their attorneys, and . . . clients cannot obtain relief from deadlines that their lawyers missed unless the lawyers' own neglect was excusable").

Moreover, in downplaying their own failure to follow this Court's rules, the UK Funds falsely suggest that their ability to satisfy the first requirement of the PSLRA—filing a timely motion—as well as their ability to identify and follow the rules of this Court, are somehow ***non-substantive*** issues. Not so: an untimely motion "has the effect of preventing [a movant] from satisfying the first requirement of the most adequate plaintiff presumption." *Skwortz v. Crayfish Co., Ltd.*, Nos. 00 CIV. 6766(DAB), *et al.*, 2001 WL 1160745, at *5 (S.D.N.Y. Sept. 28, 2001).  The UK Funds do not have a timely motion before the Court and cannot be considered on this basis alone.  *Id.* ("The tardiness of the . . . motion precludes this Court from appointing the [movant] as Lead Plaintiff in this case."); *see also Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) ("The PSLRA is unequivocal and allows for no exceptions.").

## 2.  The UK Funds Are Subject to Unique Defenses That Render Them Atypical and Inadequate to Represent the Class

As discussed in HANSAINVEST's response brief, *see* ECF No. 50 at 10-11, the UK Funds' trading patterns make them subject to "unique defenses" that render them "incapable of adequately representing the class." *Depomed*, 289 F. Supp. 3d at 1055.  Specifically, the UK Funds purchased

*all* of their Class Period shares of Enphase common stock ***after*** the first partial corrective disclosure that began to alert investors to the Defendants' fraudulent conduct. *See* ECF Nos. 31-2 & 31-3.

In contrast to the UK Funds' speculative attacks on HANSAINVEST's standing, there is substantial proof that the UK Funds' trading is disqualifying. Critically, it is indisputable that the UK Funds began to purchase shares only after the market had already begun to learn the truth about Enphase in October 2023. As courts have repeatedly held, movants with this particular trading pattern are highly subject to arguments that they did not rely on the defendants' misrepresentations and omissions when purchasing shares—potentially putting the entire class's claims at risk—and therefore should be disqualified from the lead plaintiff process. *See, e.g.*, *Bhangal v. Hawaiian Elec. Indus., Inc.*, No. 3:23-cv-04332-JSC, 2023 WL 8482871, at *3 (N.D. Cal. Dec. 7, 2023) (disqualifying a movant who purchased all of his shares after a partial corrective disclosure because his "purchasing decisions and timeline indicate his losses may have been caused by something other than Defendants' false or misleading statements or omissions"); *Lundy v. Ideanomics, Inc.*, No. 20 Civ. 4944 (GBD), 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) (disqualifying a movant who "may be subject to a unique defense because he purchased *all* his class period shares" after partial corrective disclosures and noting that subsequent disqualification may subject class members "to statute of repose concerns") (emphasis in original).

This is not a speculative question of whether it is "possible" that Defendants "might" raise questionable arguments at some unknown "later stage in the litigation." ECF No. 51 at 12. Rather, given the clear case law about the importance of a lead plaintiff's ability to assert the fraud-on-the-market presumption of reliance, the UK Funds' undeniably problematic trading tees up a near-certain challenge from Defendants at class certification. *See, e.g.*, *Pampena v. Musk*, No. 22-cv-05937-CRB, 2024 WL 4331811, at *3 (N.D. Cal. Sept. 27, 2024) (explaining that plaintiffs seeking class certification can establish class-wide reliance through the fraud-on-the-market doctrine, and warning that "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance"). There is "no reason to subject the class to this potential defense

where there is another movant," HANSAINVEST, without this problem in its trading pattern. *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011).

**III.   CONCLUSION**

For the reasons discussed above, HANSAINVEST respectfully requests that the Court appoint it as Lead Plaintiff, approve its selection of Kessler Topaz as Lead Counsel for the class, and deny the competing motions.

DATED: March 4, 2025                    Respectfully submitted,

                                        **KESSLER TOPAZ MELTZER**
                                          **& CHECK, LLP**

                                        */s/ Jennifer L. Joost*
                                        JENNIFER L. JOOST (Bar No. 296164)
                                        (jjoost@ktmc.com)
                                        One Sansome Street, Suite 1850
                                        San Francisco, CA 94104
                                        Tel:    (415) 400-3000
                                        Fax:    (415) 400-3001

                                        *Counsel for Proposed Lead Plaintiff HANSAINVEST Hanseatische Investment-GmbH and Proposed Lead Counsel for the Class*