STEPHEN R. BASSER (121590)
SAMUEL M. WARD (216562)
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone:  (619) 230-0800
Facsimile:  (619) 230-1874
sbasser@barrack.com
sward@barrack.com

JEFFREY A. BARRACK*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-0600
Facsimile:  (215) 963-0838
jbarrack@barrack.com
*Pro Hac Vice* application to be filed

  *Counsel for the UK Public Pension Funds and*
  *Proposed Lead Council for the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| THE TRUSTEES OF THE WELFARE AND PENSION FUNDS OF LOCAL 464A – PENSION FUND, on behalf of themselves and all others similarly situated,<br><br>                     Plaintiffs,<br><br>v.<br><br>ENPHASE ENERGY, INC., BADRINARAYANAN KOTHANDARAMAN, and RAGHUVEER BELUR,<br><br>                     Defendants. | CASE NO. 4:24-CV-09038-JST<br><br><br>**UK PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL**<br><br><br>Date:         April 10, 2025<br>Time:        2:00 P.M.<br>Judge:       Jon S. Tigar<br>Courtroom: 6 – 2nd Floor |

**TABLE OF CONTENTS**

I.    UK Funds Have the Largest Financial Interest ...................................................................1

II.   UK Funds' Showing of the Typicality of their Claims and Their Adequacy to.....................................
      Represent the Class Has Not Been Rebutted...................................................................3

    A.    HANSAINVEST's Lack of Standing Argument Is Without Merit.................................................3

    B.    HANSAINVEST's Lack of Typicality and Adequacy Argument Is Without Merit.....................6

    C.    HANSAINVEST's Other Attacks on UK Funds Are Makeweight and Should Be Rejected ......10

        1.    UK Funds Filed Within the 60-Day Deadline Set in the PSLRA ...........................................10

        2.    UK Funds' Joint Declaration and Certifications Are in Substantial Compliance
              with 28 U.S.C. § 1746 and Ninth Circuit Law.................................................................11

III.   CONCLUSION.................................................................................................13

UK PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

**TABLE OF AUTHORITIES**

**Cases**                                                                                        **Page(s)**

*Alkhoury v. Lululemon Athletica, Inc.*,
  No. 13 Civ. 4596 (KBF), 2013 WL 5496171 (S.D.N.Y. Oct. 1, 2013) ................................................... 2

*Bhangal v. Hawaiian Elec. Indus.*,
  No. 3:23-cv-04332-JSC, 2023 WL 8482871 (N.D. Cal. Dec. 7, 2023) ................................................... 9

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
  No. 1:17 CV 1958, 2017 WL 6028213 (N.D. Ohio Dec. 4, 2017) ........................................................ 2

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  No. 5:11-CV-04003-LHK, 2012 WL 78780 (N.D. Cal. Jan. 9, 2012) ................................................... 1

*Corona v. Quad Graphics Printing Corp.*,
  218 F. Supp. 3d 1068 (C.D. Cal. 2016) ................................................................................................ 11

*Crass v. Yalla Grp. Ltd.*,
  No. 21 Civ. 6854 (PAE), 2021 WL 5181008 (S.D.N.Y. Nov. 8, 2021) ............................................... 12

*Faris v. Longtop Fin. Techs. Ltd.*,
  No. 11 Civ. 3661 (SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ................................................. 9

*Hevesi v. Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004) ......................................................................................................... 3, 4, 5

*Hufnagle v. Rino Int'l Corp.*,
  No. CV 10-1908-VBF (VBKx), 2011 WL 710676
  (C.D. Cal. Feb. 16, 2011) ................................................................................................................... 7

*Hufnagle v. Rino Int'l Corp.*,
  No. CV 10-8695-VBF (VBKx), 2011 WL 710704 (C.D. Cal. Feb. 14, 2011) ............................. 6-7, 8

*In re Connetics Corp. Sec. Litig.*,
  257 F.R.D. 572 (N.D. Cal. 2009) ......................................................................................................... 6

*In re Countrywide Fin. Corp. Sec. Litig.*,
  273 F.R.D. 586 (C.D. Cal. 2009) ...................................................................................................... 7, 8

*In re CTI BioPharma Corp. Secs. Litig.*,
  No. C16-216RSL, 2016 WL 7805876 (W.D. Wash. Sept. 2, 2016) ...................................................... 5

*In re IMAX Sec. Litig.*,
  272 F.R.D. 138 (S.D.N.Y. 2010) ........................................................................................................ 10

*In re Initial Pub. Offering Secs. Litig.*,
  214 F.R.D. 117 (S.D.N.Y. 2002) .......................................................................................................... 4

*In re Leapfrog Enter., Inc. Sec. Litig.*,
  No. C-03-05421 RMW, 2005 WL 3801587 (N.D. Cal. Nov. 23, 2005) ............................................... 4

*In re Montage Tech. Grp. Ltd. Secs. Litig.*,
  No. 14-cv-00722-SI, 2016 WL 1598666 (N.D. Cal. Apr. 21, 2016) ..................................................... 8

*In re Tronox, Inc.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ......................................................................................... 8

