**KESSLER TOPAZ MELTZER
 & CHECK, LLP**
NAUMON A. AMJED (appearance *pro hac vice*)
(namjed@ktmc.com)
280 King of Prussia Road
Radnor, PA 19087
Tel:   (610) 667-7706
Fax:   (610) 667-7056

*Counsel for Proposed Lead Plaintiff HANSAINVEST Hanseatische Investment-GmbH and Proposed Lead Counsel for the Class*

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| THE TRUSTEES OF THE WELFARE AND PENSION FUNDS OF LOCAL 464A – PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>ENPHASE ENERGY, INC., BADRINARAYANAN KOTHANDARAMAN, and RAGHUVEER BELUR,<br><br>　　　　　　　Defendants. | Case No. 4:24-cv-09038-JST<br><br>**STIPULATION AND [PROPOSED] ORDER FOR ADMINISTRATIVE LEAVE TO FILE STATEMENT OF RECENT DECISION**<br><br>**CLASS ACTION** |

1. Pursuant to Civil Local Rules 7-11 and 7-3(d)(2), Proposed Lead Plaintiff HANSAINVEST Hanseatische Investment-GmbH ("HANSAINVEST") respectfully requests leave to file a Statement of Recent Decision in connection with its motion for appointment as lead plaintiff (ECF No. 16).

**WHEREAS**, HANSAINVEST wishes to bring to the Court's attention the decision in *SEB Investment Management AB v. Wells Fargo & Co.*, No. 3:22-cv-03811-TLT (N.D. Cal. April 25, 2025), ECF No. 215 (attached as Exhibit A), which HANSAINVEST believes is relevant to its motion for appointment as lead plaintiff;

**WHEREAS**, HANSAINVEST has conferred with the remaining competing movant, Cheshire Pension Fund and Rhondda Cyon Taf Pension Fund (the "UK Funds"), regarding HANSAINVEST's desire to submit supplemental authority issued after the April 10, 2025 noticed hearing date for HANSAINVEST's motion;

**WHEREAS**, the UK Funds do not oppose HANSAINVEST's request for administrative leave under Civil Local Rule 7-11 to file a Statement of Recent Decision under Civil Local Rule 7-3(d)(2) so long as the decision is presented without argument and preserving the UK Funds's right to object and/or respond to any such argument;

**WHEREAS**, pursuant to the parties' stipulation, HANSAINVEST therefore asks the Court to permit submission of HANSAINVEST's Statement of Recent Decision under Civil Local Rule 7-3(d)(2) and consideration of the supplemental authority as deemed appropriate by the Court.

**IT IS ACCORDINGLY STIPULATED**, subject to the Court's approval under Civil Local Rules 7-11 and 7-3(d)(2), by and between the undersigned counsel for the parties, that:

1. HANSAINVEST may file a Statement of Recent Decision, as described above, submitting the identified supplemental authority for the Court's consideration.

DATED: May 7, 2025

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Naumon A. Amjed*
NAUMON A. AMJED (appearance *pro hac vice*)
(namjed@ktmc.com)
280 King of Prussia Road
Radnor, PA 19087

|   |   |   |
|---|---|---|
| 1 |  | Tel:     (610) 667-7706 |
| 2 |  | Fax:    (610) 667-7056 |
| 3 |  | JENNIFER L. JOOST (Bar No. 296164) |
|   |  | (jjoost@ktmc.com) |
| 4 |  | One Sansome Street, Suite 1850 |
|   |  | San Francisco, CA 94104 |
| 5 |  | Tel:     (415) 400-3000 |
|   |  | Fax:    (415) 400-3001 |
| 6 |  |  |
| 7 |  | *Counsel for Proposed Lead Plaintiff HANSAINVEST Hanseatische Investment-GmbH and Proposed Lead Counsel for the Class* |
| 8 |  |  |
| 9 | DATED: May 7, 2025 | **BARRACK, RODOS & BACINE** |
| 10 |  | */s/ Stephen R. Basser* |
| 11 |  | STEPHEN R. BASSER |
|   |  | SAMUEL M. WARD |
| 12 |  | 600 West Broadway, Suite 900 |
|   |  | San Diego, CA 92101 |
| 13 |  | Telephone: (619) 230-0800 |
|   |  | Facsimile: (619) 230-1874 |
| 14 |  |  |
| 15 |  | JEFFREY A. BARRACK (*pro hac vice* forthcoming) |
|   |  | 3300 Two Commerce Square |
| 16 |  | 2001 Market Street |
|   |  | Philadelphia, PA 19103 |
| 17 |  | E-mail: jbarrack@barrack.com |
|   |  | Telephone: (215) 963-0600 |
| 18 |  | Facsimile: (215) 963-0838 |
| 19 |  |  |
|   |  | *Counsel for Proposed Lead Plaintiff Cheshire Pension Fund and Rhondda Cyon Taf Pension Fund and Proposed Lead Counsel for the Class* |
| 20 |  |  |
| 21 |  |  |

