1   LATHAM & WATKINS LLP
    Colleen C. Smith (Bar No. 231216)
2       *colleen.smith@lw.com*
    Katherine E. Bruce (Bar No. 361220)
3       *kathy.bruce@lw.com*
    Anastasia Pyrinis (Bar No. 352395)
4       *anastasia.pyrinis@lw.com*
    12670 High Bluff Drive
5   San Diego, CA 92130
    Telephone: +1.858.523.5400
6
    Daniel R. Gherardi (Bar No. 317771)
7       *daniel.gherardi@lw.com*
    140 Scott Drive
8   Menlo Park, CA 94025-1008
    Telephone: +1.650.328.4600
9
    Thomas J. Giblin (*pro hac vice*)
10      *thomas.giblin@lw.com*
    1271 Avenue of the Americas
11  New York, NY 10020
    Telephone: +1 212.906.1200
12
    *Attorneys for Defendants Enphase Energy, Inc.,*
13  *Badrinarayanan Kothandaraman, and Raghuveer*
    *Belur*
14

15              **UNITED STATES DISTRICT COURT**

16             **NORTHERN DISTRICT OF CALIFORNIA**

17                    **OAKLAND DIVISION**

18  HANSAINVEST HANSEATISCHE              Case No. 4:24-cv-09038-JST
    INVESTMENT-GMBH, Individually and on
19  Behalf of All Others Similarly Situated,

20                 Plaintiff,                **DEFENDANTS' MOTION TO DISMISS**
                                             **LEAD PLAINTIFF'S FIRST AMENDED**
21  v.                                       **CONSOLIDATED COMPLAINT FOR**
                                             **VIOLATIONS OF THE FEDERAL**
22  ENPHASE ENERGY, INC.,                    **SECURITIES LAWS**
    BADRINARAYANAN KOTHANDARAMAN,
23  and RAGHUVEER BELUR,                     Hearing:     May 7, 2026
                                             Time:        2:00 p.m.
24                 Defendants.               Location:    Courtroom 6 – 2nd Floor

25                                           Hon. Jon S. Tigar

26

27

28

1    <u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2    **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

3            PLEASE TAKE NOTICE that on May 7, 2026 at 2:00 p.m., or as soon thereafter as the

4    parties may be heard, before the Honorable Jon S. Tigar, District Court Judge, United States

5    District Court for the Northern District of California, in the Oakland Courthouse, Courtroom 11,

6    1301 Clay Street, Oakland, CA 94612, Defendants Enphase Energy, Inc. ("Enphase"),

7    Badrinarayanan Kothandaraman, and Raghuveer Belur (collectively, "Defendants") will and

8    hereby do move for an order dismissing Lead Plaintiff HANSAINVEST Hanseatische Investment-

9    GmbH's ("Plaintiff") First Amended Consolidated Complaint for Violations of the Federal

10   Securities Laws (Dkt. No. 85, the "Amended Complaint," cited as "¶ __"). This Motion is made

11   pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation

12   Reform Act of 1995, and on the grounds that Plaintiff fails to state a claim upon which relief can

13   be granted. Plaintiff fails to allege particularized facts establishing (1) any false statements or

14   omissions under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), (2)

15   that any of the statements challenged were made with scienter, and (3) loss causation. Each is an

16   independent basis for dismissal. Because Plaintiff fails to state a Section 10(b) claim, its claims

17   under Section 20 of the Exchange Act also fail.

18           Defendants' Motion is based on this Notice of Motion and Motion to Dismiss, the

19   following Memorandum of Points and Authorities, Defendants' concurrently submitted Request

20   for Incorporation by Reference and Judicial Notice and Declaration of Daniel R. Gherardi, the

21   complete files and records in this action, and any additional material and arguments as may be

22   considered by the Court in connection with the hearing on the Motion. Through this Motion,

23   Defendants seek an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the

24   Amended Complaint for failure to state a claim upon which relief can be granted.

25           <u>**ISSUE TO BE DECIDED**</u>

26       1.        Whether the Court should dismiss the Amended Complaint for failure to state a

27   claim upon which relief can be granted for violation of Sections 10(b) and 20 of the Exchange Act,

28   including for failure to adequately plead falsity, scienter, and loss causation?

1

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   BACKGROUND ......................................................................................... 2

      A.    Enphase Expands Its Solar Energy Business in the European Market ................. 2

      B.    Enphase Consistently Shares, and Meets, Financial Expectations ....................... 3

III.  LEGAL STANDARD ................................................................................. 5

IV.   ARGUMENT .............................................................................................. 6

      A.    The Facts Alleged Do Not Establish a Material Misrepresentation or
            Omission ........................................................................................................... 6

            1.    Statements of Opinion Are Not Actionable ............................................... 6

            2.    Statements of Corporate Optimism Are Nonactionable Puffery .............. 9

            3.    The Statutory Safe Harbor Protects Forward-Looking Statements .......... 9

            4.    Plaintiff Has Not Alleged Any Statement Was False When Made ......... 10

                  a.    The Alleged Former Employees and Industry Participants
                        Are Unreliable and Lack Personal Knowledge .......................... 11

                  b.    Enphase Did Not Misrepresent its Business in Europe .............. 12

                  c.    Enphase Timely Informed Investors of a Slowdown in
                        Europe and Enphase's Ability to Recover from It ...................... 15

      B.    Plaintiff Fails to Plead a Strong Inference of Scienter ........................................ 16

            1.    The Amended Complaint Pleads No Motive Whatsoever ...................... 17

            2.    The FE Allegations Are Not Indicative of Scienter ................................ 17

            3.    The Amended Complaint Fails to Identify Any Particularized
                  Contrary Information Known to Any Defendant ..................................... 20

            4.    Defendants' Roles and Statements Do Not Show Scienter .................... 22

            5.    The Core Operations Theory Is Rare and Inapplicable Here ................ 22

            6.    The Nonfraudulent Inference Is Far More Cogent ................................. 23

      C.    Plaintiff Fails to Plead Loss Causation ............................................................... 24

      D.    Plaintiff Fails to State a Section 20(a) Claim ..................................................... 25

      E.    Dismissal Should Be with Prejudice .................................................................. 25

V.    CONCLUSION ......................................................................................... 25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4    *Abadilla v. Precigen, Inc.*,
     2022 WL 1750033 (N.D. Cal. May 31, 2022)................................................. 19, 20

5

6    *Adamo v. Nextdoor Holdings, Inc.*,
     2025 WL 3238205 (N.D. Cal. Nov. 20, 2025) ........................................................ 20

7    *Beneficiary Ass'n v. Tesla, Inc.*,
     2025 WL 3459471 (9th Cir. Dec. 2, 2025) ............................................................. 18

8

9    *Bodri v. GoPro, Inc.*,
     252 F. Supp. 3d 912 (N.D. Cal. 2017) ....................................................... 22, 23, 24

10

11   *Cement Masons & Plasterers Joint Pension Tr. v. Equinix, Inc.*,
     2012 WL 685344 (N.D. Cal. Mar. 2, 2012)............................................................ 18

12   *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
     856 F.3d 605 (9th Cir. 2017) ........................................................................ 7, 8, 9, 21

13

14   *City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*,
     2024 WL 3823801 (N.D. Cal. Aug. 13, 2024) ....................................................... 14

15

16   *Costabile v. Natus Med. Inc.*,
     293 F. Supp. 3d 994 (N.D. Cal. 2018) .................................................................... 20

17   *Dolly v. GitLab Inc.*,
     2025 WL 2372965 (N.D. Cal. Aug. 14, 2025) ................................................. 24, 25

18

19   *Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*,
     2021 WL 1056549 (N.D. Cal. Mar. 19, 2021)........................................................ 21

20

21   *Espy v. J2 Glob., Inc.*,
     99 F.4th 527 (9th Cir. 2024) ........................................................................... 18, 24

22   *Fadia v. FireEye, Inc.*,
     2016 WL 6679806 (N.D. Cal. Nov. 14, 2016) ................................................. 21, 22

23

24   *Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*,
     501 F. Supp. 3d 735 (N.D. Cal. 2020) .................................................................... 22

25

26   *Ferreira v. Funko Inc.*,
     2021 WL 880400 (C.D. Cal. Feb. 25, 2021)............................................................. 7

27   *Gammel v. Hewlett-Packard Co.*,
     905 F. Supp. 2d 1052 (C.D. Cal 2012) ..................................................................... 9

28

*Hershewe v. JOYY Inc.*,
  2021 WL 6536670 (C.D. Cal. Nov. 5, 2021) ........................................................................ 12

*Hurst v. Enphase Energy, Inc.*,
  2021 WL 3633837 (N.D. Cal. Aug. 17, 2021) ...................................................................... 12

*Ikeda v. Baidu, Inc.*,
  2021 WL 1299046 (N.D. Cal. Apr. 7, 2021) .......................................................................... 8

*In re Cisco Sys. Inc. Sec. Litig.*,
  2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) ............................................................... 19, 21

*In re Cloudera, Inc.*,
  121 F.4th 1180 (9th Cir. 2024) ..................................................................................... 10, 12

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) ......................................................................................... 9, 10

*In re Eventbrite, Inc. Sec. Litig.*,
  2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ....................................................................... 9

*In re Fastly, Inc. Sec. Litig.*,
  2021 WL 5494249 (N.D. Cal. Nov. 23, 2021) ................................................................ 10, 15

*In re Nektar Therapeutics*,
  2020 WL 3962004 (N.D. Cal. July 13, 2020) ....................................................................... 5

*In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*,
  184 F. Supp. 2d 991 (N.D. Cal. 2001) ................................................................................. 22

*In re Palo Alto Networks, Inc. Sec. Litig.*,
  2025 WL 1093247 (N.D. Cal. Apr. 11, 2025) ...................................................................... 13