*In re Twitter Inc. Secs. Litig.*,
   326 F.R.D. 619 (N.D. Cal. 2018) ........................................................................................ 5

*In re Veon Ltd.*,
   No. 15 Civ. 8672 (ALC) (OTW), 2022 WL 1284547 (S.D.N.Y. Apr. 29, 2022) ................................ 8

*In re Verisign, Inc. Sec. Litig.*,
   NO. C 02-02270 JW, 2005 WL 88969 (N.D. Cal. Jan. 13, 2005) ....................................................... 4, 5

*In re Versata, Inc.,* No. *C* 01-1439 SI *et al.*, 2001 WL 34012374 (N.D. Cal. Aug. 17, 2001) ................ 12

*Lundy v. Ideanomics, Inc.*,
   No. 20 Civ. 4944 (GBD), 2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020) .......................................... 10

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
   No. 2:10-cv-00302-MRP-MANx, 2010 U.S. Dist. LEXIS 147168 (C.D. Cal. May 14, 2010) ........... 5

*Nicolow v. Hewlett Packard Co.*,
   No. 13-00301 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ...................................................... 1

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ...................................................................................... 12

*Police & Fire Ret. Sys. v. SafeNet, Inc.*,
   No. 06 Civ. 6194 (PAC), 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) .............................................. 2

*Richardson v. TVIA, Inc.*,
   No. C-06-07307 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ............................................ 1, 8

*Schneider v. Champignon Brands*,
   No. 2:21-cv-03120-JVS-KESx, 2021 WL 4935160 (C.D. Cal. June 29, 2021) ................................... 6

*Schroeder v. McDonald*,
   55 F.3d 454 (9th Cir. 1995) ...................................................................................... 12

*Skwortz v. Crayfish Co.*,
   No. 00 Civ. 6766 (DAB), 2001 WL 1160745 (S.D.N.Y. Sept. 26, 2001) .......................................... 11

*Snap Inc. Sec. Litig.*,
   No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) ................................... 10

*Soto v. Castlerock Farming & Transp., Inc.,*
   No. 1:09-cv-00701 AWI JLT, 2011 WL 2680839 (E.D. Cal. July 7, 2011) ...................................... 11

*Trammell Real Estate Corp. v. Trammell*,
   748 F.2d 1516 (11th Cir. 1984) ...................................................................................... 12

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. CV–07–02204–PHX–FJM, 2009 WL 275405 (D. Ariz. Jan. 30, 2009) ...................................... 5

*Vladimir v. Bioenvision*,
   No. 07 Civ. 6416 (SHS) (AJP), 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) ................................. 12

iii

*Weston v. DocuSign, Inc.*, No. 22-CV-00824-WHO, 2024 WL 2925979,
  (N.D. Cal. June 10, 2024) ............................................................................................................... 8

**STATUTES**

28 U.S.C. § 1746 .......................................................................................................... 11, 12, 13

**RULES**

Rule 23 of the Federal Rules of Civil Procedure ...................................................................... 3, 6

UK PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

UK Funds respectfully submit this reply memorandum in further support of their motion for appointment as lead plaintiffs and approval of their selection of lead counsel.[1]  With the non-oppositions filed on February 24-25, 2025 by three of the initial movants, the choice of lead plaintiff is now entirely between UK Funds and HANSAINVEST.  For the reasons stated in UK Funds' opening brief, opposition brief and below, UK Funds respectfully submit that they have established that the UK Funds have a larger financial interest in the relief sought by the class than HANSAINVEST; UK Funds made a *prima facie* showing that their claims are typical and they are adequate class representatives, which showing has not been rebutted; and there are no other impediments to UK Funds being appointed as lead plaintiffs.  For these reasons, UK Funds reiterate their request to be appointed as lead plaintiffs and to have their counsel be approved as lead counsel in this action.

## I.      UK Funds Have the Largest Financial Interest

The Lax factors form the touchstone for a court's financial interest analysis of competing lead plaintiff applicants in the Ninth Circuit and elsewhere.  *See* UK Funds' Opp. Br. at 4-9, *citing, inter alia, Nicolow v. Hewlett-Packard Co.*, Nos. 12-05980 CRB et al.*,* 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) ("District Courts commonly refer to the four-factor [LAX] test, which considers (1) total shares purchased, (2) net shares purchased, (3) net funds expended, and (4) approximate losses suffered"); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 WL 78780, *3-4 (N.D. Cal. Jan. 9, 2012); *Richardson v. TVIA, Inc.,* No. C-06-06304 RMW, 2007 WL 1129344, *3 (N.D. Cal. Apr. 16, 2007).  Here, the comparative numbers are clear and show that UK Funds have a far larger financial interest in the relief sought in this action than HANSAINVEST.  During the Class Period, UK Funds (a) purchased over 20,000 more total shares (69,892 versus 47,905 for HANSAINVEST); (b) purchased over sixteen times more net shares (69,892 versus 4,305); (c) made a far higher (about $6 million) net investment in Enphase stock ($7,539,948 versus $1,543,944); and (d) incurred a 50% larger LIFO loss when HANSAINVEST's transactions are appropriately considered together ($2,512,050 versus $1,608,812). These figures demonstrate that UK Funds have far more at stake financially in this action

---

[1]  Capitalized terms have the same meaning as they had in UK Funds' opening brief (Dkt. No. 31) and opposition brief (Dkt. No. 51).