Pursuant to Civil Local Rule 5-1(i)(3), I attest that all signatories concur in filing this stipulation.

DATED: May 7, 2025                              */s/ Naumon A. Amjed*
                                                NAUMON A. AMJED (appearance *pro hac vice*)

**[PROPOSED] ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED.


DATED: _____          _____
                                                                        HONORABLE JON S. TIGAR
                                                                        UNITED STATES DISTRICT JUDGE

# **EXHIBIT A**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEB INVESTMENT MANAGEMENT AB, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>Defendants. | Case No. 22-cv-03811-TLT<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>Re: ECF 182 |

Lead Plaintiff SEB Investment Management AB ("SEB") and additional Plaintiff West Palm Beach Firefighters' Pension Fund ("WPB") (collectively, "Plaintiffs") bring this securities class action against Wells Fargo & Company ("Wells Fargo") and its executive officers Charles W. Scharf, Kleber R. Santos, and Carly Sanchez (collectively, "Defendants"), alleging violations of Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act"), Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act. ECF 116.

Before the Court is Plaintiffs' motion to certify class, appoint class representatives, and appoint class counsel. ECF 182. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to certify class consisting of all persons and entities who purchased or acquired Wells Fargo common stock between February 24, 2021, and June 9, 2022, inclusive. *Id.* at 3.

The Court finds this motion appropriate for resolution without oral argument and takes the matter under submission. *See* L.R. 7-1(b) (authorizing courts to dispense with oral argument on any motion except where an oral hearing is required by statute). After review and consideration of motion, briefings, attachments and exhibits thereto, the Court **GRANTS** Plaintiffs' motion for class certification.

## I. BACKGROUND

### A. Procedural Background

On June 28, 2022, Plaintiff Khosrow Ardalan filed a class action complaint against Well Fargo and its executive officers. ECF 1. The Court related and consolidated several actions with the instant action. *See* ECF 53, 99, 107. The Court appointed SEB as Lead Plaintiff and appointed Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel. ECF 55.

On January 31, 2023, Plaintiffs SEB and WPB filed a consolidated class action complaint against Wells Fargo, Charles W. Scharf, Kleber R. Santos, and Carly Sanchez. ECF 69. On August 18, 2023, the Court granted Defendants' motion to dismiss and provided Plaintiffs with leave to amend. ECF 112.

On September 8, 2023, Plaintiffs filed an amended consolidated class action complaint. ECF 116. Plaintiffs alleged violations of Section 10(b) of the Exchange Act, Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act. *Id.* On July 19, 2024, the Court denied Defendants' motion to dismiss the amended complaint. ECF 150. Defendants filed an answer to the amended complaint. ECF 155.

On January 17, 2025, Plaintiffs filed a motion to certify class, appoint class representatives, and appoint class counsel. ECF 182. Defendants timely filed an opposition, ECF 202, and Plaintiffs timely filed a reply, ECF 205.

### B. Factual Background

In late 2019, Robert Scharf was hired as Wells Fargo's Chief Executive Officer ("CEO") and tasked with turning Wells Fargo around after several years of regulatory scrutiny. ECF 116, ¶¶ 5, 92–95. In March 2020, Wells Fargo announced the Diverse Search Requirement, which "require[d] diverse candidate slates and interview teams for all roles at Wells Fargo with total direct compensation of more than $100,000." *Id.* ¶¶ 6, 115.