*In re Pivotal Sec. Litig.*,
  2020 WL 4193384 ............................................................................................................... 15

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ............................................................................................... 5

*In re Solarcity Corp. Sec. Litig.*,
  274 F. Supp. 3d 972 (N.D. Cal. 2017) .................................................................. 9, 15, 19, 22

*In re SunPower Sec. Litig.*,
  2018 WL 4904904 (N.D. Cal. Oct. 9, 2018)......................................................................... 9

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ............................................................................................ 16

*Inchen Huang v. Higgins*,
  443 F. Supp. 3d 1031 (N.D. Cal. 2020) ............................................................................... 25

*Jaszczysyn v. SunPower Corp.*,
   2024 WL 3463348 (N.D. Cal. July 17, 2024)........................................................................ 9

*Karpov v. Insight Enters., Inc.*,
   2010 WL 4867634 (D. Ariz. Nov. 16, 2010)...................................................................... 19

*Kipling v. Flex Ltd.*,
   2020 WL 2793463 (N.D. Cal. May 29, 2020) .............................................................. 11, 13

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   2016 WL 6609210 (C.D. Cal. May 10, 2016) ...................................................................... 14

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ............................................................. 10, 20, 21, 25

*Long Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020).................................................................................. 12

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ................................................................................................ 24

*Lowe v. Tandem Diabetes Care Inc.*,
   2024 WL 1898473 (S.D. Cal. Apr. 30, 2024) .................................................................... 23

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*,
   39 F.4th 1092 (9th Cir. 2022) ............................................................................................. 5, 9

*Markette v. XOMA Corp.*,
   2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ............................................................... 6, 7, 8

*Menon v. Maxeon Solar Techs., Ltd.*,
   2025 WL 1223559 (N.D. Cal. Apr. 28, 2025) .................................................................... 14

*Mulquin v. Nektar Therapeutics*,
   510 F. Supp. 3d 854 (N.D. Cal. 2020) ................................................................................. 6

*Ng v. Berkeley Lights, Inc.*,
   2024 WL 695699 (N.D. Cal. Feb. 20, 2024) ............................................................ 7, 24, 25

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) .......................................................................................... 17, 23

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)........................................................................................................ 6, 7, 8

*Or. Pub. Emps. Retirement Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) ................................................................................................ 17

*Pardi v. Tricida, Inc.*,
   2024 WL 1056013 (N.D. Cal. Mar. 11, 2024).................................................................... 8

*Pirani v. Netflix, Inc.*,
   2024 WL 4894291 (N.D. Cal. Nov. 26, 2024) .................................................................. 9

*Plumbers & Steamfitters Loc. 60 Pension Tr. v. Meta Platforms, Inc.*,
   2024 WL 4251896 (N.D. Cal. Sept. 17, 2024) ................................................................ 24

*Prodanova v. H.C. Wainwright & Co., LLC*,
   993 F.3d 1097 (9th Cir. 2021) ................................................................................. 17, 23

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2021) ........................................................................................ 11

*Sanders v. Realreal, Inc.*,
   2021 WL 1222625 (N.D. Cal. Mar. 31, 2021) ................................................................ 11

*Sayce v. Forescout Techs., Inc.*,
   2021 WL 1146031 (N.D. Cal. Mar. 25, 2021) ................................................................ 14

*Stephens v. Maplebear Inc.*,
   2025 WL 1359125 (N.D. Cal. May 9, 2025) ................................................................. 7, 8

*Strezsak v. Ardelyx Inc.*,
   2024 WL 1160900 (N.D. Cal. Mar. 18, 2024) .................................................................. 8

*Studen v. Funko, Inc.*,
   2024 WL 2209686 (W.D. Wash. May 16, 2024) ............................................................. 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .............................................................................................. 6, 16, 23

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019) ............................................................. 12, 18, 21, 23

*Welgus v. TriNet Grp., Inc.*,
   2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ................................................................ 16

*Westley v. Oclaro, Inc.*,
   2012 WL 1038647 (N.D. Cal. Mar. 27, 2012) ................................................................ 16

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022) ......................................................................................... 10

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ................................................................................. 9, 10, 25

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ................................................................................ 11, 17, 20

1

## STATUTES

2
15 U.S.C. § 78u-4(b)(1) .................................................................................................... 5

3
15 U.S.C. § 78u-4(b)(2)(A) .............................................................................................. 6

4
15 U.S.C. § 78u-5(c)(1) .................................................................................................. 10

5

## RULES

6
Fed. R. Civ. P. 9(b) .......................................................................................................... 5

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

DEFENDANTS' MOTION TO DISMISS
CASE NO. 4:24-CV-09038-JST

1    **I.    INTRODUCTION**

2    Despite three complaints, and well over a hundred pages of allegations in the operative

3    complaint, Plaintiff has not stated a securities fraud claim.  In fact, Plaintiff's Amended Complaint

4    tells the opposite story: of a company operating with laudable candor.  As alleged, Enphase, a

5    global solar energy company, consistently updated investors about its sales strategy and financial

6    results in all of its geographic markets, including Europe, as well as the risks associated with its

7    business.  When macroeconomic headwinds emerged to unexpectedly impact Europe, it promptly

8    informed investors.  Enphase's culture of transparency continued quarter after quarter, with

9    detailed forward-looking expectations, on which it delivered without fail.  Plaintiff minimizes all

10   of these facts.  Instead, it attempts to plead a nefarious scheme through cherry-picked snippets of

11   Enphase's statements to investors; anecdotal opinions from ill-defined former employees; and

12   third-hand hearsay from "industry participants" with whom Plaintiff has never spoken.  But

13   Plaintiff falls far short of meeting its heavy burden of pleading securities fraud with particularity.

14   **No Actionable Misstatement.**  Plaintiff pleads no actionable material misrepresentation

15   or omission.  Plaintiff challenges twenty-six statements (the "Challenged Statements") related to

16   Enphase's business in Europe, including a supposed pullback (and recovery) in demand in Europe.

17   But none of the statements are actionable under the Private Securities Litigation Reform Act (the

18   "PSLRA"): all but one statement is an opinion subject to the heightened pleading standards of

19   *Omnicare*, which Plaintiff fails to meet, and still too, most are mere puffery or forward-looking

20   statements shielded by the PSLRA's safe harbor.  Even if Plaintiff could find an actionable factual

21   statement, Plaintiff's attempt to plead particularized facts showing the *contemporaneous* falsity of

22   any Challenged Statement relies on its retrospective recasting of a slowdown in Europe that was

23   ultimately worse than anticipated.  But Plaintiff conveniently ignores that Enphase *disclosed* the

24   European slowdown and consistently kept investors updated about market conditions.  Besides,

25   Plaintiff's only purported "support" for its theory are unsubstantiated and anecdotal opinions from

26   former employees ("FEs") who held positions with no insight into Enphase's overall European

27   results.  The former employees allege the slowdown in Europe began to manifest in the third

28   quarter ("Q3") 2023, but Enphase promptly disclosed this slowdown in its earnings call that

quarter.  Plaintiff otherwise says nothing specific about conditions in Europe after Q3 2023.

**No Scienter.**  Plaintiff offers no plausible reason why Defendants would defraud investors.  Plaintiff pleads no stock sales, nor any other effort to profit from the alleged fraud.  This failure makes Plaintiff's already heavy burden of pleading fraudulent intent all the more difficult.  At most, Plaintiff cobbles together disparate scienter theories but offers no particularized facts suggesting any Defendant acted with an intent to deceive investors or with deliberate recklessness.  Critically, the Amended Complaint pleads no facts about any Defendant's state of mind after Q3 2023, even though Plaintiff is required to plead particularized facts supporting a strong inference of scienter as to *each* Defendant and *each* Challenged Statement.  The nonfraudulent inference is far more compelling: Defendants updated investors with accurate information at regular intervals, including when macroeconomic tides changed.  That is good corporate practice, not fraud.

**No Loss Causation.**  Plaintiff pleads no particularized facts linking the revelation of any concealed "truth" to its loss.  Plaintiff identifies two purported corrective disclosures, but both involved forward-looking guidance that cannot be construed as revealing a retrospective truth.  And the second alleged corrective disclosure fails for the independent reason that by Plaintiff's own admission, the market was, by then, long aware of a European market slowdown.

The Amended Complaint should be dismissed with prejudice.

## II.    BACKGROUND

### A.    Enphase Expands Its Solar Energy Business in the European Market

Enphase manufactures and sells solar energy products for residential use, including microinverters, batteries, electric vehicle chargers, and accompanying software.  ¶ 26.  Enphase was founded and is based in the United States, but it sells its products worldwide.  *Id.*; Ex. 1 at 7, 10.  The Individual Defendants are Badri Kothandaraman, Enphase's President and CEO, and Raghuveer Belur, its co-founder and Chief Products Officer.  ¶¶ 27-28.

In 2021 and 2022, Enphase experienced noticeable growth in Europe.  ¶¶ 49-50.  By the end of 2022, Enphase derived "approximately 19%" of its overall revenue from its business in Europe, as compared to 14% the year prior.  Ex. 1 at 33.  While Enphase expressed optimism about that growth and continued potential for the region in its 2022 annual filing, Enphase also warned

investors that international operations and sales posed risks, alongside comprehensive risk disclosures for its business generally. *Id.* at 33, 17-45. For instance, Enphase warned investors of the risk posed by "uncertain economic, legal and political conditions in Europe," *id.* at 33; that the solar industry in the region was "highly competitive," identifying certain key competitors by name—*e.g.*, AP Systems, Huawei, Sungrow, and Tesla—*id.* at 20; and that "unfavorable macroeconomic and market conditions have resulted in sustained periods of decreased demand" in the past and could occur again, *id.* at 17.