UK PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

than HANSAINVEST, and that based on the Lax factors, UK Funds are the presumptive most adequate plaintiffs.

Indeed, just as HANSAINVEST did in its opening brief and certification, as shown in UK Funds' Opp. Br. at 4-6, HANSAINVEST continued to state in its opposition brief that the Enphase stock purchases that underpin its lead plaintiff motion were all made by HANSAINVEST and that the loss arising from those transactions in Enphase stock were incurred by HANSAINVEST. *See* HANSAINVEST Opp. Br. (Dkt. No. 50) at 1 (*it* possesses the largest financial interest), 2 ("HANSAINVEST is … a sophisticated institutional investor"), 6 (identifying HANSAINVEST as the purchaser of Enphase stock). Thus, there is no fair basis to determine HANSAINVEST's loss by looking at the transactions in each of its non-legal entity sub-accounts in isolation without regard for the calculation of HANSAINVEST's financial interest in its totality.

UK Funds thus have the largest financial interest and should be considered the most adequate plaintiff under the PSLRA, using an analysis of the Lax factors. But even if this Court determines that HANSAINVEST's $2.8 million calculation of its loss was appropriate, which UK Funds believes it is not, recognizing the importance of all four of the Lax factors, courts may still appoint an applicant that may have a slightly smaller loss but that has a greater financial interest as demonstrated through analysis of the first three Lax factors. *See* UK Funds' Opp. Br. at 9, *citing City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.,* Nos. 17 CV 1677, *et al.*, 2017 WL 6028213, *3 (N.D. Ohio Dec. 5, 2017) ("the Court finds that the difference in the approximate losses does not overcome the combined weight of the first three factors"); *Alkhoury v. Lululemon Athletica, Inc.,* No. 13 Civ. 4596(KBF), 2013 WL 5496171, *1 (S.D.N.Y. Oct. 1, 2013) (appointing movant that had smaller loss because first three factors weighed in its favor); *Police & Fire Ret. Sys. of City of Detroit v. Safenet, Inc.,* No. 06 Civ. 5797(PAC), 2007 WL 7952453, *2 (S.D.N.Y. Feb. 21, 2007) (same). Hence, even if the HANSAINVEST loss is calculated as an aggregate total of each of its non-legal entity accounts, UK Funds submits respectfully that the loss is not so much higher than UK Funds' loss that it overcomes analysis of the first three Lax factors that all tilt heavily in UK Funds' favor.

**II.    UK Funds' Showing of the Typicality of their Claims and Their Adequacy to Represent the Class Has Not Been Rebutted**

UK Funds invested over $7.5 million in Enphase stock and did not sell any of their acquired shares during the Class Period. They, like all proposed class members, are suing to recover for the losses incurred on their invested funds as a result of the defendants' alleged fraud. UK Funds suffered a loss of $2.512 million, thereby establishing that they have Article III standing. And their interests are totally aligned with the Class as a whole since it is in the UK Funds' interest to prove that defendants' statements throughout the Class Period were false and materially misleading, and that all purchasers of Enphase stock during the Class Period were damaged by defendants' alleged misconduct.

In its effort to rebut UK Funds' *prima facia* showing of adequacy and typicality under Rule 23, HANSAINVEST argues that UK Funds should not be appointed as lead plaintiffs because they made all of their purchases after the first partial disclosure that occurred on October 26, 2023, which was six (6) months into the eighteen (18) month Class Period alleged in this case. From this, HANSAINVEST asserts that UK Funds (a) are not similarly situated with respect to the members of the Class who purchased prior to the first partial disclosure and (b) lack standing to assert claims relating to purchases before the first partial disclosure, thereby dooming UK Funds' application. HANSAINVEST Opp. Br. at 10-11. As shown below, HANSAINVEST's arguments are without merit and should be rejected.

**A.    HANSAINVEST's Lack of Standing Argument Is Without Merit**

HANSAINVEST's position that the UK Funds lack standing respecting purchases before the October 26, 2023 corrective disclosure is contrary to the great weight of legal authority and, in any event, does not undercut UK Funds' ability to be appointed as lead plaintiffs for this action. In a seminal decision issued by the Second Circuit Court of Appeals, the Court held that even if a movant does not itself have standing to bring certain claims in a PSLRA securities case, ***the PSLRA does not require that a lead plaintiff itself have all potential claims***. *See Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004). In *Hevesi*, the appointed lead plaintiff had the largest financial interest but had not bought any of the bonds that were the subject of the Securities Act claims asserted in the case. Nonetheless, since the applicant, the New York State Common Retirement Fund ("NYSCRF"), had standing to assert some of the claims in the case, it was deemed appropriate by the district court for the NYSCRF's Sole Trustee, the New York State

3

Controller, to be appointed as the lead plaintiff and for it to include other named plaintiffs with purchases of the bonds in its complaint. *Hevesi*, 366 F.3d at 82 & n.13 (holding that district courts are not required to choose lead plaintiffs that have standing to sue "on every available cause of action" because requiring "a different lead plaintiff [to] be appointed to bring every single available claims would contravene the main purpose of having a lead plaintiff – namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole").[2] *See also In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) ("The only other possibility — that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action — has been rejected repeatedly by courts in this Circuit and undermines the purpose of the PSLRA.").