However, a few months later, Scharf made multiple internal comments blaming Wells Fargo's lack of senior-level Black employees on a "very limited pool of Black talent to recruit from." *Id.* ¶¶ 7, 117. Scharf's remarks generated public backlash when *Reuters* published a story about them in September 2020. *Id.* ¶¶ 118–19.

1  In response to investor demands, Wells Fargo provided disclosures about the Diverse
2  Search Requirement, repeatedly touting the Diverse Search Requirement throughout the Class
3  Period. *Id.* ¶¶ 141–47, 262–67, 269–70, 273–74, 276–79. However, Plaintiffs allege that
4  Defendants' statements were materially misleading because diverse candidates were routinely
5  subjected to "fake" interviews—i.e., interviewed for jobs they had no legitimate shot of getting,
6  including because the position was earmarked for or already given to someone else—in order for
7  Wells Fargo to claim compliance with the Diverse Search Requirement. *See id.* ¶¶ 22, 149–63,
8  165–210, 227, 238, 333. Plaintiffs' complaint cites to more than thirty sources asserting that fake
9  interviews were widespread at Wells Fargo. *See id.* ¶¶ 18, 22, 149–61, 164–209, 213.

10  For years, the issue of fake interviews was consistently reported to the highest levels of
11  Wells Fargo, including to Scharf and Santos. *See* ECF 182, at Exhibits ("Exs.") 2–9. On May 19,
12  2022, *The New York Times* reported that employees in Wells Fargo's Wealth Management
13  division had conducted fake interviews of diverse candidates in order to satisfy the Diverse Search
14  Requirement. ECF 116, ¶¶ 18, 156–57, 226–28, 319. Wells Fargo immediately sought to
15  discredit the report, claiming it could not corroborate the specific claims in the article. *Id.* ¶¶18,
16  229–31. However, Defendants were repeatedly alerted to fake interviews—even in the days
17  leading up to *The New York Times*' May 19 article. ECF 182, at Exs. 10–11.

18  After the May 19 article, at least two dozen individuals from across the Company
19  complained internally about being subjected, or subjecting candidates, to fake interviews. *Id.* at
20  Exs. 12–15. Despite the Defendants' public disavowals of the practice of fake interviews,
21  internally, employees questioned Wells Fargo's public statements. *Id.* at Exs. 19–20.

22  On June 9, 2022, *The New York Times* published a second article that revealed that fake
23  interviews were widespread across multiple of Wells Fargo's various units. ECF 116, ¶¶ 22, 158–
24  59, 238–39, 333–37. In response to this news, Wells Fargo's stock price fell 10 percent over two
25  days. *Id.* ¶¶ 23, 241, 339.

26  **II.    LEGAL STANDARD**

27  To certify a class, a court must be "satisfied, after a rigorous analysis" that the plaintiffs
28  have satisfied the requirements of Federal Rule of Civil Procedure 23 by a preponderance of the

3

evidence. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–65 (9th Cir. 2022) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

Rule 23 consists of two parts. Fed. R. Civ. P. 23. First, Plaintiffs must satisfy all four requirements of Rule 23(a): "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Olean*, 31 F.4th at 663; Fed. R. Civ. P. 23(a). Second, Plaintiffs must demonstrate through evidentiary proof that the class satisfies at least one of the three subsections under Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Classes certified under Rule 23(b)(3) require that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). For example, to determine whether a common question prerequisite is satisfied, "a district court is limited to resolving whether the evidence establishes that a common question is capable of classwide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666–67.

### III. DISCUSSION

Plaintiffs argue that they have satisfied their burden in establishing the class certification requirements for Rule 23. ECF 182. The parties only dispute (1) typicality and (2) damages

4

1  methodology under predominance.  *See* ECF 202.  The Court will determine whether Plaintiffs
2  have satisfied Rule 23 requirements with focus on the disputed elements.

### A. Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The party seeking certification "do[es] not need to state the exact number of potential class members, nor is a specific number of members required for numerosity." *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005).  However, courts within the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members. *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605–06 (N.D. Cal. 2014); *In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012).