### B.    Enphase Consistently Shares, and Meets, Financial Expectations

Throughout the Class Period, Enphase provided quarterly updates to investors about its financial results and expectations for the future. On April 25, 2023, Enphase reported its financials for the first quarter ("Q1") of 2023, including strong results in Europe. Ex. 2 at 5. Enphase disclosed that its revenue in Europe "more than tripled" from the previous year and increased by 25% from the previous quarter, and its sell-through[1] of microinverters "reached an all time high" in the region. *Id.* Consistent with these results—and European Union ("EU") growth in the prior two years, *see* ¶ 50—Enphase expressed optimism about the region. *E.g.*, Ex. 2 at 7 ("With the residential solar and storage markets growing rapidly in Europe, we are in a great position to significantly accelerate our business.").

Likewise, in July 2023, Enphase announced financial results for the second quarter ("Q2") of 2023, reporting 13% sell-through growth and 25% increased revenue in Europe quarter-over-quarter. Ex. 3 at 5. Enphase again noted its optimism for future growth in Europe. *Id.* at 6 ("As we think about our competitive positioning in Europe, we see increasingly complex power markets and home energy management needs playing right into our strengths.").

In the second half of 2023, macroeconomic conditions in Europe suddenly began to change, and the EU experienced a broad slowdown. *See* Ex. 4 at 49. On its October 26, 2023 earnings call discussing Q3 2023, Enphase disclosed "[w]e have seen a substantial demand reduction in Europe," and "the situation has dramatically changed from the last quarter[,] from 90 days ago."

---

[1] Enphase does not sell directly to residential customers; Enphase sells its products to distributors, who sell to installers, who ultimately sell to end-users. *See* Ex. 1 at 5, 8. "Sell-through" refers to resale of Enphase products down that chain. ¶ 45.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Ex. 5 at 5-7. This was Enphase's "first sequentially down quarter in the last 2 years" in that region, following years of growth. *Id.* at 6. Enphase expressed optimism that "this pullback will be short lived." *Id.* Nonetheless, Enphase was direct with investors explaining that the "slowdown in our overall demand" was estimated to impact future revenues and issued financial guidance for the next quarter that was lower than analysts had hoped. *Id.* at 4, 5, 7. Enphase's stock price declined following this guidance. ¶ 241.

Enphase continued to be transparent about the slowdown in Europe. During the February 6, 2024 earnings call discussing fourth quarter ("Q4") 2023 results, Enphase reported continued decreased revenue and sell-through in Europe while announcing overall revenue that met its previous guidance. Ex. 6 at 5; Ex. 7. Enphase explained that despite slowdowns in the region, Enphase was entering new countries in the EU and noted it had observed "early signs of recovery." Ex. 6 at 7. Enphase discussed it had "been managing through a period of slowdown in demand," but expressed hope that Q1 2024 "could be the bottom quarter." *Id.* at 7. Enphase's stock price increased following this earnings announcement. Ex. 8.

Despite regional slowdown, Enphase reported its European revenue *grew* 19% year-over-year in 2023 as compared to 2022. Ex. 4 at 33. Nonetheless, Enphase warned about expected "adverse effect[s] on our revenue in 2024" from Europe's "broad-based slowdown" that began in Q3 2023, which it partly attributed to "overall channel inventory correction." *Id.* at 33, 49, 53. Enphase also warned about risks from "uncertain economic . . . conditions in Europe" and how its "focus on a limited number of specific markets increases risks associated with . . . governmental subsidies and economic incentives," including in "[s]everal European countries." *Id.* at 33, 36. And Enphase continued to disclose the risks from a highly competitive solar industry coupled with decreased demand from macroeconomic downturns. *Id.* at 17, 19.

By the next quarterly update on April 23, 2024, Enphase disclosed positive developments in Europe, including a 70% increase in revenue and a 7% increase in sell-through. Ex. 9 at 5. While it believed that these results suggested Europe had "begun to recover" and shared its continuing efforts to "penetrat[e]" European markets, it also reiterated "[w]e have been managing through a period of slowdown in demand." *Id.* at 5, 7. The July 23, 2024 financial results also

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1   warranted cautious optimism.  While noting "continued macroeconomic challenges," Enphase

2   reported sell-through increased by 3% in Europe.  Ex. 10 at 5, 7.  Enphase's stock price decreased

3   following the April announcement and increased following the July announcement.  Ex. 8.

4       On October 22, 2024, Enphase held its Q3 2024 earnings call and stated the "overall

5   business environment" in Europe continued to be challenging, updating investors on decreased

6   revenue and sell-through in Q3 compared to Q2.  Ex. 11 at 5.  Enphase expressed the need to be

7   "cautious for Q4" and reduced its go-forward guidance to "incorporate[]" the "slowdown in

8   Europe." *Id.* at 10-11.  After this call, Enphase's stock price declined.  ¶ 257.

9       In summary, in each of its quarterly reports to investors during the Class Period, Enphase

10  was transparent about the trends it was seeing in the market, cautioned investors of the risks, and

11  provided its best prediction for future revenue guidance for each upcoming quarter.  That revenue

12  guidance proved to be accurate, as Enphase consistently *met* its guidance every quarter:

| Quarter | Enphase's Guidance | Actual Revenue[2] | Met Guidance? |
|---|---|---|---|
| Q1 2023 | $700 to 750 million | $726.02 million | ✓ |
| Q2 2023 | $700 to 750 million | $711.1 million | ✓ |
| Q3 2023 | $550 to 600 million | $551.1 million | ✓ |
| Q4 2023 | $300 to 350 million | $302.6 million | ✓ |
| Q1 2024 | $260 to 300 million | $263.3 million | ✓ |
| Q2 2024 | $290 to 330 million | $303.5 million | ✓ |
| Q3 2024 | $370 to 410 million | $380.9 million | ✓ |

17  ## III.    LEGAL STANDARD

18      To state a Section 10(b) securities fraud claim, Plaintiff must plead with particularity a

19  material misrepresentation or omission of fact, scienter, and loss causation.  *In re Rigel Pharms.,*

20  *Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012); *In re Nektar Therapeutics*, 2020 WL 3962004,

21  at *9 (N.D. Cal. July 13, 2020).  Plaintiff must also satisfy the "heightened pleading requirements"

22  of Rule 9(b) and the PSLRA.  *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092,

23  1096 (9th Cir. 2022) (*Align II*).  Plaintiff must state with particularity "each statement alleged to

24  have been misleading, the reason or reasons why the statement is misleading," and "all facts on

25  which that belief [that a statement is misleading] is formed."  15 U.S.C. § 78u-4(b)(1).  Moreover,

26  Plaintiff must plead particularized facts giving rise to a strong inference of scienter—either an

27

28  _____
[2] Enphase's guidance for each quarter can be found in its quarterly earnings announcements, which also contain the actual revenue for the previous quarter. *See* Exs. 7, 12-17.

1  "intent to deceive, manipulate, or defraud" or deliberate recklessness, a state of mind tantamount

2  to intent.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007); 15 U.S.C. § 78u–

3  4(b)(2)(A).  And pleading loss causation requires sufficient facts demonstrating that "the revelation

4  of [the alleged] misrepresentation or omission was a substantial factor in causing a decline in the

5  security's price."  *Mulquin v. Nektar Therapeutics*, 510 F. Supp. 3d 854, 870 (N.D. Cal. 2020).

6  **IV.    ARGUMENT**

7      **A.    The Facts Alleged Do Not Establish a Material Misrepresentation or Omission**

8          Plaintiff challenges twenty-six statements pertaining to two topics: (1) Enphase's general

9  statements about its European business pre-slowdown (Q1-Q2 2023) and (2) Enphase's assessment

10  of the impact of the slowdown and forward-looking predictions about when market conditions

11  might recover (Q3 2023-Q2 2024).  *See* ¶¶ 125-86; Appendix A ("App. A").  Plaintiff's challenge

12  to these statements fails on multiple levels.  All but one statement is an opinion subject to the

13  heightened *Omnicare* standard, which Plaintiff fails to meet.  Many of these statements are also

14  nonactionable puffery or forward-looking statements protected by the PSLRA's safe harbor.  And

15  Plaintiff fails to provide particularized facts showing that any statement was false or misleading.

16          **1.    Statements of Opinion Are Not Actionable**

17          All but one of the Challenged Statements are nonactionable opinions that reflect

18  management's "inherently subjective" judgment about Enphase's European growth prospects or

19  the trajectory of the European downturn that arose in the summer of 2023.  *Omnicare, Inc. v.*

20  *Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).  The opinion

21  statements fall into three overlapping categories: (1) "I think" statements or similar (App. A at 5,

22  12-14, 22-23); (2) evaluations of the health of the European market and Enphase's positioning in

23  it (pre- and post-pullback) (App. A at 1-3, 6, 8-9, 11-15, 17-26); and (3) Enphase's assessment of

24  its competitive strengths (App. A at 4, 5, 10, 20).  The first category of statements contains classic

25  "I think" language (*e.g.*, ¶ 167) or similar qualifying language (*e.g.*, ¶ 156)—a hallmark of an

26  opinion.  *See Omnicare*, 575 U.S. at 187.  With or without those signifiers, the second category

27  comprises Enphase's "assessment of and judgment about" conditions in Europe and "statement[s]

28  of hopefulness, encouragement, or expectation," *Markette v. XOMA Corp.*, 2017 WL 4310759, at

1   *4-5 (N.D. Cal. Sept. 28, 2017), like the "situation is actually not so bad" (¶ 158) and "we are

2   extremely bullish about Europe" (¶ 146).  And the third category constitutes Enphase's evaluations

3   of its competitive strengths and differentiators, like Enphase's assessment of its "outstanding

4   service" (¶ 144).  *See Ng v. Berkeley Lights, Inc.*, 2024 WL 695699, at *7 (N.D. Cal. Feb. 20,

5   2024) ("characterizations" of product and its "superiority" compared to competition are opinions).