Courts within the Ninth Circuit are in accord. In *In re Leapfrog Enter., Inc. Sec. Litig.*, No. C-03-05421 RMW, 2005 WL 3801587 (N.D. Cal. Nov. 23, 2005), the late Honorable Ronald M. Whyte held explicitly that a lead plaintiff applicant need not have standing to assert every claim in the case:

> "[B]ecause the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." [Citation omitted]. … For example, in *In re VeriSign, Inc.*, 2005 WL 88969 *4 (N.D. Cal.2005), defendants argued that the lead plaintiffs lacked standing to sue for alleged misrepresentations that occurred after they had purchased stock. The court rejected this argument, reasoning that the lead plaintiffs needed only to prove that they suffered a concrete injury because of defendants' wrongdoing, not every injury alleged by the class.

*Id.* at *3-*4.[3] *See also Tsirekidze v. Syntax-Brillian Corp.*, No. CV–07–02204–PHX–FJM, 2009 WL 275405, *10-*11 (D. Ariz. Jan. 30, 2009) ("the PSLRA does not require that a lead plaintiff have standing

---

[2] UK Funds' counsel here, Barrack, Rodos & Bacine ("BR&B"), served as counsel to the New York State Controller and was appointed as a co-lead counsel by the District Court in *Hevesi*, which achieved a $6.19 billion recovery on behalf of purchasers of WorldCom stock and bonds, the highest securities class action recovery ever achieved in the Second Circuit. *See* Ward Declaration filed Feb. 11, 2024 (Dkt. No. 31), Exhibit 5 at 17-18. Among other results achieved in this Circuit, BR&B served as co-lead counsel in *In re McKesson HBOC Sec. Litig.* ($1.05 billion recovered), which is the highest securities recovery in the Ninth Circuit, and was sole lead counsel in *In re Apollo Group, Inc. Sec. Litig.*, where BR&B achieved an unanimous jury verdict in plaintiffs' favor in the full amount of damages sought in the case after a three-week trial, which verdict was sustained on appeal. *Id.* at 18, 20-21.

[3] In the same portion of his decision, Judge Whyte found that the fact that the applicant had not purchased any Leapfrog stock before a specific date did not create any sort of "conflict of interest," thereby also finding that the applicant's claims were typical of the class. *Id.*

UK PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

to assert all claims against defendants but only that they have the greatest financial stake in the action"); *In re CTI BioPharma Corp. Secs. Litig.*, Case No. C16-216(RSL), 2016 WL 7805876, *3-*4 (W.D. Wash. Sept. 2, 2016) ("even assuming, however, that DAFNA cannot pursue Exchange Act claims due to lack of standing, that does not preclude DAFNA from serving as lead plaintiff," and observing that "potential standing issues with respect to certain claims do not preclude appointment as lead plaintiff and can be resolved by the appointment of additional class representatives as the litigation proceeds") (citing *Hevesi*, 366 F.3d at 82 and *Schueneman v. Arena Pharm. Inc.*, Nos. 10cv1959 BTM(BLM) *et al.*, 2011 WL 3475380, at *5 (S.D. Cal. Aug. 8, 2011)); *see also Maine State Ret. Sys. v. Countrywide Fin. Corp.*, Case No. 2:10-cv-00302-MRP-MANx, Dkt. No. 120, 2010 U.S. Dist. LEXIS 147168 (C.D. Cal. May 14, 2010) (same, citing *Hevesi*). This Court has similarly cited with approval to the decision in *Hevesi* for another point of law. *See In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 627 (N.D. Cal. 2018).

Over and above this well-settled law, the allegations in the complaint filed in this action by HANSAINVEST's counsel on behalf of another investor (Dkt. No. 1) make it absolutely clear that UK Funds have standing to assert all of the claims presented in this case. In that complaint, HANSAINVEST's counsel alleged a single, unitary class consisting of all persons who purchased or otherwise acquired Enphase stock throughout the Class Period (¶¶ 1, 55), and asserted a unitary Section 10(b) claim for the entire Class, specifically stating it was asserted on behalf of purchasers of Enphase stock "throughout the Class Period" (¶¶ 67-70).[4] With respect to the first alleged corrective disclosure of October 26, 2023, the complaint alleged that through that disclosure investors only "began to learn the truth." There were no statements made in the disclosure indicating that a fraud was taking place; indeed, the complaint asserts that Enphase's stock continued to be artificially inflated after the initial corrective disclosure and that defendants continued to make false and misleading statements and "continued to downplay" the adverse information they had disclosed. *Id.* at ¶¶ 8, 11, 42-50. According to the complaint, it was only with the final disclosure, at the end of the Class Period, that investors "learned the full truth." *Id.* at ¶¶ 12, 51-54. Based on these allegations, made by HANSAINVEST's counsel, it is clear that UK Funds not only have

---

[4] The complaint similarly alleged that plaintiff's claims were typical of those of the Class "because Plaintiff and the Class sustained damages from Defendants' wrongful conduct." Dkt. No. 1 at ¶ 58. The same is true of UK Funds.