During the Class Period, an average of 136.6 million shares of Wells Fargo common stock traded on a weekly basis.  ECF 182-2, Expert Report of Joseph R. Mason, Ph.D, ("Mason Rpt."), ¶ 46.  In light of this, Plaintiff contends that the proposed class of investors who purchased Wells Fargo common stock likely contains at least thousands of geographically dispersed investors, making joinder impracticable.  ECF 182, at 11–12.  Defendant does not contest numerosity. *See* ECF 202.  The Court finds that Plaintiffs have satisfied numerosity.

#### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. (a)(2).  "A common contention need not be one that 'will be answered, on the merits, in favor of the class.'  It only 'must be of such nature that it is capable of class-wide resolution.'" *Alcantar v. Hobart Servs.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quoting *Amgen*, 568 U.S. at 459 and *Wal-Mart Stores*, 564 U.S. at 350).  "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)).

Plaintiffs argue that there are numerous common questions including: "(i) whether Defendants made materially false and misleading statements and omitted material facts during the

5

Class Period; (ii) whether Defendants acted with scienter; (iii) whether Defendants' alleged misrepresentations and omissions were material; and (iv) whether Defendants' alleged misconduct caused investors to suffer damages." ECF 182 (quoting *Pardi v. Tricida, Inc.*, No. 21-CV-00076-HSG, 2024 WL 4336627, at *4 (N.D. Cal. Sept. 27, 2024)). Defendants do not contest commonality. *See* ECF 202. The Court finds that Plaintiffs have satisfied commonality.

### 3. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement has two components: "(1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class." *Amey v. Cinemark USA Inc.*, No. 13-CV-05669-WHO, 2018 WL 3956326, at *6 (N.D. Cal. Aug. 17, 2018) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)).

Plaintiffs and Lead Counsel contend that they have no conflicts of interest with other class members and that they have worked diligently to protect the Class's interests. *See* ECF 182, at 13–15. Defendants do not contest adequacy. *See* ECF 202. The Court finds that Plaintiffs have satisfied adequacy.

### 4. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "test of typicality is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). A plaintiff's claims are considered typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020). A plaintiff may not be typical if she is "subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508. However, "[d]iffering factual scenarios resulting in a claim of the same nature as other class members does

1  not defeat typicality." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 n. 9 (9th Cir. 2011)
2  (citing *Hanon*, 976 F.2d at 508).

3  Here, Defendants argue that both SEB and WPB are atypical of the class. ECF 202, 22–
4  24. For SEB, Defendants contend that SEB is a European asset manager that does not itself own,
5  and at no relevant time has owned, any Wells Fargo stock. *Id.* at 23. Rather, SEB seeks to litigate
6  on behalf of fourteen different funds whose investments are in turn owned by third-party unit
7  holders. *Id.* Because SEB must demonstrate third-party standing, the issue threatens to become a
8  sideshow, making SEB atypical. *Id.*

9  However, courts have routinely found asset managers like SEB to have standing to
10  represent their investment funds under the prudential exception to Article III standing. *See, e.g.*,
11  *Weston v. DocuSign, Inc.*, No. 22-CV-00824-WHO, 2022 WL 1301770, at *4 (N.D. Cal. Apr. 18,
12  2022) (prudential exception applies to European asset manager) (collecting cases); *City of Taylor*
13  *Police & Fire Ret. Sys. v. W. Union Co.*, No. 13-CV-03325-MSK-MJW, 2014 WL 4799659, at *4
14  (D. Colo. Sept. 26, 2014) (finding that SEB had prudential standing on behalf of Swedish and
15  Luxembourgian funds); *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 581
16  (S.D.N.Y. 2009) ("SEB AB has standing to sue on behalf of [its Swedish] fund"). Further, SEB
17  has been appointed as a class representative by courts in this District. *See SEB Inv. Mgmt. AB v.*
18  *Symantec Corp.*, 335 F.R.D. 276, 288 (N.D. Cal. 2020) (appointing SEB as class representative).
19  Thus, SEB's reliance on the prudential standing exception—and the potential "sideshow" it may
20  create—does not render it atypical.