6       Under *Omnicare*, opinions "are subject to a higher standard for falsity than other

7   statements" and "actionable under federal securities law in only three ways."  *Stephens v.*

8   *Maplebear Inc.*, 2025 WL 1359125, at *5 (N.D. Cal. May 9, 2025) (citing *Omnicare*, 575 U.S. at

9   185-87).  First, an opinion is false if "the speaker did not hold the belief she professed and [] the

10  belief is objectively untrue."  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align*

11  *Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (*Align I*).  "Second, an opinion is false if it

12  contains an embedded statement of fact that is false."  *Maplebear*, 2025 WL 1359125, at *5.  And

13  third, "an opinion is [an] actionably misleading omission if it excludes details and creates a

14  misimpression about the speaker's basis for that opinion by doing so."  *Id.*

15      *First*, the Amended Complaint fails to allege particularized facts that the "speaker does not

16  believe that opinion (subjective falsity) and that opinion is incorrect (objective falsity)."  *Id.*

17  Plaintiff offers no allegations suggesting Defendants did not subjectively believe their opinions

18  were accurate.  *See Markette*, 2017 WL 4310759, at *5 (no subjective falsity when a plaintiff

19  "makes no effort to allege that Defendants 'did not hold the believe they professed'"); *see also*

20  *infra* § IV.B.  At most, Plaintiff alleges certain FEs or unknown "industry participants" had

21  "disagree[d] with [company] management," but that is far from sufficient.  *Ferreira v. Funko Inc.*,

22  2021 WL 880400, at *28 (C.D. Cal. Feb. 25, 2021).  Plaintiff also has not alleged any fact

23  suggesting the opinions were objectively false.  Indeed, Enphase disclosed detailed financial

24  information supporting the stated opinions, which Plaintiff does not challenge.  *See infra* § IV.A.4.

25      *Second*, Plaintiff does not plead a cognizable theory that any embedded fact in any opinion

26  was false.  *See Maplebear*, 2025 WL 1359125, at *5.  To the contrary, every stated opinion was

27  borne out by the financial results ultimately announced each quarter.  *See also* § IV.A.4.

28      *Third*, the Amended Complaint fails to adequately allege Defendants omitted material facts

from any opinion that "create[d] a misimpression" about their "basis for that opinion." *Maplebear*, 2025 WL 1359125, at \*5. Plaintiff claims that Defendants' rosy outlook about Europe before the 2023 slowdown—and their optimism that the slowdown would be short-lived—omitted "structural problems" affecting Enphase's EU business. *E.g.*, ¶ 94. But as discussed below, Plaintiff fails to identify any specific "structural problem" known to any Defendant at the time any opinion statement was made. *See infra* § IV.A.4. General allegations that Defendants had access to contradictory information, without specifically identifying the contrary omitted fact and why that "undisclosed information . . . seriously undermined the basis for [the] opinion," will not do. *Ikeda v. Baidu, Inc.*, 2021 WL 1299046, at \*9 (N.D. Cal. Apr. 7, 2021); *see also Maplebear*, 2025 WL 1359125, at \*6 ("[T]he complaint does not explain why things were so dire that it was misleading for Instacart to be optimistic about its prospects."). Nor can Plaintiff plausibly claim the market was unaware generally of competition for Enphase's products where Enphase's "contemporaneous disclosures warned of the exact risk that the plaintiffs argued was improperly omitted." *Pardi v. Tricida, Inc.*, 2024 WL 1056013, at \*8 (N.D. Cal. Mar. 11, 2024); *see Strezsak v. Ardelyx Inc.*, 2024 WL 1160900, at \*6 (N.D. Cal. Mar. 18, 2024) (similar). Enphase warned it competed in a "highly competitive market," including against "central and string inverter manufacturers" and specifically against companies like AP Systems, Huawei, Sungrow, and Tesla. Exs. 1, 4 at 11-12; Exs. 2, 3, 5, 6, 9, 10 at 4 (referring investors to risk disclosures); *see Ikeda*, 2021 WL 1299046, at \*10-11 (rejecting omissions theory where annual report's risk factors disclosed the allegedly omitted risks). Indeed, Plaintiff's own allegations show that the market knew about competition from Chinese companies, *see* ¶¶ 138, 273-74, and "the securities laws do not require the disclosure of publicly available information." *Ikeda*, 2021 WL 1299046, at \*10.

Still too, even assuming Plaintiff's vaguely alleged "structural problems" existed and Defendants were aware of them, ¶ 94, an opinion is not misleading just because "the issuer knows, but fails to disclose, some fact cutting the other way." *Omnicare*, 575 U.S. at 188-89. This is true "even if investors would consider the omitted information significant." *Markette*, 2017 WL 4310759, at \*7. Rather, a plaintiff can only prevail on an omissions theory where "there is no reasonable basis for the belief." *Align I*, 856 F.3d at 616. Nothing in the Amended Complaint

suggests that any of Enphase's opinions lacked a "reasonable basis," *id.*; to the contrary, each and every quarter, those opinions aligned with Enphase's previously forecasted guidance and its European financial results. *See supra* § II.B; *Pirani v. Netflix, Inc.*, 2024 WL 4894291, at *8 (N.D. Cal. Nov. 26, 2024) (complaint failed to allege facts showing "a significant and long-term problem" to undermine basis for opinion that demand issue was "temporary and short-term").

### 2. Statements of Corporate Optimism Are Nonactionable Puffery

Twenty-one of the Challenged Statements also constitute "puffery" because they are "vague statements of optimism." *Align II*, 39 F.4th at 1099. Courts routinely dismiss claims challenging similar types of statements because investors do not rely on mere puffery.

| Challenged Statements | Statements Found to Be Puffery |
|---|---|
| Enphase's business was "strong" and "doing very well," growth was "rapid," demand was "robust," and "we are in a great position to significantly accelerate our business." *See* App. A at 1, 3-4, 8, 14, 25-26. | Statements about "strong demand" nonactionable. *In re SunPower Sec. Litig.*, 2018 WL 4904904, at *4 (N.D. Cal. Oct. 9, 2018).<br><br>"[R]un-of-the-mill statements like 'business remained strong[]'" nonactionable. *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *14 (N.D. Cal. Apr. 28, 2020).<br><br>Statement that company would "accelerate the long-term growth" is puffery. *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1071 (C.D. Cal 2012). |
| Enphase is "extremely bullish in Europe." *See* App. A at 9, 12, 13, 23. | "We are actually extremely bullish for the US markets." *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 995 (N.D. Cal. 2017). |
| Enphase "compete[s] very effectively," the "Europe business is doing well," and that "customers 'love our quality' and 'service.'" *See* App. A at 5-7, 10-11, 16-17, 20, 24. | Statements that "we remain on track to achieve our 2021 financial outlook and are well positioned to drive growth and profitability in 2022 and beyond" are puffery. *Jaszczysyn v. SunPower Corp.*, 2024 WL 3463348, at *9 (N.D. Cal. July 17, 2024).<br><br>Statement that "we're highly optimistic . . . about our growth" is puffery. *Solarcity*, 274 F. Supp. 3d at 995.<br><br>"[V]ague statements of optimism" or with "feel good monikers" are mere puffery since "investors do not rely" on such statements. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010). |

### 3. The Statutory Safe Harbor Protects Forward-Looking Statements

Nearly all of the Challenged Statements are forward-looking expectations for Enphase's anticipated growth or predictions for Enphase's recovery from the slowdown in Europe. *See* App. A at 1-3, 8-9, 11-12, 17-20, 22-24. These statements describe "plans and objectives for future operations" and thus are precisely the types of statements protected by the PSLRA's safe harbor. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1191-92 (9th Cir. 2021). The safe harbor immunizes from liability forward-looking statements that are *either* (1) accompanied by meaningful cautionary

language, or (2) not made with "actual knowledge" of falsity.  *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022); 15 U.S.C. § 78u-5(c)(1).  Both prongs are satisfied.

***Meaningful Cautionary Language.***  Enphase began each earnings call with warnings that some statements would be "forward-looking," including about "anticipated growth in existing and new markets," which involved "significant risks and uncertainties."  *See* Exs. 2, 3, 5, 6, 9, 10 at 4. Enphase simultaneously referred investors to detailed risk disclosures in its 10-K and 10-Q Forms. *Id*.  Those disclosures included explicit warnings about the possibility of "sustained periods of decreased demand," Enphase's highly competitive industry, and risks from "unfavorable macroeconomic and market conditions."  *See* Ex. 18 at 35; Ex. 19 at 36; Ex. 20 at 37; Ex. 4 at 5, 17, 20.  And beginning in Q3 2023, Enphase's quarterly and annual filings also included specific disclosures about risks associated with the European economic downturn.  Ex 4 at 33, 49 (warning about expected "adverse effect[s] on our revenue in 2024" from Europe's "broad-based slowdown"); Ex. 20 at 37; Ex. 21 at 30; Ex. 22 at 34.  These warnings, which "spoke directly to the purported misstatements," closely map cautionary language courts have found sufficient to warrant immunization under the safe harbor provision.  *Cutera*, 610 F.3d at 1112; *In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at *13 (N.D. Cal. Nov. 23, 2021) (disclosures that "specifically warn against the very allegations advanced" are meaningful).

***No Actual Knowledge of Falsity.***  In any event, the safe harbor protects Defendants' forward-looking statements for the independent reason that they were "made without actual knowledge" of falsity.  *Wochos*, 985 F.3d at 1190.  Indeed, as described in Section IV.B, Plaintiff comes nowhere close to pleading scienter, much less the "stricter standard of actual knowledge of falsity."  *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 n.18 (9th Cir. 2002).