UK PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

standing to assert claims on behalf of purchasers of Enphase stock after the first corrective disclosure, but they also have standing to assert claims based on the Company's earlier alleged false and misleading statements, since the full truth about those statements was not disclosed to the market until the end of the Class Period.  As alleged, the stock's market prices were inflated by defendants' pre-October 26, 2023 and post-October 26, 2023 alleged false and misleading statements until the end of the Class Period, thus confirming UK Funds' standing to assert claims based on the false statements made throughout the Class Period.

**B.      HANSAINVEST's Lack of Typicality and Adequacy Argument Is Without Merit**

The arguments seeking to rebut UK Funds' ability to represent the Class offered by HANSAINVEST are similarly without merit and should be rejected.  In this regard, *Schneider v. Champignon Brands Inc.*, Case No. 2:21-cv-03120-JVS-KESx, 2021 WL 4935160 (C.D. Cal. June 29, 2021), is directly on point.  In *Champignon Brands*, the complaint alleged there were two partial corrective disclosures followed by a final corrective disclosure.  The partial disclosures arose from a company press release of June 22, 2020 and another one issued "several months later," while the final disclosure was issued on February 17, 2021.  There were two applicants vying for appointment as lead plaintiff.  Judge Selna found that movant Quinn had a larger financial interest than movant Kessler in the relief sought in the case, identifying that it had the most shares purchased (102,000 for Quinn to about 10,000 for Kessler) and the greater loss ($33,612.71 for Quinn to $10,484 for Kessler).  *Id.* at *2.

Judge Selna then considered movant Kessler's argument that Quinn did not meet Rule 23's typicality and adequacy requirements because Quinn had purchased all of his shares after the first two partial disclosures, which he rejected, as follows:

> **The weight of authority "favor[s] the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement", and therefore supports Quinn's position**. *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 577 (N.D.
>
> Cal. 2009) (concluding the same at the more rigorous class certification stage); *see also Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBF-VBKx, 2011 U.S. Dist. LEXIS 19771, 2011 WL 710704, at *8 (C.D. Cal. Feb. 14, 2011), *adopted*, No. CV 10-1754-VBFVBKX, 2011 U.S. Dist. LEXIS 19760, 2011 WL 710676 (C.D. Cal. Feb. 16, 2011) (concluding purchases after disclosures do not destroy typicality). …

UK PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

* * *

Moreover, the Court agrees with Quinn that, while partial disclosures may have affected the Company's value, the complaint alleges that the final corrective disclosure (which occurred at the end of the class period on February 17, 2021), revealed the related party dealings. Compl. ¶ 34. And, like prospective members of the class, Quinn suffered injuries as a result of the final February 17th disclosures.

Finally, the Court also acknowledges that many prospective members of the class will likely not have exactly the same trading patterns as Kessler or Quinn. *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 602 (C.D. Cal. 2009) ("[O]ther class members also presumably purchased after [the] first corrective disclosure and during the disclosure period."). The prospective class includes "all of those who purchased or otherwise acquired the publicly traded securities of Champignon during the Class Period . . . and were damaged upon the revelation of the alleged corrective disclosure." Id. ¶ 37. The Class is not limited to those who purchased shares only before the partial disclosures (and indeed, the Class will likely include those who purchased after the first or even second partial disclosure).

Therefore, the Court finds that Quinn meets the adequacy and typicality requirements for appointment as lead plaintiff.

*Id.* at *3-*4 (emphasis supplied).

UK Funds' trading patterns shows that they did not purchase any of their shares in the immediate aftermath of the first corrective disclosure, when the price of Enphase stock had fallen. As noted earlier, the Class Period here extends for 18 months, from April 25, 2023 through October 22, 2024. The first alleged corrective disclosure was six months into the Class Period, on October 26, 2023, causing the stock price to drop 15% from $96.18 to $82.09. The final disclosure was made on October 22, 2024 – nearly a year later – and the stock price dropped from $92.23 to $78.47 (15%). In between the first and final corrective disclosures, Enphase's stock rebounded sharply, hitting the $100 per share mark on November 24, 2023 (meaning that it was up nearly 25% in the month following the first alleged corrective disclosure) and trading continually over $110 per share for much of the remaining portion of the Class Period.