21  For WPB, Defendants contend that WPB entirely delegated its investment decisions to its
22  investment manager, Newton Investment Management ("Newton"). ECF 202, at 24. Newton
23  confirmed that it used a proprietary, unique investment decision process to invest in particular
24  stocks, and it has no evidence that it considered Wells Fargo's Diverse Search Requirement
25  guidelines when making investment decisions on behalf of WPB. *Id.* Thus, Defendants contend
26  that WPB is subject to unique defenses because it cannot establish that it relied on the alleged
27  misrepresentations. *Id.*
28

7

However, Defendants later concede that the Class is entitled to *Basic*'s presumption of reliance. *See infra* Section III.B.2.a. Thus, WPB "need not prove that [Newton] read or heard the misrepresentation that underlies its securities claim," but "is presumed to have relied on the misrepresentation by virtue of [Newton's] reliance on a market that fully digests all available material information about a security and incorporates it into the security's price." *Symantec*, 335 F.R.D. at 283. Defendants' atypicality argument as to WPB is unpersuasive. The Court finds that Plaintiffs have satisfied typicality.

**B.    Rule 23(b)**

Rule 23(b)(3) requires that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court will address each in turn.

### 1. Superiority

Rule 23(b)(3) requires "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To assess superiority, courts consider four factors: "class members' interests in individual litigation, the extent and nature of other litigation that is already begun by members of the class, the forum, and manageability." *Weston v. DocuSign, Inc.*, 348 F.R.D. 354, 370 (N.D. Cal. 2024).

Here, Plaintiffs assert that each factor supports a finding of superiority. ECF 182, at 24. The proposed Class contains thousands of investors whose individual damages are small enough to render individual-controlled litigation prohibitively expensive. *Id.* Plaintiffs are not aware of any other litigation against these Defendants asserting these securities fraud claims. *Id.* "[C]oncentrating the litigation of prospective Class [m]embers in one forum removes the risk of inconsistent adjudication and promotes the fair and efficient use of the judicial system." *Id.* (quoting *Lamartina v. VMware, Inc.*, No. 5:20-CV-02182-EJD, 2024 WL 3286059, at *4 (N.D. Cal. July 2, 2024)). "[M]anaging this case as a class action presents no unusual difficulties." *Id.* (quoting *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, No. 18-CV-04844-BLF, 2022 WL 1459567, at *11 (N.D. Cal. May 9, 2022)).

8

Defendants do not contest superiority. *See* ECF 202. Accordingly, the Court finds that Plaintiffs have established superiority.

### 2. Predominance

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. Proc. 23(b)(3). The predominance analysis "focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang*, 737 F.3d at 545 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotation marks omitted)).

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("*Halliburton I*"). To establish a violation of Section 10(b) and Rule 10b-5, Plaintiffs must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen*, 568 U.S. at 460–61. To plead Section 20(a) claims, a plaintiff must allege a violation of the Exchange Act and that "the defendant directly or indirectly controls any person liable for the violation." *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011).

Here, the parties do not dispute predominance of any elements of the Section 10(b), Rule 10b-5, and Section 20(a) claims. *See* ECF 182, at 15–23; ECF 202. Rather, the crux of the parties' predominance dispute stems from whether Plaintiffs have presented a methodology capable of measuring damages on a classwide basis consistent with their theory of liability. ECF 202, at 9–21.

Because "[w]hether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance," *Halliburton I*, 563 U.S. at 810, the Court will first address whether Plaintiffs have established predominance as to reliance. The Court will then turn to the parties' dispute as to damages methodology.

9

**a. Reliance**

To prove reliance on a class-wide basis, Plaintiffs invoke the fraud-on-the-market presumption created in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). ECF 182, at 16–21. The "fraud on the market" presumption arose as a practical response to the difficulties of proving direct reliance in the context of modern securities markets, where impersonal trading rather than a face-to-face transaction is the norm. *Pardi*, 2024 WL 4336627, at *5 (citing *Symantec*, 335 F.R.D. at 283). The presumption is based on the well-founded principle that "a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283, (2014) ("*Halliburton II*").