### 4.    Plaintiff Has Not Alleged Any Statement Was False When Made

Even if the Challenged Statements were actionable (they are not), Plaintiff does not allege any particularized fact demonstrating that any Challenged Statement "'directly contradict[s] what the defendant knew at that time' or 'omits material information.'"  *In re Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024).  Plaintiff's falsity theory is premised entirely on the contention that Defendants were overly optimistic about Enphase's EU business and the impact of the European

1    slowdown.  *See, e.g.*, ¶¶ 135-36.  But "[h]onest optimism followed by disappointment" does not

2    make for securities fraud.  *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2021).

3              a.     **The Alleged Former Employees and Industry Participants Are**
              **Unreliable and Lack Personal Knowledge**

4

5              Plaintiff principally relies on allegations attributed to two sets of persons with dubious

6    credibility: four former Enphase employees and two supposed "former industry participants" who

7    allegedly posted information on an online "market intelligence platform" to which Plaintiff's

8    counsel apparently subscribes.  ¶¶ 32-36.  These allegations fall far short of the Ninth Circuit's

9    standard for relying on anonymous sources because Plaintiff does not plead allegations "with

10   sufficient particularity to establish their reliability and personal knowledge" nor anything

11   "indicative of falsity."  *Kipling v. Flex Ltd.*, 2020 WL 2793463, at *15 (N.D. Cal. May 29, 2020);

12   *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).

13             Plaintiff claims that the FEs included: a senior manager for Spain and Portugal, Complaint,

14   Dkt. 84, ¶ 32 (FE-1); an account manager in the Netherlands, ¶ 33 (FE-2); and two "technical

15   support" employees, ¶¶ 34-35 (FE-3 and FE-4).  But those descriptions do not contain the "large

16   degree of specificity" required, including "job description[s]" and "responsibilities."  *Kipling*,

17   2020 WL 2793463, at *16 (FE description "Senior Director for Global Account Management"

18   insufficient); *Sanders v. Realreal, Inc.*, 2021 WL 1222625, at *8 (N.D. Cal. Mar. 31, 2021) (FE

19   allegations insufficient absent details on what roles entailed).  Moreover, Plaintiff does not

20   adequately allege how these FEs would know anything about Enphase's Europe-wide business.

21   *Zucco*, 552 F.3d at 995 (FE must have "personal knowledge").  FE-1 concedes that the countries

22   in his territory comprised only 5% of Enphase's EU market.  ¶ 32.  FE-2 also worked only in the

23   Netherlands, and worse, his allegations are derived from hearsay supposedly gleaned from

24   unnamed installers, not his personal knowledge.  ¶¶ 34-35.  And FE-3 and FE-4 were technical

25   support employees and thus not alleged to have had insight into sales or demand.  ¶¶ 34-35.

26             Plaintiff also parrots allegations from unsubstantiated online posts from two anonymous

27   Industry Participants.  ¶ 36.  But Plaintiff concedes these individuals did not work for Enphase,

28   and Plaintiff does not claim to have ever spoken with them.  *Id.*  Rather, Plaintiff blindly copied

internet rumors without making any effort to verify them. *Id.* Unsurprisingly, Plaintiff is unable to describe these individuals' reliability or personal knowledge. Unsubstantiated interviews posted on the internet, which Plaintiff neither conducted nor fact checked, are precisely the type of information that courts routinely deem not credible. *See Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 797 (S.D.N.Y. 2020) ("statements made by anonymous—and often vaguely described—interviewees, with whom plaintiff's counsel has not had contact" are not credible); *Hurst v. Enphase Energy, Inc.*, 2021 WL 3633837, at *5 (N.D. Cal. Aug. 17, 2021) (expressing skepticism "that Plaintiff and his counsel have independently investigated" a report cited in complaint); *Hershewe v. JOYY Inc.*, 2021 WL 6536670, at *5 (C.D. Cal. Nov. 5, 2021) (reliance on unverified information raises "significant reliability concerns"). Plaintiff's failure to adequately allege any anonymous sources that are reliable or had personal knowledge of relevant facts is fatal.

### b.    Enphase Did Not Misrepresent its Business in Europe

Plaintiff challenges twelve statements regarding the strength of Enphase's competitive position in Europe in 2023. ¶¶ 135, 150; *see* App. A at 1-12. Plaintiff complains that statements from Q1 and Q2 2023 that predate the Q3 slowdown in demand, such as the "European business is doing very well" and "remained strong," or that Enphase was "very bullish" about its EU business, *see* ¶¶ 125-30, 135, 142-46, 150, were false because Defendants allegedly omitted "severe structural problems" in Europe, including competition from Chinese companies, market penetration issues, and supposed product issues. ¶¶ 135, 150. Plaintiff's theory fails because it lacks any allegations of contemporaneous falsity.

*First*, Plaintiff does not identify any contemporaneous contradictory data rendering these statements false when made. Instead, Plaintiff relies on subsequent disclosures of softening demand in October 2023 and October 2024. That is not enough. Subsequent performance does not render earlier assessments of momentum false, and general allegations that conditions "later" deteriorated cannot satisfy the PSLRA's requirement to plead falsity at the time of the statement. *Cloudera*, 121 F.4th at 1189 ("'[L]ater, sobering revelations' do not by themselves 'make the earlier, cheerier statement a falsehood.'"); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 808-09 (N.D. Cal. 2019) (statement must be "false or misleading at the time it was made").

1    During Q1 and Q2 2023, Enphase reported that its European business was performing well,

2  with revenue that more than tripled year-over-year in Q1, 25% sequential revenue growth in Q1,

3  an all-time-high sell-through of microinverters in Q1, and 13% sell-through growth in Q2—facts

4  Plaintiff concedes. *See* ¶¶ 125-131, 142-146; Ex. 3 at 5. Defendants accompanied these results

5  with their beliefs that the EU business was "doing very well" and "remained strong," *see* App. A

6  at 2, 8. Those unchallenged financial results directly informed the outlook Enphase provided to

7  investors, and Plaintiff does not challenge their accuracy. *See supra* § II.B.

8    Simultaneously, Defendants warned that continued results were not guaranteed. While

9  Defendants were "extremely bullish" on Europe, App. A at 9, 12, they also noted the risks

10 associated with "uncertain economic, legal and political conditions in Europe," Ex. 1 at 33, and

11 that they were "cautious" because "inventory is a little bit high," Ex. 3 at 13. And Enphase

12 acknowledged it would be coming up to a "seasonally down quarter in Europe" during Q3, which

13 it expected would cause Enphase to be "slightly down in revenue as compared to Q2." *Id.* at 13-14.

14 In the face of these warnings and financial results, Plaintiff cannot plausibly allege any investor

15 would have been misled about Defendants' beliefs regarding the nature of the EU business.

16    *Second*, Plaintiff's FE allegations do not establish the Challenged Statements about

17 Enphase's European business were false or misleading when made. FE-2 allegedly said the market

18 "dried up" in "early 2023" despite growth in 2021 and 2022. *E.g.*, ¶ 135. But this allegation is

19 irreconcilable with the financial growth Enphase posted in Q1 and Q2 2023. *See* Ex. 2 at 5

20 ("revenue increased 25% sequentially and more than tripled year-on-year" and non-GAAP gross

21 margin was over 45%); Ex. 3 at 5 (13% growth in microinverter sell-through in Europe); *In re*

22 *Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 1093247, at *5 (N.D. Cal. Apr. 11, 2025) (rejecting

23 FE allegations "inconsistent with reality"). Furthermore, Plaintiff alleges FE-1, FE-2, and FE-3

24 "recalled hearing in the summer of 2023" that "microinverters were not popular in Germany,"

25 "never took off" in Poland, and that unnamed "leaders of Germany" raised concerns about demand.

26 *E.g.*, ¶ 135. But none of them are alleged to have worked in Germany or Poland. *See* ¶¶ 32-34;

27 *Kipling*, 2020 WL 2793463, at *15 (plaintiff must allege "with sufficient particularity" details

28 about a CWs "personal knowledge"). And their allegations lack any specifics, such as rates of

declining demand or what "not popular" means.  *Menon v. Maxeon Solar Techs., Ltd.*, 2025 WL 1223559, at *12 (N.D. Cal. Apr. 28, 2025) (CW claim of "a great deal of loss" too "vague").

Even if Enphase products were "not popular" in those markets, Enphase still met guidance each quarter, achieved excellent financial results in Q1 and Q2 of 2023, and began to recover after a market-wide European slowdown in 2024.  *City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*, 2024 WL 3823801, at *5 (N.D. Cal. Aug. 13, 2024) (FE's "vague" reports of slowdown undermined by contemporaneous company growth).  As for Germany, while Defendants believed Enphase's business would "pick up," ¶ 145, they simultaneously disclosed that Germany is "the more mature and tough market to go as a new entrant to go in and win."  App A. at 11.  FE-2 and FE-3's unsubstantiated opinion that Enphase's products were "not popular" in Germany says nothing to undermine Enphase's actual statements.  Moreover, Germany not only fell outside of FE-1's area of responsibility, he also claims there was a "decline in demand that had started in early 2023" which "persist[ed]" and that this showed the "downturn was not typical seasonality."  ¶ 150.  But Enphase's results for Q1 and Q2 2023 demonstrate just the opposite.

Plaintiff also cites to FE-3's allegations that Enphase had "customer service, installation, and connectivity issues."  *E.g.*, ¶ 136.  But Plaintiff does not allege any particular facts about any such "issues," much less how they impacted (if at all) Enphase's overall EU business.  *Knox v. Yingli Green Energy Holding Co. Ltd.*, 2016 WL 6609210, at *15 (C.D. Cal. May 10, 2016) (explaining plaintiffs fail to "allege sufficient facts regarding the particular customers at issue or the overall effect on [the company's] revenue").  And FE-3's claims are irreconcilable with Enphase's recovery from the initial slowdown—the opposite of "structural" issues.  *See, e.g.*, Ex. 9 at 5, 7 (revenue increased 70% from previous quarter).