Rhondda made its purchases on February 16, 2024, at $135.84, and July 25, 2024, at $119.25. Cheshire made many more purchases, beginning on November 19, 2023, at $90.23, and reaching a high on May 30, 2024, at $129.83. Thus, neither Rhondda nor Cheshire sought to take advantage of the lowered price to which Enphase stock fell immediately after the first disclosure. Indeed, their purchases were generally made at prices that were *higher* than the price from which the stock fell *before* the first corrective disclosure, all of which were within the 12 months period (*i.e.,* two-thirds of the Class Period)

7

between the first and the final corrective disclosure. And based on the allegations in the complaint filed by HANSAINVEST's counsel, all of the purchases were made at prices that were artificially inflated by the defendants' false and misleading statements and omissions. The combination of these facts makes UK Funds' purchases and claims absolutely typical of purchases and claims of absent class members.

HANSAINVEST's questioning, in its opposition brief at page 10, as to whether UK Funds (and presumably other class members that purchased their Enphase stock after the first curative disclosure) might be subject to a lack of reliance argument because they might not be able to assert a fraud on the market claim is not only highly prejudicial to the class, but it is undermined by the complaint that HANSAINVEST's counsel filed to commence this action on behalf of another fund. There, as noted above, HANSAINVEST's counsel alleges the plaintiff is entitled to assert fraud on the market claims for purchases made throughout the Class Period, and that defendants are liable for their false and misleading statements from the beginning to the end of the Class Period based on that theory. *See* Dkt. No. 1 at ¶¶ 1, 15, 55, 61. Indeed, as alleged in the complaint, investors only "began to learn the truth" with the disclosure of October 26, 2023, after which Defendants continued making false and misleading statements until "[i]nvestors learned the full truth about Enphase's competitive positioning in Europe after the market closed on October 22, 2024[.]" *Id.* at ¶¶ 39, 42, 51; *see also In re Countrywide, supra.*

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson*, 2007 WL 1129344, *4 (citation omitted). Here, especially given the allegations in the filed complaint, which asserts a continuing course of conduct from the beginning to the end of the Class Period, there is no basis for questioning that UK Funds' claims are typical of the claims of all absent class members. To the contrary, as the court in *Champignon Brands* found, citing to other Ninth Circuit decisions, the "weight of authority" is substantially against HANSAINVEST's argument and "favor[s] the position that the purchase of stock after a partial disclosure *is not a per-se bar to satisfying the typicality requirement*." 2021 WL 4935160, at *3 (emphasis supplied), citing to *In re Connectics Corp. Sec. Litig.*, 257 F.R.D. at 577 and *Hufnagle*, 2011 WL 710704, at *8.[5]

---

[5] *See also Weston v. DocuSign, Inc.*, No. 22-CV-00824-WHO, 2024 WL 2925979, *7 (N.D. Cal. June 10, 2024) ( "I will follow the weight of authority"); *In re Montage Group Limited Sec. Litig.*, Case No. 14-cv-

UK PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

The cases HANSAINVEST cites on this point in its Opp. Br. at 10-11 are vastly different from the situation involving UK Funds and their purchases of stock at the prices they paid during the 12-month period after the first partial corrective disclosure here.  In *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658 (SAS), 2011 WL 4597553 (S.D.N.Y Oct. 4, 2011), a short seller report questioning Longtop's financial results was issued on April 26, 2011, and another adverse report was published the next day.  Three members of a lead plaintiff movant group who accounted for most of the group's losses purchased all their shares on May 6, 2011 (ten days after the short seller report), on May 9, which was the day the short seller issued a second negative report, and on May 11.  All of the purchases were at prices that had been depressed by the negative reports about the company.  *Id.*[6]  Given these facts, and that the movant group was being sued for allegedly being involved in a $1.4 billion Ponzi scheme, the court rejected the group's lead plaintiff motion.  None of those facts are remotely similar to the situation involving UK Funds here.

HANSAINVEST's reliance on *Bhangi v. Hawaiian Elec. Indus.,* No. 323-cv-04332-JSC, 2023 WL 8482871 (N.D. Cal. Dec. 7, 2023), is equally misplaced.  There, a terrible fire in Hawaii started on August 8, 2023, severely impacting the electric company defendant and its stock price.  News articles came out on August 12, 2023, that Hawaiian Electric did not have proper procedures in place to contain the fires.  It was only following this important announcement that one of the applicants for lead plaintiff bought shares just a couple days later on August 14, 2023.  On August 15, 2023, S&P downgraded the stock and the applicant then sold out his shares.  The court disqualified this applicant, finding that his purchases of Hawaiian Electric's stock only after the devastating fire and the disclosure about its lack of proper

00722-SI**,** 2016 WL 1598666, *4 (N.D. Cal. April 21**,** 2016) ("The Court is not persuaded that a plaintiff is atypical simply because he buys stock after the disclosure of an alleged fraud. Numerous cases have held that a proposed class representative meets the typicality requirement even after purchasing stock subsequent to an adverse disclosure."); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 346 (S.D.N.Y. 2009) (approving lead plaintiff all of whose initial stock purchases came after the defendant had made its first partial disclosure); *In re VEON Ltd. Sec. Litig.,* No. 15 Civ. 8672 (ALC) (OTW), 2022 WL 1284547, *6 (S.D.N.Y. Apr. 29, 2022) (approving lead plaintiff who purchased his shares after three of five corrective disclosures).