To invoke the *Basic* presumption, Plaintiffs must show: (1) the alleged misrepresentations were publicly known, (2) that the stock traded in an efficient market, and (3) that the plaintiff traded the stock between the time when the misrepresentations were made and when the truth was revealed. *Id.* at 268; *see Amgen*, 568 U.S. at 469–70 (materiality need not be proved at class certification). When the presumption applies, investors do not need to demonstrate individual reliance. *Basic*, 485 U.S. at 241–47.

Here, Plaintiffs argue that Defendants' alleged misrepresentations were publicly made statements. *See, e.g.*, ECF 116, ¶¶ 262–67, 269–70, 273–74, 276–79. Plaintiffs and Class members purchased Wells Fargo common stock between the time Defendants made their misrepresentations and the alleged corrective disclosure. *See* ECF 69-1, 69-2; ECF 116, ¶¶ 238–41, 332–39, 342. Defendants do not contest either of these elements.

Citing to Plaintiffs' expert report, Plaintiffs argue that the Wells Fargo common stock was traded in an efficient market during the class period. ECF 182, at 17 (citing Mason Rpt. ¶¶ 40–103.). Courts have found the New York Stock Exchange ("NYSE") to be a presumptively efficient market. *See Purple Mountain Tr. v. Wells Fargo & Co.*, No. 18-CV-03948-JD, 2022 WL 3357835, at *5 (N.D. Cal. Aug. 15, 2022) ("[W]hile not dispositive of market efficiency, the fact

1   that Wells Fargo stock is listed on the NYSE, a highly regarded and well-regulated exchange,
2   strongly indicates that it trades in an efficient market.).

3   In addition, to evaluate market efficiency, courts in the Ninth Circuit consider the
4   nonexclusive factors set out in *Cammer v. Bloom*, 711 F. Supp. 1264, 1285-87 (D.N.J. 1989). *Id.*
5   at *3–4. The *Cammer* factors are: (1) a large weekly trading volume; (2) the existence of a
6   significant number of analyst reports; (3) the existence of market makers and arbitrageurs in the
7   security; (4) eligibility to file an S-3 registration statement; and (5) a cause-and-effect relationship
8   between unexpected corporate disclosures and resulting stock price movements. *Id.* at *3.
9   Further, courts in this Circuit also consider the three additional factors from *Krogman v. Sterritt*,
10  202 F.R.D. 467, 477–78 (N.D. Tex. 2001): (1) the company's market capitalization; (2) the bid-
11  ask spread for stock sales; and (3) the float for the company's stock. *Id.* at *5; *Malriat v.
12  QuantumScape Corp.*, No. 3:21-CV-00058-WHO, 2022 WL 17974629, at *13 (N.D. Cal. Dec. 19,
13  2022) (applying the *Krogman* factors).

14  Here, Plaintiffs' expert establishes that each of the *Cammer* and *Krogman* factors support a
15  finding that Wells Fargo common stock traded in an efficient market throughout the Class Period.
16  Mason Rpt. ¶¶ 44–92. Wells Fargo's average weekly trading volume was 3.4 percent of all
17  outstanding shares. *Id.* ¶¶ 46, 102; *Purple Mountain*, 2022 WL 3357835, at *4 (finding an average
18  weekly trading volume of 2.0 percent or more of outstanding shares "supports a strong
19  presumption of market efficiency"). Over 350 analyst reports regarding Wells Fargo were issued
20  by over 25 different analysts at firms. Mason Rpt, ¶¶ 48–51. Wells Fargo was eligible to file Form
21  S-3 during the Class Period. *Id.* ¶¶ 61,102. Additionally, the existence of 87 market makers for
22  Wells Fargo common stock supports market efficiency. *Id.* ¶¶ 54–55, 102.