Finally, Plaintiff claims Enphase's statements about the strength of its EU business were misleading because anonymous Industry Participants reported Chinese competitors were selling at a significant discount to Enphase's products.  *E.g.*, ¶ 135.  But Plaintiff alleges no facts tying supposed competition from Chinese companies to Enphase's performance.  All these unnamed and unverified outside accounts state is that there were price reductions made by certain unnamed Chinese competitors.  *See Sayce v. Forescout Techs., Inc.*, 2021 WL 1146031, at *5 (N.D. Cal.

Mar. 25, 2021) (rejecting "vague" CW statement).  While FE-1 names a single Chinese company, Plaintiff adds no detail about the impact of that company's pricing on Enphase's business, where, or when.  FE-3's allegations are even more vague:  it supposedly "heard" that "Enphase was losing business to [unnamed] cheaper competitors."  *E.g.*, ¶ 135.  This, too, fails to allege with particularity any impact from supposed competition to Enphase's Europe business.  *See In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *12 (CW allegations that did not "contradict or render misleading any of the earnings call remarks" insufficient).

**c.    Enphase Timely Informed Investors of a Slowdown in Europe and Enphase's Ability to Recover from It**

Plaintiff also has not pled that Defendants' statements about the slowdown in demand it observed in Europe beginning in late 2023—the first in two years—and Enphase's ability to recover from it were false when made.  *See* App. A at 13-26.  Plaintiff challenges statements that Enphase believed the pullback in Europe would be temporary and that Enphase "remain[s] very bullish about Europe."  *See* ¶ 163.  According to Plaintiff, these statements were misleading because Enphase somehow knew the slowdown in Europe would persist because of its supposed "severe structural problems."  *See* ¶ 163.  But Plaintiff's only support for the purported falsity of these statements is the same deficient FE allegations described above, which are all the more unavailing here, because no FE speaks to any point in time after the summer of 2023 (Q3 2023).  *See, e.g.*, ¶ 163.  Plaintiff ignores that Defendants promptly informed investors about the very decline in demand the FEs claim to recount—in its October 26, 2023 earnings call announcing financial results for Q3 2023, Enphase was candid that, for the first time in two years, "the situation has dramatically changed" and Enphase had seen a "substantial demand reduction in Europe."  Ex. 5 at 5; ¶¶ 102, 237; *Solarcity*, 274 F. Supp. 3d at 972 (rejecting CW allegations that fail to show "specific contemporaneous . . . conditions that demonstrate" falsity at time of statements).  Enphase coupled this transparent update with lower-than-anticipated guidance for the next quarter to reflect the slowdown.  *See* ¶¶ 155-59, 235-40.  Plaintiff has not alleged any fact suggesting that Enphase omitted any material information, particularly given that Enphase *disclosed* the very slowdown Plaintiff claims was concealed.  *Fastly*, 2021 WL 5494249, at *11 (finding no falsity

1    where "Defendants disclosed the very risk plaintiff alleges they concealed"). And no FE speaks

2    to any time after the summer of 2023 (even though Plaintiff's challenged statements go on for

3    another year), so the Amended Complaint furnishes no specific facts to undermine Defendants'

4    optimism for a quick recovery.

5         Plaintiff also advances conclusory allegations that Enphase was experiencing "severe

6    structural problems," and therefore Enphase's statements about a potential recovery were unduly

7    optimistic. *E.g.*, ¶ 135. But aside from vague claims of Chinese competition or that the customer

8    base was not strong, Plaintiff offers nothing else to support its theory of falsity. Indeed, as Enphase

9    predicted and consistent with its optimism post-slowdown, Enphase's revenue in Europe increased

10   by 70% in Q1, as it noted in its April 23, 2024 earnings call. *See* Ex. 9 at 5, 7. These positive

11   results coincided with Enphase's statements that "Europe has already begun to recover." App. A

12   at 21. In July 2024, Enphase again disclosed improvement, *see* Ex. 10 at 5, 20, coupled with its

13   statement that Enphase is strong in certain parts of Europe and that Europe has "healthy growth

14   vectors." App. A at 23-25. Plaintiff is left only with the fact that Enphase later disclosed that it

15   continued to see an impact from the slowdown in Europe during the October 2023 earnings call.

16   But Plaintiff must allege falsity at the time of a challenged statement. Post-hoc challenges are not

17   sufficient. *See Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *11 (N.D. Cal. Dec. 18, 2017)

18   (explaining that investors do not expect defendants to have "a crystal ball"); *see also In re Vantive*

19   *Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir. 2002) (plaintiff cannot rely on corrective disclosure

20   to "speculate in hindsight" that prior statements were false when made).

21        Finally, Plaintiff challenges one statement made, not by Enphase, but by an analyst who

22   spoke to unidentified members of Enphase "management." ¶ 138; Ex. 23. But the "repackaging

23   [of] defendants' actual oral statements in vague and impressionistic terms" in an analyst report is

24   nonactionable. *Westley v. Oclaro, Inc.*, 2012 WL 1038647, at *3 (N.D. Cal. Mar. 27, 2012).

25   **B.    Plaintiff Fails to Plead a Strong Inference of Scienter**

26        "[A]n inference of scienter must be more than merely plausible or reasonable—it must be

27   cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551

28   U.S. at 314. The Amended Complaint offers no motive at all, let alone a coherent one, and its

1  hodgepodge of scienter allegations do not add up to particularized facts establishing an intent to

2  defraud.  Even holistically, the Amended Complaint fails to plead a strong inference of scienter

3  "at least as compelling as any opposing inference," *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414

4  (9th Cir. 2020): far from committing fraud, Enphase was simply transparent with investors about

5  its successes and challenges, and promptly updated them as conditions changed.  Scienter thus

6  furnishes an independent reason to dismiss the Amended Complaint.[3]

7                    **1.      The Amended Complaint Pleads No Motive Whatsoever**

8          Plaintiff makes no attempt to show that any Defendant had a motive to commit fraud—

9  there are no allegations of *any* stock sales or profiteering by *any* Defendant, nor any other

10  conceivable reason pled why Defendants would intentionally mislead investors.  *See* ¶ 189.  This

11  deficiency "makes it much less likely that a plaintiff can show a strong inference of scienter."

12  *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021).

13                    **2.      The FE Allegations Are Not Indicative of Scienter**

14         Absent motive, Plaintiff must "assert[] compelling and particularized facts showing

15  fraudulent intent or deliberate recklessness."  *Id.*  It falls far short.  To try to meet this high bar,

16  Plaintiff relies primarily on its FEs.  But the same flaws in their purported reliability described

17  above equally taint the FEs' scienter allegations.  *See supra* § IV.A.4.a.  Nor are the FEs' accounts

18  "themselves . . . indicative of scienter."  *Zucco*, 552 F.3d at 995.

19         ***FE-1.***  FE-1 claims that "[s]ometime after June in the summer of 2023" he "notified

20  Kothandaraman of declining demand for Enphase's products in his region" during "weekly

21  shipment review meetings" and that "[b]y the end of summer 2023" other European employees

22  did the same.  ¶¶ 194, 214.  But all FE-1 asserts is that a slowdown in European demand arose in

23  Q3 2023—*which is exactly what Kothandaraman told investors*.  During Enphase's Q3 earnings

24  call, in October 2023, he reported that "We have seen a substantial demand reduction in Europe."

25  Ex. 5 at 5.  Far from indicating a fraudulent state of mind, FE-1's purported timeline suggests

26  Enphase  promptly  relayed  to  investors  the  very  issues  that  he  allegedly  discussed  with

27

28  ---

[3] Plaintiff pleads no allegations specific to Belur or his state of mind, and instead relies on
impermissible group pleading, which is fatal in and of itself.  *See Or. Pub. Emps. Retirement Fund
v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014).

Kothandaraman.  *See Cement Masons & Plasterers Joint Pension Tr. v. Equinix, Inc.*, 2012 WL 685344, at *8 (N.D. Cal. Mar. 2, 2012) (dismissing complaint where defendants updated investors with new forecast despite allegations update was too delayed).  Nothing about FE-1's account suggests Defendants knew of weakening demand *before* Q3 2023; to the contrary, up until then, Enphase reported growth in Europe. *See, e.g.*, Ex. 3 at 5.

Still too, neither FE-1—nor any other FE for that matter—provides facts to suggest that, after Enphase's October 2023 disclosure, any Defendant knew that problems with European demand would be more enduring than they stated publicly.  This is because no FE says *anything* about any Defendant beyond the summer of 2023; as a result, Plaintiff pleads nothing about any Defendant's state of mind after that period. *See Veal*, 423 F. Supp. 3d at 812 (plaintiffs must plead "contemporaneous[]" facts to "demonstrate scienter" at the time of each challenged statement).

Moreover, FE-1 admits he and his colleagues "tried to present their results as optimistically as possible."  ¶ 73.  That he apparently painted a rosier picture than reality to Enphase's CEO negates the idea that any Defendant "personally knew the extent of [Enphase's] ground-level problems and intentionally or with deliberate recklessness concealed that information from investors"—in fact, it suggests just the opposite. *Studen v. Funko, Inc.*, 2024 WL 2209686, at *18 (W.D. Wash. May 16, 2024).  FE-1's allegations suggest, at most, that Enphase was less pessimistic about reports from the EU than Plaintiff would have preferred.  But "vague allegations of internal disagreement" and "disconnect" between leadership "and its operations on the ground" are not indicative of scienter. *Id.*; *see Espy v. J2 Glob., Inc.*, 99 F.4th 527, 537 (9th Cir. 2024) (discounting CWs who offered "simply negative opinions of [a company's] business practices").