[6] Thereafter, within a week, on May 17, 2011, trading was halted and on May 20, 2011, it was revealed that the SEC was conducting an investigation of Longtop.  *Id.*

UK PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

procedures made him subject to potential unique defenses. But clearly, *Bhangi* is quite different from the facts alleged here and the UK Funds' purchase profile, which involved their purchases of Enphase stock well after the first partial disclosure and when the stock's price had rebounded.

*Lundy v. Ideanomics, Inc.*, No. 20 Civ. 4944 (GBD), 2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020), is even more readily distinguishable. *Lundy* involved a partial disclosure on June 25, ***which mentioned the alleged fraudulent conduct***, and a final disclosure ***a day later*** on June 26, 2020. The movant with the largest financial interest made all of its purchases within the one day between the two disclosures, which the court found made the applicant clearly subject to unique defenses, primarily because the initial corrective disclosure "mention[ed] the alleged fraudulent conduct." *Id.* at *3.[7]

### C. HANSAINVEST's Other Attacks on UK Funds Are Makeweight and Should Be Rejected

With HANSAINVEST's calculation of its losses shown to be vastly overstated and its challenges to UK Funds' standing, typicality and adequacy shown to be against the weight of authority in the Ninth Circuit and elsewhere, as well as contrary to the allegations in the complaint filed by HANSAINVEST's counsel, UK Funds respectfully submit that HANSAINVEST's remaining arguments should also be rejected by this Court. These attacks relate to the form of the declaration and certifications that managers of the UK Funds submitted, and the timing of their motion.

### 1. UK Funds Filed Within the 60-Day Deadline Set in the PSLRA

The PSLRA enacted by Congress established a 60-day deadline to file lead plaintiff motions. The February 11, 2023 deadline was also stated in the 60-day notice issued by HANSAINVEST's counsel (on behalf of the fund that filed the initial complaint) without any qualification. And the same 60-day deadline

---

[7] HANSAINVEST also relies in its Opp. Br. at 10-11 on *In re Snap Inc. Sec. Litig.,* No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) and *In re IMAX Sec. Litig.*, 272 F.R.D. 138 (S.D.N.Y. 2010). But, as shown above, the holding in *Snap* is contrary to the weight of authority cited in *In re Connetics* and *Champignon Brands*, and in any case it is not controlling in this District. Moreover, in *Snap,* the unsuccessful movant sold out all of its position in the stock prior to the corrective disclosure ending the class period, thus raising potential loss causation concerns that do not pertain here. The reliance on *IMAX* is also misplaced since there is no issue of loss causation in the instant matter applicable to UK Funds, which held all of their purchased shares throughout the Class Period.

UK PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

of February 11, 2025, was noted by the Court in its Order Extending Time to Respond to the Complaint and Continuing Case Management Deadlines, Dkt. No. 13.

UK Funds filed their motion of February 11, 2025, as required by Congress in the PSLRA. The 5:00 p.m. filing requirement is a Standing Order of the Court that, as counsel for UK Funds previously apologized, was inadvertently missed with respect to UK Funds' motion. But that does not mean that UK Funds' motion was not filed on February 11, 2025, within the 60 days required by the PSLRA and per the 60-day notice. None of the cases relied upon by HANSAINVEST hold to the contrary; instead, the disqualified movants in *Skwortz v. Crayfish Co. Ltd.*, No. 00 Civ. 6766 (DAB), 2001 WL 1160745 (S.D.N.Y. Sept. 26, 2001) and the other cases cited by HANSAINVEST missed the deadline imposed by Congress entirely, filing after the 60th day. Seeking to disqualify the UK Funds on that basis, and making it a focal point of HANSAINVEST's arguments, does not advance the interests of justice or comport with the spirit and intention of the PSLRA's quest for the appointment of "the most adequate plaintiff to represent the Class." For these reasons, the argument should be rejected.

### 2. UK Funds' Joint Declaration and Certifications Are in Substantial Compliance with 28 U.S.C. § 1746 and Ninth Circuit Law

As noted above, HANSAINVEST's opposition attacks the forms of UK Funds' declaration and certifications. It does so on the basis that they did not include the words "under the laws of the United States," which is technically required of foreign declarants in the *ad jurat* clause of declarations filed pursuant to 28 U.S.C. § 1746. In the Ninth Circuit, however, case law has held that declarations do not need to strictly follow § 1746 with precision. Rather, the majority of cases require only that such declaration are substantially compliant, with substantial compliance requiring "(1) that the statements in the declaration were made 'under penalty of perjury,' and (2) 'that the contents were true and correct.'" *See, e.g., Corona v. Quad Graphics Printing Corp.*, 218 F. Supp. 3d 1068, 1071 (C.D. Cal. 2016).