23  For the fifth *Cammer* factor, Plaintiffs' expert used the event study approach to determine
24  whether Wells Fargo's common stock price reacted to new company-specific information during
25  the Class Period. *Id.* ¶¶ 65–84. Based on the event study, Plaintiffs' expert found that statistically
26  significant price movements occurred 20 times more frequently on financial information release
27  days than on non-release days. *Id.* ¶¶ 78. From this, Plaintiffs' expert concluded that Wells
28

11

1 Fargo's common stock price reacted to the release of new, Company-specific information, which
2 supports a finding of market efficiency. *Id.* ¶¶ 83–84.
3 For the *Krogman* factors, Wells Fargo's market capitalization exceeded $149 billion, *id.* ¶¶
4 87, 102, the average bid-ask spread on Wells Fargo common stock during the Class Period was
5 0.02 percent, *id.* ¶¶ 92, 102, and the float for Wells Fargo common stock exceeded 98 percent, *id.*
6 ¶¶ 88, 102.
7 Finally, Plaintiffs identify two additional factors that indicate market efficiency. ECF 182,
8 at 21. Plaintiffs argue that the lack of autocorrelation (trends or correlations in daily stock price
9 movements irrespective of new information) in Wells Fargo's common stock price bolsters a
10 finding of market efficiency. Mason Rpt. ¶¶ 94–96, 102. Plaintiffs also argue that the lack of
11 constraints on short selling Wells Fargo common stock during the Class Period further supports
12 market efficiency. *Id.* ¶¶ 100–02.
13 Defendants do not contest any of factors established by Plaintiffs. *See* ECF 202. The
14 Court finds that Plaintiffs have established predominance as to reliance under the fraud-on-the-
15 market presumption.

### b. Damages

17 The Supreme Court clarified that as part of the predominance inquiry under Rule 23,
18 plaintiffs must demonstrate that "damages are capable of measurement on a classwide basis."
19 *Comcast*, 569 U.S. at 28. The certifying court must conduct a "rigorous analysis" to determine
20 whether the proposed damages model is consistent with the plaintiffs' theory of liability, but
21 "[c]alculations need not be exact." *Id.* at 35 (citations omitted). Interpreting *Comcast*, the Ninth
22 Circuit has held that to meet the predominance requirement, "plaintiffs must be able to show that
23 their damages stemmed from the defendant's actions that created the legal liability" using the
24 proposed damages model. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (citing
25 *Comcast*, 569 U.S. at 38). However, "damage calculations alone cannot defeat certification."
26 *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010).
27 Here, Plaintiffs propose an out-of-pocket methodology that employs an event study.
28 Mason Rpt. ¶¶ 104–16. Under this methodology, Plaintiffs' expert will quantify the amount of

12

1   artificial inflation, if any, caused by Defendants' misrepresentations and omissions that existed in
2   Wells Fargo's common stock price on each day of the Class Period. *Id.* ¶¶ 111, 113–15. Plaintiffs
3   argue that this methodology directly aligns with the theory of liability that that Wells Fargo's
4   common stock price was artificially inflated during the Class Period due to Defendants' alleged
5   misrepresentations and omissions. *Id.* ¶ 113.

"Courts regularly reaffirm that the out-of-pocket, or event study, method matches plaintiffs' theory of liability under Section 10(b) of the Securities Exchange Act, making it the standard method for calculating damages in virtually every Section 10(b) class action." *DocuSign*, 2024 WL 2925979, at *9. Courts in this District have regularly found that the methodology proposed by Plaintiffs satisfies *Comcast*. *See, e.g.*, *id.* at *8–11 (finding that out-of-pocket damages methodology satisfies *Comcast*); *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, No. 20-CV-04737-RS, 2023 WL 3569981, at *8 (N.D. Cal. May 19, 2023) (same); *Oracle*, 2022 WL 1459567, at *9 (same); *Junge v. Geron Corp.*, No. C 20-00547-WHA, 2022 WL 1002446, at *6 (N.D. Cal. Apr. 2, 2022) (same); *Purple Mountain*, 2022 WL 3357835, at *5–6 (same).

Nevertheless, Defendants assert several arguments against Plaintiffs' proposed damages methodology. ECF 202, at 9–21. Defendants concede that the caselaw is not on their side and that "many district court decisions" have certified classes in this context. *Id.* at 21 (quoting *Junge*, 2022 WL 1002446, at *6). However, Defendants contend that asserting a "out-of-pocket damages" methodology and making references to unidentified financial tools and event studies should not be enough to satisfy *Comcast*. *Id.* If it were, Defendants speculate that Plaintiffs' expert could copy and paste the entirety of his expert report in every securities fraud case and meet the predominance requirement. *Id.*

Defendants assert four arguments: (a) Plaintiffs' expert fails to explain how an event study model would be applied to the specific facts here; (b) Plaintiffs' expert fails to explain whether the challenged statements induced new inflation in the stock price or maintained preexisting inflation; (c) Plaintiffs' expert did not take into account the unique circumstances of this case when proposing the damages methodology; and (d) Plaintiffs' expert's methodology is flawed as to the

13

1  use of the decline in the stock price on June 9, 2022 as a starting point. *Id.* at 10–21. In over ten
2  pages of briefing, Defendants dive into the minutia of the damages methodology, setting up their
3  own hypotheticals and then triumphantly knocking them down. *Id.*

4  However, *Comcast* does not require Plaintiffs to produce an "out-of-pocket damages
5  method [that] applies specifically to this case." *Weston*, 348 F.R.D. at 368–69; *see also Purple*
6  *Mountain*, 2022 WL 3357835, at *5–6 (rejecting Wells Fargo's assertion that plaintiff must
7  "explain how an event study will isolate damages related to the theory of liability in this case").
8  Defendants' loss causation arguments dressed as *Comcast* arguments are premature and not a bar
9  to class certification.

10  Despite being shielded by the Private Securities Litigation Reform Act ("PSLRA") at the
11  pleading stage, Defendants argue that more barriers should exist at the class certification stage.
12  The Court declines to erect such barriers here. Courts have found that federal securities class
13  actions often fit Rule 23 "like a glove," *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995),
14  *rev'd on other grounds*, 516 U.S. 367 (1996), and "the out-of-pocket or event study method . . .
15  [is] the standard method for calculating damages in virtually every Section 10(b) class action,"
16  *DocuSign*, 2024 WL 2925979, at *9 (cleaned up). Accordingly, Plaintiffs have shown that their
17  damages are capable of measurement on a classwide basis consistent with their theory of liability.

18  **C.  Appointment of Class Counsel**

19  Plaintiffs request that the Court appoint Kessler Topaz as Class counsel. "[A] court that
20  certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). When appointing class
21  counsel, courts consider: "(i) the work counsel has done in identifying or investigating potential
22  claims in the action; (ii) counsel's experience in handling class actions, other complex litigation,
23  and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and
24  (iv) the resources that counsel will commit to representing the class." *Id.* at 23(g)(1)(A)(i)–(iv).

25  Kessler Topaz has devoted substantial time and resources to litigating the claims at issue,
26  including identifying and thoroughly investigating potential claims on behalf of the Class; filing
27  two complaints; opposing two motions to dismiss; consulting with experts; and conducting all
28  manner of discovery, including propounding document requests, interrogatories, and nonparty

14

subpoenas. ECF 182, at 14. The firm also has experience in the area of securities litigation and class actions. *See* ECF 182-24, Ex. 23 (firm resume). Defendants do not contest the appointment of Kessler Topaz as Class counsel. *See* ECF 202. The Court approves Plaintiffs' choice of counsel and appoints Kessler Topaz as Class counsel.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs have satisfied the Rule 23 requirements. The Court **GRANTS** Plaintiffs' motion for class certification and certifies a class of investors defined as:

> All persons and entities who purchased or otherwise acquired Wells Fargo & Company common stock between February 24, 2021 and June 9, 2022, inclusive, and were damaged thereby. Excluded from the Class are Defendants and their families, the officers, directors, and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest

The Court further **ORDERS** that Lead Plaintiff SEB Investment Management AB and additional Plaintiff West Palm Beach Firefighters' Pension Fund be appointed as Class Representatives, and **ORDERS** that Lead Counsel Kessler Topaz Meltzer & Check, LLP shall serve as Class Counsel.

A Further Case Management Conference is set for 7/17/2025 02:00 PM in San Francisco, - Videoconference Only. The Case Management Statement due by 7/10/2025.

In addition, the parties are ordered to provide the court with a joint status report regarding the outcome of mediation no later than June 10, 2025. The mediation deadline has been extended to May 30, 2025.

This Order resolves ECF 182.

**IT IS SO ORDERED.**

Dated: April 25, 2025

TRINA L. THOMPSON
United States District Judge