Nothing else attributed to FE-1 helps salvage his account.  He claims to have attended various meetings with the "C-Suite," ¶ 195, but there are no facts alleged as to when these purported meetings took place or when "leadership" became aware of the demand contraction or its magnitude. *Id.*; *Oakland Cnty. Voluntary Emps.' Beneficiary Ass'n v. Tesla, Inc.*, 2025 WL 3459471, at *2 (9th Cir. Dec. 2, 2025) (CW allegations "too vague" to support scienter even where "based on first-hand observations" because they "rely on speculation to show what [the CEO] knew and when.").  FE-1 also purports to have "learned" information about Chinese competition

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1    from "Enphase distributors and installer partners," ¶ 205, but this allegation is likewise unmoored

2    in time, and there are no allegations that FE-1 conveyed this information to any Defendant.  *See*

3    *Solarcity*, 274 F. Supp. 3d at 1010.  And FE-1's allegation that "Enphase had excellent insight into

4    demand," ¶ 213, is not enough absent particularized facts showing "specific, inconsistent report[s]

5    or information" that Defendants actually "reviewed" at the time of the statements.  *In re Cisco Sys.*

6    *Inc. Sec. Litig.*, 2013 WL 1402788, at *12 (N.D. Cal. Mar. 29, 2013).

7        **FE-2.**  FE-2 is not alleged to have spoken or otherwise had any "direct interactions" with

8    any of the Individual Defendants.  *Abadilla v. Precigen, Inc.*, 2022 WL 1750033, at *7 (N.D. Cal.

9    May 31, 2022).  And FE-2 purportedly left Enphase in the summer of 2023.  ¶ 33.  He can shed no

10   light on the business or Defendants' states of mind following his departure.  *See Cisco*, 2013 WL

11   1402788, at *12; *Karpov v. Insight Enters., Inc.*, 2010 WL 4867634, at *7 (D. Ariz. Nov. 16, 2010)

12   ("limited overlap" between FEs' tenures at company and the class period undermines reliability).

13       In any event, nothing FE-2 alleges supports an inference of scienter.  FE-2 claims "sales

14   data circulated at least quarterly," ¶ 192, and that he attended group meetings at which

15   Kothandaraman was allegedly present, ¶ 204.  But FE-2 fails to allege the content of the data

16   discussed in the meetings, nor does he "identify any specific, inconsistent report or information

17   that was reviewed by Defendants before they made their public statements."  *Cisco*, 2013 WL

18   1402788, at *12.  Still too, FE-2 never "tie[s]" the purported data and meetings "to any specific

19   time frame," so even if the reports and meetings discussed contradictory information, they "are

20   not necessarily contemporaneous with any of the allegedly false or misleading misstatements."

21   *Solarcity*, 274 F. Supp. 3d at 1010.  While FE-2 alleges Kothandaraman visited the Netherlands

22   twice—which Kothandaraman told investors—Plaintiff does not explain how those visits have any

23   bearing on a purported intent to defraud.  ¶ 204.  Finally, FE-2 claims "in the beginning of 2023,"

24   he started to see "distributors . . . ordering less product" and learned that Chinese competition was

25   increasing.  ¶ 206.  But there are no allegations that FE-2 conveyed this information to any

26   Defendant, nor do other particularized facts connect these purported trends to what any Defendant

27   knew at any given time or to any challenged statement.  *See Cisco*, 2013 WL 1402788, at *12.

28       **FE-3 and FE-4.**  To begin, neither FE-3 nor FE-4 is alleged to have held roles involving

1    Enphase's sales—both purportedly worked in technical support.  ¶¶ 34-35, 207.  No allegation

2    suggests either FE would have insight into European sales, let alone what any Defendant knew

3    about those sales.  *See Precigen*, 2022 WL 1750033, at *7 (discounting CW allegations that do

4    "not appear to be within [the CW's] expertise").  Perhaps because European sales fell outside of

5    their job descriptions, the information attributed to FE-3 and FE-4 largely amounts to anecdotes

6    "heard from installers," not firsthand facts.  ¶¶ 207-10.  But FEs cannot "base their knowledge on

7    vague hearsay."  *Zucco*, 552 F.3d at 997; *see Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994,

8    1018 (N.D. Cal. 2018) (allegations not from FE's "own personal knowledge" unreliable).

9        The accounts from FE-3 and FE-4 additionally suffer from many of the same flaws as FE-1

10    and FE-2.  Neither is alleged to have interacted with any Individual Defendant.  *See, e.g.*, *Precigen*,

11    2022 WL 1750033, at *7.  And FE-4 provides no time period at all, ¶ 210, while FE-3 claims

12    installers were reporting declining demand as of "the summer of 2023," ¶¶ 207-10—but again,

13    Enphase disclosed during its earnings call for Q3 2023 that European demand had decreased.  The

14    Amended Complaint thus fails to connect FE-3 and FE-4's accounts to any particularized

15    allegation about what any Defendant knew *at the time of the challenged statements*.  *Adamo v.*

16    *Nextdoor Holdings, Inc.*, 2025 WL 3238205, at *4 (N.D. Cal. Nov. 20, 2025) ("Plaintiff must

17    allege 'specific *contemporaneous* . . . conditions that demonstrate [scienter]'").

18            **3.    The Amended Complaint Fails to Identify Any Particularized Contrary**
                    **Information Known to Any Defendant**
19

20        Plaintiff also claims Defendants' alleged "access to several types of data and information

21    about [Enphase's] global, European, and certain country-specific markets" demonstrates scienter.

22    ¶ 191.  But Plaintiff never identifies a single piece of contradictory information to which any

23    Defendant had access, much less actually accessed, at the time of any Challenged Statement.

24    Plaintiff only speculates that meetings, data, and internal reports *would* show waning demand in

25    Europe.  *E.g.*, ¶¶ 4-5.  That is not enough.  *Lipton*, 284 F.3d at 1036 (securities fraud complaints

26    must contain "at least some specifics from" allegedly contrary internal reports); *Nextdoor*, 2025

27    WL 3238205, at *4 (complaint lacked "any facts to show whether, and when, the reports revealed"

28    or "whether [the CEO] had access to any report revealing" an adverse fact "prior to" statement).

1    Plaintiff points to certain data sources to which Defendants had access, like "[b]ookings

2    data," ¶ 196, Enphase's software systems, ¶¶ 64, 197-98, third-party permit reports, ¶ 199, and the

3    "inventory channel," ¶ 211.  But Plaintiff never explains what these data sources showed at any

4    point in time, let alone that they showed information contradicting any Challenged Statement when

5    made.  *Lipton*, 284 F.3d at 1036 ("Although plaintiffs refer to the existence of the [] data and make

6    a general assertion about what they think the data shows, plaintiffs do not allege with particularity

7    any specific information showing [falsity].");  *Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v.*

8    *HP Inc.*, 2021 WL 1056549, at *6 (N.D. Cal. Mar. 19, 2021) ("general access" to metrics "d[id]

9    not establish that [defendants] personally monitored the system telemetry or had access to all data

10   within the system.");  *Align I*, 856 F.3d at 620 (similar).

11   Plaintiff also relies on Enphase's "frequent interactions with distributors and installers"

12   and that Enphase said it was "close to our customers."  ¶¶ 200-03.  But like access to unspecified

13   information, conclusory allegations about a company's "close relationship with its customers" do

14   not support scienter.  *Cisco*, 2013 WL 1402788, at *11.  Worse still, the Amended Complaint fails

15   to pin these supposed interactions with distributors and installers to any specific time—Plaintiff

16   does not allege what Defendants purportedly learned from their customers, and when, to show that

17   Defendants knew "any specific information . . . that would contradict any public statement at the

18   time it was made."  *Veal*, 423 F. Supp. 3d at 814.  And while Plaintiff identifies certain company

19   meetings and Kothandaraman's trips to the Netherlands to meet with installers, *see* ¶¶ 191, 204,

20   "participation in a meeting is merely routine corporate activity—hardly indicative of scienter."

21   *Fadia v. FireEye, Inc.*, 2016 WL 6679806, at *13 (N.D. Cal. Nov. 14, 2016).

22   Finally, Plaintiff points to Defendants' "three to nine months of visibility" into Enphase's

23   sales pipeline to claim that Defendants must have known about declining European demand.

24   ¶¶ 225-29.  But Kothandaraman highlighted that in "bad times," Enphase would only have about

25   "3-month visibility."  Ex. 2 at 21.  Enphase provided investors updated information on results and

26   expectations in Europe in connection with each quarter's financial results.  Indeed, Enphase's

27   longstanding practice is to give financial guidance only for the following quarter (a three-month

28   period) rather than annually.  *E.g.*, *id*. at 4.  Plaintiff does not plead any particularized fact that

1    Defendants' visibility was longer or different than what they routinely shared with investors

2    throughout the Class Period, and the Amended Complaint does not allege (nor could it allege) that

3    Defendants ever promised investors perfect foresight into changing macroeconomic conditions

4    before they manifested. *See id.* at 9 (Kothandaraman: "I don't have a crystal ball. I'm not giving

5    you Q1 guidance but this is our expectation right now."); *In re Northpoint Commc'ns Grp., Inc.*

6    *Sec. Litig.*, 184 F. Supp. 2d 991, 1004 (N.D. Cal. 2001) (allegations that defendants merely did not

7    "fully anticipate the difficult times" fails to show a strong inference of scienter).

8    ### 4.    Defendants' Roles and Statements Do Not Show Scienter

9    Plaintiff further claims that Defendants' statements support scienter because certain

10    (unidentified) statements "suggest that they had access to negative, undisclosed information."

11    ¶ 218. But access to information is not enough, and Plaintiff's allegations amount to no more than

12    mere "general awareness of the [company's] day-to-day workings," which falls far short of

13    showing scienter. *Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735,

14    766 (N.D. Cal. 2020) ("Defendants' statements regarding . . . knowledge of [drug's] distribution

15    and prescription information" did not support scienter). Plaintiff also points to the "Individual

16    Defendants' control over Enphase," their "high-level positions," and their "responsibili[ty]" for

17    Enphase's statements, ¶¶ 221-24. But a defendant's role at a company is not enough to plead an

18    intent to defraud with particularity. *FireEye*, 2016 WL 6679806, at *16 (status as "high level

19    corporate officers" insufficient). This is especially so where Plaintiff pleads no facts tying

20    Defendants' roles to any information that contradicted any Challenged Statement when made.

21    ### 5.    The Core Operations Theory Is Rare and Inapplicable Here

22    Having failed to identify any particularized facts supporting a strong inference of scienter,

23    Plaintiff falls back on the core operations doctrine, ¶ 219, a theory which is "not easy" to prove.

24    *Intuitive*, 759 F.3d at 1062. Core operations allegations may only "independently satisfy the

25    PSLRA where they are particular and suggest that defendants had actual access to the disputed

26    information," *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 932 (N.D. Cal. 2017), or where it would

27    be "absurd to suggest that management was without knowledge" of the alleged fraud, *Solarcity*,

28    274 F. Supp. 3d at 1011. Plaintiff must plead "the who, what, where, when, and how regarding

1    each Defendant's access to the relevant information that belies fraudulent intent." *Bodri*, 252 F.

2    Supp. 3d at 932.  Plaintiff comes nowhere close.  There are no allegations of "specific admissions"

3    or "witness statements" that would satisfy the core operation theory's "high burden of proof."

4    *Prodanova*, 993 F.3d at 1111.  Plaintiff alleges only that Europe was "critical," ¶¶ 219-20, but that

5    is not enough.  *See Veal*, 423 F. Supp. 3d at 817.

6         Likewise, this case does not present the "rare circumstance" where it would be "absurd" to

7    think Enphase's management did not know increasing competition and declining demand in

8    Europe was, by Plaintiff's telling, a more serious threat than their statements indicated.  *Intuitive*,

9    759 F.3d at 1063.  To the contrary, Enphase's financial results supported the Company's narrative:

10   up until Q3 2023, Enphase reported strong results in Europe.  And while it was transparent about

11   lagging demand beginning in Q3 2023, Enphase again reported growth in early 2024.  Given this

12   reality, it is hardly "absurd" to suggest that management's generally rosy outlook on the European

13   market was genuine and grounded in the information known at the time.

14              **6.    The Nonfraudulent Inference Is Far More Cogent**

15        The nonfraudulent inference is far more compelling.  *Tellabs*, 551 U.S. at 314.  Defendants

16   provided investors with regular updates about the European market, including financial results that

17   consistently met guidance.  Defendants shared their optimistic views about the EU business—

18   based on Enphase's years of revenue growth, expansion into new countries, and expectations based

19   on past seasonal patterns.  As soon as macroeconomic conditions and demand changed, Enphase

20   updated investors.  *Lowe v. Tandem Diabetes Care Inc.*, 2024 WL 1898473, at *13 (S.D. Cal. Apr.

21   30, 2024) (crediting innocent inference that company knew of headwinds but "reasonably

22   believed" it would still "achieve its financial goals"); *Bodri*, 252 F. Supp. 3d at 933 (plaintiff "d[id]

23   not overcome the competing inference that Defendants simply miscalculated the demand for a new

24   product").  Plaintiff's conclusory allegations that Defendants were somehow trying to buoy

25   Enphase's stock price through a false growth narrative, ¶ 3, is unaccompanied by any

26   particularized fact.  *See Lowe*, 2024 WL 1898473, at *11 ("simply wanting to avoid a stock

27   decline" is not a viable motive).  Indeed, that theory "does not make a whole lot of sense" where

28   no Defendant tried to capitalize on a supposedly inflated stock price.  *Nguyen*, 962 F.3d at 415;

1   *Bodri*, 252 F. Supp. at 933 (lack of stock sales or motive "significantly undermine[s]" scienter).

2   At most, Plaintiff's allegations suggest, in hindsight, that Defendants' predictions about Europe

3   could have been more negative.  But "[d]issatisfaction with a company's strategy . . . coupled with

4   a stock drop" is not "an actionable securities fraud claim."  *Espy*, 99 F.4th at 533.

5           **C.    Plaintiff Fails to Plead Loss Causation**

6           Plaintiff attempts to plead loss causation through allegations that Enphase's earnings

7   announcements for Q3 2023 and Q3 2024 somehow revealed the "truth" of the challenged

8   statements.  But Plaintiff pleads no particularized fact suggesting Enphase's announcement of

9   financial results for two specific quarters relates in any way to any specific challenged statement.

10  This is an independent basis on which the Court should dismiss the Amended Complaint.

11          *First*, Plaintiff points to the October 26, 2023 earnings call, during which Enphase

12  "announced disappointing revenue guidance for the following quarter [Q4 2023]."  ¶ 235.  But the

13  prediction of *future* headwinds is not "a viable corrective disclosure"; rather, "[i]t strains credulity

14  to reverse engineer this forward-looking observation into a retrospective analysis."  *Plumbers &*

15  *Steamfitters Loc. 60 Pension Tr. v. Meta Platforms, Inc.*, 2024 WL 4251896, at *11 (N.D. Cal.

16  Sept. 17, 2024); *see Ng*, 2024 WL 695699, at *18 ("a forward-looking statement of changes to the

17  company" could not "plausibly be understood as an admission of past concealment"); *Dolly v.*

18  *GitLab Inc.*, 2025 WL 2372965, at *3, 15 (N.D. Cal. Aug. 14, 2025) ("lower-than-expected

19  guidance" that "said nothing to suggest improprieties" about "prior statements, much

20  less . . . reveal a fraud" insufficient).  And to the extent Plaintiff instead wants to point to the

21  Q3 2023 earnings announcement, that too fails because disappointing earnings do not suggest that

22  Enphase had "concealed adverse facts relating to the company's business and growth prospects."

23  *Ng*, 2024 WL 695699, at *18; *Loos v. Immersion Corp.*, 762 F.3d 880, 887–88 (9th Cir. 2014)

24  (plaintiff must plead "the market 'learned of and reacted to th[e] fraud, as opposed to merely

25  reacting to reports of the defendant's poor financial health generally'").

26          *Second*, even though Plaintiff concedes that Enphase disclosed a slowdown in European

27  demand in 2023, Plaintiff claims that Enphase's announcement of forward-looking guidance and

28  disappointing earnings results on October 22, 2024 somehow corrected the Challenged Statements.

¶ 254. This alleged corrective disclosure suffers from the same fatal flaws as the first—forward-looking guidance does not reveal a retrospective truth, and disappointing earnings, without more, do not suggest fraud. *See Ng*, 2024 WL 695699, at *18.

It independently fails because a corrective disclosure must reveal "new facts." *Dolly*, 2025 WL 2372965, at *15. Plaintiff admits declining demand in Europe was "not new." ¶ 261. In a seeming attempt to avoid this issue, Plaintiff claims the statements between October 2023 and October 2024 gave "the misleading impression that Enphase's European pullback was temporary and cyclical rather than permanent and structural." ¶ 242. But adequately pleading loss causation requires Plaintiff to trace its loss to "the very facts about which the defendant lied." *Wochos*, 985 F.3d at 1197. Plaintiff identifies no facts connecting the October 22, 2024 call to the revelation of "permanent and structural" issues in Europe. ¶ 242. To the contrary, Plaintiff concedes that even in October 2024, Enphase remained cautiously optimistic that the European market could improve, ¶ 256, and the Amended Complaint points to nothing on that call so much as mentioning the purported structural problems Plaintiff claims were concealed. *See, e.g.*, ¶ 187. Plaintiff's failure to allege particularized facts linking the alleged corrective disclosure to its theory dooms its claim.

### D.    Plaintiff Fails to State a Section 20(a) Claim

Plaintiff's § 20(a) claim fails with its § 10(b) claim. *Lipton*, 284 F.3d at 1035 n.15.

### E.    Dismissal Should Be with Prejudice

There have now been three complaints in this action, and *this* Plaintiff has had two attempts to state a claim—it filed an amended complaint on the date ordered by the Court, and an additional amended complaint two weeks later (without leave of court or notice to Defendants). *Compare* Dkt. 84 *with* Dkt. 85; *see also* Dkt. 67. Plaintiff has taken a second bite at the apple and still has not cured its deficiencies—"a strong indication that the plaintiff[] ha[s] no additional facts to plead." *Inchen Huang v. Higgins*, 443 F. Supp. 3d 1031, 1059 (N.D. Cal. 2020) ("discretion to deny leave to amend is particularly broad where the plaintiff has previously amended.").

## V.    CONCLUSION

Defendants respectfully request that the Court grant Defendants' Motion with prejudice.

DATED: December 12, 2025

**LATHAM & WATKINS LLP**

  */s/ Colleen C. Smith*
Colleen C. Smith (SBN 231216)
Katherine E. Bruce (SBN 361220)
Anastasia Pyrinis (SBN 352395)
12670 High Bluff Drive
San Diego, California 92130
T: (858) 523-5400
Email: colleen.smith@lw.com
Email: kathy.bruce@lw.com
Email: anastasia.pyrinis@lw.com

Daniel R. Gherardi (SBN 317771)
140 Scott Drive
Menlo Park, California 94025
T: (650) 328-4600
Email:  daniel.gherardi@lw.com

Thomas J. Giblin (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
T: (212) 906-1200
Email:  thomas.giblin@lw.com

*Attorneys for Defendants Enphase Energy,*
*Inc., Badrinarayanan Kothandaraman, and*
*Raghuveer Belur*