Accordingly, when a declarant substantially complies with the statute's language, courts have not punished the declarant because of such imperfections. In *Soto v. Castlerock Farming & Transp., Inc.*, No. 1:09-CV-00701 AWI JLT, 2011 WL 2680839, at *4 n. 6 ( E.D. Cal. July 8, 2011), the Court overruled the

11

objection to the declaration finding that the language "under penalty of perjury," though not contained in the declaration, was not fatal since the declaration did attest that it is "true and correct" and attested "under the laws of California," holding that this is "substantially" what is required by 28 U.S.C. § 1746.[8]  In *Crass v. Yalla Grp. Ltd.*, No. 21 CIV 6854 (PAE), 2021 WL 5181008, *7 (S.D.N.Y. Nov. 8, 2021), where the PSLRA certification was not properly sworn under penalty of perjury "under the laws of the United States of America" pursuant to 28 U.S.C. § 1746(1), it was noted that "the Court has discretion in the lead plaintiff appointment process and can decide to use or ignore the alleged technical (as opposed to substantive) inadequacy of a certificate as a determinative factor."  *See also Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416(SHS)(AJP), 2007 WL 4526532, *9 (S.D.N.Y. Dec. 21, 2007) (same).  Indeed, in *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 407 n.19 (S.D.N.Y. 2004), the Court noted that "although the procedures contemplated by the PSLRA are well defined, district courts have not followed them invariably, especially when doing so would fail the court's ultimate obligation to appoint as lead plaintiff the member or members of the purported plaintiff class who are most capable of representing the interests of the Class members."  In *Pirelli*, the deficiencies were not significant or substantive – as here – and, acknowledging its discretion in conducting the appointment process, the court deemed the "existence or adequacy of of any certicate[s] submitted here will not be considered a determinative factor at this stage, whatever the import of a certificates adequacy may be at a later portion of the proceedings."  *See also In re Versata, Inc.*, No. C 01-1439 SI, *et al.*, 2001 WL 34012374, *3 (N.D. Cal. Aug. 17, 2001) (same) (citing cases).

Against this backdrop, the Joint Declaration and Certifications of the UK Funds substantially comply with the section's requirements and intent.  Below is what the Joint Declaration states (Ex. 3 to Dkt. No. 31):

---

[8]  *See also Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (verification found to conform with statute although the language "did not follow § 1746's form with precision"); *Trammell Real Estate Corp. v. Trammell*, 748 F.2d 1516, 1518 (11th Cir. 1984) (declaration language "substantially similar" to language of § 1746 met the statute's requirements).

12

We declare, pursuant to 28 U.S.C. § 1746, under the penalty of perjury that the foregoing is true and correct.

Executed this __7__ day of February 2025.     **Cheshire Pension Fund**

Claire Jones
Finance & Investment Manager

Executed this __10th__ day of February 2025.     **Rhondda Cynon Taf Pension Fund**

Barrie Davies
Deputy Chief Executive

As shown above, UK Funds provided the statements and information contained in the Declaration "pursuant to 28 U.S.C. § 1746," which indicates an appreciation and intent to follow that United States statute.  UK Funds' executives made their declaration "under the penalty of perjury" and further certified that "the foregoing is true and correct."  Thus, UK Funds have substantially complied with § 1746,[9] and the effort by HANSAINVEST to exploit the non-prejudicial and unintentional technical violation of 28 U.S.C. § 1746 – especially since the affirmation explicitly refers to 28 U.S.C. § 1746 and declares "under penalty of perjury" that their declaration is "true and correct" – is not an appropriate basis to deny appointing them as Lead Plaintiffs.

## III.    CONCLUSION

For the foregoing reasons, and those stated in the UK Funds' opening and opposition briefs, UK Funds respectfully submit that they possess the largest financial interest in the relief sought by the litigation and that they have made the requisite *prima facie* showing of their typicality, adequacy and standing to

---

[9]  While UK Funds believe that their prior submissions substantially complied with 28 U.S.C. § 1746, for the avoidance of any doubt and to confirm the intent of UK Funds to subject themselves to U.S. laws and its requirements for foreign persons, we are submitting herewith a reply declaration that includes the "magic language" upon which HANSAINVEST based its argument.  *See* the Reply Declaration of the UK Public Pension Funds in Support of Their Motion for Appointment as Lead Plaintiffs and Approval of Their Selection of Lead Counsel for the Class, filed as Exhibit 1 to the Supplemental Declaration of Samuel Ward, also being filed this day.

13

UK PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

assert the claims in this action.  UK Funds have also presented the experience, track record and adequacy of their proposed counsel.  Accordingly, UK Funds request that they be appointed to serve as Lead Plaintiffs and that their selection of Barrack, Rodos & Bacine as Lead Counsel be approved.

DATED:  March 4, 2025

Respectfully submitted,

BARRACK, RODOS & BACINE
STEPHEN R. BASSER
SAMUEL M. WARD

/s/ STEPHEN R. BASSER

600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:   (619) 230-1874

JEFFREY A. BARRACK*
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
E-mail:  jbarrack@barrack.com
Telephone:  (215) 963-0600
Facsimile:   (215) 963-0838

*Counsel for the UK Public Pension
Funds and Proposed Lead Counsel
for the Class*

*Pro Hac Vice* application to be filed

UK PUBLIC PENSION FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL