LATHAM & WATKINS LLP
Colleen C. Smith (Bar No. 231216)
    *colleen.smith@lw.com*
Katherine E. Bruce (Bar No. 361220)
    *kathy.bruce@lw.com*
Anastasia Pyrinis (Bar No. 352395)
    *anastasia.pyrinis@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
Telephone: +1.858.523.5400

Daniel R. Gherardi (Bar No. 317771)
    *daniel.gherardi@lw.com*
140 Scott Drive
Menlo Park, CA 94025-1008
Telephone: +1.650.328.4600

Thomas J. Giblin (*pro hac vice*)
    *thomas.giblin@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1 212.906.1200

*Attorneys for Defendants Enphase Energy, Inc.,
Badrinarayanan Kothandaraman, and Raghuveer
Belur*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| HANSAINVEST HANSEATISCHE INVESTMENT-GMBH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ENPHASE ENERGY, INC., BADRINARAYANAN KOTHANDARAMAN, and RAGHUVEER BELUR,<br><br>Defendants. | Case No. 4:24-cv-09038-JST<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS LEAD PLAINTIFF'S FIRST AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Hearing:      May 7, 2026<br>Time:          2:00 p.m.<br>Location:    Courtroom 6 – 2nd Floor<br><br>Hon. Jon S. Tigar |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

      A.    Plaintiff Fails to Plead a Material Misrepresentation or Omission ....................... 2

            1.    The Challenged Statements Are Nonactionable Opinions and
                  Puffery ........................................................................................ 2

            2.    The PSLRA's Safe Harbor Protects Forward-Looking Statements ........... 4

            3.    The Former Employee Allegations Remain Unreliable and
                  Insufficient ............................................................................... 6

            4.    Enphase's Financial Results Undermine Plaintiff's Theory ..................... 7

            5.    Plaintiff Fails to Identify Any False Statement After 2023 ...................... 7

      B.    Plaintiff Fails to Plead a Strong Inference of Scienter ........................................ 8

            1.    Plaintiff Identifies No Contrary Information in Defendants'
                  Possession at the Time of the Statements ...................................... 9

            2.    The Core Operations Doctrine Does Not Apply .................................... 12

            3.    The Competing Nonfraudulent Inference Is Far More Compelling
                  Than Plaintiff's Story of Fraud ................................................... 13

      C.    Plaintiff Fails to Plead Loss Causation ............................................................ 14

III.  CONCLUSION .................................................................................................. 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AMI – Gov't Emps. Provident Fund Mgmt. Co. Ltd. v. Alphabet Inc.*,
2024 WL 4353637 (N.D. Cal. Sept. 3, 2024) ............................................................... 3

*Bodri v. GoPro, Inc.*,
252 F. Supp. 3d 912 (N.D. Cal. 2017) ............................................................... 10, 13

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ............................................................... 3, 4, 9

*City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*,
2024 WL 235183 (N.D. Cal. Jan. 22, 2024) ............................................................... 14

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F.Supp.2d 1045 (N.D. Cal. 2012) ............................................................... 3

*Constr. Laborers Pension Tr. of Greater St. Louis v. Funko Inc.*,
166 F.4th 805 (9th Cir. 2026) ............................................................... 11, 13

*Curry v. Yelp, Inc.*,
875 F.3d 1219 (9th Cir. 2017) ............................................................... 15

*Dalarne Partners, Ltd. v. Sync Rsch., Inc.*,
103 F. Supp. 2d 1209 (C.D. Cal. 2000) ............................................................... 13

*Dolly v. GitLab Inc.*,
2025 WL 2372965 (N.D. Cal. Aug. 14, 2025) ............................................................... 14

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ............................................................... 15

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
81 F.4th 918 (9th Cir. 2023) ............................................................... 10

*Ferreira v. Funko Inc.*,
2021 WL 880400 (C.D. Cal. Feb. 25, 2021) ............................................................... 3

*Grossman v. Sin*,
2025 WL 1330087 (C.D. Cal. Mar. 31, 2025) ............................................................... 3

*Hurst v. Enphase Energy, Inc.*,
2021 WL 3633837 (N.D. Cal. Aug. 17, 2021) ............................................................... 7

*In re Am. Apparel, Inc. S'holder Litig.*,
855 F. Supp. 2d 1043 1071 (C.D. Cal. 2012) ............................................................... 15

*In re Cisco Sys. Inc. Sec. Litig.*,
  2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) ........................................................................ 10

*In re Copper Mountain Sec. Litig.*,
  311 F. Supp. 2d 857 (N.D. Cal. 2004) .................................................................................. 12

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) .......................................................................................... 4, 5

*In re Eventbrite, Inc. Sec. Litig.*,
  2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ......................................................................... 4

*In re Fastly, Inc. Sec. Litig.*,
  2021 WL 5494249 (N.D. Cal. Nov. 23, 2021) ........................................................................ 6

*In re Nektar Therapeutics*,
  2020 WL 3962004 (N.D. Cal. July 13, 2020) ....................................................................... 15

*In re Palo Alto Networks, Inc. Sec. Litig.*,
  2025 WL 1093247 (N.D. Cal. Apr. 11, 2025) ......................................................................... 7

*In re Pivotal Sec. Litig.*,
  2020 WL 4193384 (N.D. Cal. July 21, 2020) ....................................................................... 12

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) .............................................................................................. 6

*In re Sona Nanotech, Inc. Sec. Litig.*,
  562 F. Supp. 3d 715 (C.D. Cal. 2021) ............................................................................ 11, 14

*In re SunPower Sec. Litig.*,
  2018 WL 4904904 (N.D. Cal. Oct. 9, 2018) ........................................................................... 4

*Kong v. Fluidigm Corp.*,
  2021 WL 3409258 (N.D. Cal. Aug. 4, 2021) ..................................................................... 9, 11

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ........................................................................................ 9, 10

*Long Miao v. Fanhua, Inc.*,
  442 F. Supp. 3d 774 (S.D.N.Y. 2020) .................................................................................... 7

*Lopes v. Fitbit, Inc.*,
  2020 WL 1465932 (N.D. Cal. Mar. 23, 2020) ................................................................. 12, 15

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*,
  39 F.4th 1092 (9th Cir. 2022) ............................................................................................... 4

*Markette v. XOMA Corp.*,
  2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ....................................................................... 2

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

iii

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 4:24-CV-09038-JST

*Menora Mivtachim Ins. Ltd. v. Meta Platforms, Inc.*,
  2026 WL 508834 (9th Cir. Feb. 24, 2026) .............................................................................. 14

*Mineworkers Pension Scheme v. First Solar Inc.*,
  881 F.3d 750 (9th Cir. 2018) ................................................................................................ 14

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ......................................................................................... 10, 13

*Oakland Cnty. Voluntary Emps.' Beneficiary Ass'n v. Tesla, Inc.*,
  2025 WL 3459471 (9th Cir. Dec. 2, 2025) ............................................................................ 6

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) ........................................................................................................... 2, 4

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ............................................................................................ 4, 5

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) .......................................................................................... 8, 12

*Sneed v. Talphera, Inc.*,
  147 F.4th 1123 (9th Cir. 2025) ............................................................................................. 8

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ..................................................................... 11

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ................................................................................................. 6

## I.    INTRODUCTION

Plaintiff's allegations do not establish fraud.  Enphase delivered strong results in Europe until market conditions changed for the first time in years.  When that happened, Enphase promptly informed investors, adjusted its financial guidance appropriately, and *met that guidance* in *every single quarter* at issue.  Facing market headwinds, disclosing them, and adjusting to them is not a basis for a securities fraud claim.  Try as it may, Plaintiff has not demonstrated any Challenged Statement was materially false, much less made with fraudulent intent, or caused any loss.

*First*, Plaintiff cannot avoid that the Challenged Statements are all inactionable opinions, puffery, and forward-looking statements.  Plaintiff attempts to sidestep *Omnicare* by painting Defendants' subjective assessments and opinions as certainties.  But the statements themselves—which reflect management's judgments about the health of the European market, Enphase's European business, and its competitive strengths—belie that characterization.  And Plaintiff has no meaningful response to the fact that several Challenged Statements are generalized corporate optimism or predictions of the future, neither of which supports a securities fraud claim.

Even if the Challenged Statements were actionable, Plaintiff identifies no particularized facts suggesting any was false or misleading when made.  Plaintiff relies on anonymous former employees and unidentified industry participants who either lack first-hand knowledge or had such limited insight into the EU region that their allegations cannot be credited.  Worse still, Plaintiff cannot surmount its timing problem.  Its FEs—even setting aside their reliability issues—say nothing about the period after Enphase announced the newly observed decline in European demand in October 2023.  While Plaintiff claims Enphase began to see demand decline "by early-to-mid 2023," Dkt. 90 ("Opp.") at 7, it does not grapple with the reality that Enphase posted growth in Europe until Q3 2023 and always met its guidance.  Plaintiff offers no rebuttal to the fact that Enphase kept investors updated and promptly informed them when regional conditions changed.

*Second*, the Opposition does not remedy Plaintiff's failure to plead scienter.  Plaintiff still identifies no motive for any Defendant to purportedly defraud investors, nor can it muster particularized facts to infer that Defendants had access to contradictory information when they made their statements.  Plaintiff also has not shown that Enphase's European markets constitute

the "rare circumstance" warranting application of the "core operations" doctrine to infer scienter. And it identifies no fact to overcome the more plausible nonfraudulent inference that, based on Enphase's historic results, Defendants were optimistic about Europe until demand contracted for the first time in years—at which point they promptly updated investors.

*Third*, Plaintiff fails to connect any "truth" revealed to the market with any Challenged Statement it supposedly "corrected." Instead, Plaintiff points to the market's reaction to an updated forward-looking outlook that reflected newly observed regional headwinds. That is not sufficient to allege loss causation. The Amended Complaint should be dismissed with prejudice.

## II.    ARGUMENT

### A.    Plaintiff Fails to Plead a Material Misrepresentation or Omission

Plaintiff attempts to cast Enphase as a struggling company straining to conceal "collapsing demand" and "structural weaknesses" in Europe by falsely touting strong growth. Opp. at 1. But Plaintiff cannot reconcile that picture with reality—and in particular with the undisputed fact that Enphase met its financial guidance *every single quarter during the Class Period*. *See* Dkt. 86 ("Mot.") at 5. Nor can Plaintiff's theory be squared with Enphase's publicly reported strong growth in Europe, Mot. at 2, 5, or the fact that Enphase promptly disclosed newly observed softness in Europe in October 2023, just when Plaintiff's FEs' claim to have first learned of it. Mot. at 15. Plaintiff's hindsight pleading is implausible and insufficient to meet its heavy burden under the PSLRA.

### 1.    The Challenged Statements Are Nonactionable Opinions and Puffery

Nearly all of the Challenged Statements are opinions. Plaintiff argues those statements "express[] certainty about a thing" and "are not qualified by any expression of belief, view, or sentiment," and thus are actionable. Opp. at 12. But under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015), statements reflecting management's "assessment of and judgment about" business conditions are opinions, even if expressing confidence in those beliefs. *Markette v. XOMA Corp.*, 2017 WL 4310759, at \*4 (N.D. Cal. Sept. 28, 2017); *see* Mot. at 6-7. Plaintiff's argument that "statements [that] are not qualified by any expression of 'belief, view, or sentiment'" are actionable is wrong. Opp. at 12. Plaintiff cites

*Grossman v. Sin*, 2025 WL 1330087, at *26 (C.D. Cal. Mar. 31, 2025) (Opp. at 12-13), to argue statements that do not include "opinion-qualifying language such as 'I think' or 'I believe' . . . are not opinions." Opp. at 12-13. But the language Plaintiff omits in its ellipsis is important; *Grossman* states that only statements without opinion-qualifying language and that "*express certainty*" are not opinions. *Grossman*, 2025 WL 1330087, at *26. "[N]ot all statements of opinion include such qualifying language like 'I believe' or 'I think.'" *AMI – Gov't Emps. Provident Fund Mgmt. Co. Ltd. v. Alphabet Inc.*, 2024 WL 4353637, at *3 n.1 (N.D. Cal. Sept. 3, 2024). Here, Enphase being "extremely bullish," believing "the fundamentals remain strong," and expressing confidence that a slowdown would be "temporary," do not express "certainty," but are precisely the type of subjective "evaluations of the health of the European market" that constitute nonactionable opinions. Mot. at 6-7; *see City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F.Supp.2d 1045, 1064 (N.D. Cal. 2012) (dismissing statements that we have "strong demand metrics and good momentum" and "our demand indicators are strong").

There are only three ways an opinion can be actionable under *Omnicare*; none has been met. *First*, Plaintiff does not allege Defendants "did not hold the belief [they] professed." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017). All Plaintiff argues is that FEs "disagreed" with management. Opp. at 13-14. But mere disagreement with management is insufficient to allege securities fraud. *Ferreira v. Funko Inc.*, 2021 WL 880400, at *28 (C.D. Cal. Feb. 25, 2021). *Second*, Plaintiff argues Defendants' statements "contained a false statement of fact about demand for Enphase's products, which already was declining." Opp. at 13. This merely restates Plaintiff's falsity theory, which as explained in Sections II.A.3-5, is unsupported by particularized facts. If the "embedded fact" is that demand was declining, Plaintiff must plead particularized facts establishing that decline at the time of the Challenged Statements; Plaintiff's conclusory say-so is insufficient. And Plaintiff's FE allegations are unreliable and irreconcilable with Enphase's financial results. *Infra* § II.A.3. *Third*, Plaintiff fails to sufficiently plead an omission that makes the opinions misleading when made. Plaintiff argues Defendants' statements "omitted facts about the existence and impact of market saturation, Chinese competition, and product and service problems." Opp. at 14. But an

opinion is not misleading just because "the issuer knows, but fails to disclose, some fact cutting the other way." *Omnicare*, 575 U.S. at 188-89; Mot. at 8. Rather, a plaintiff can only prevail on an omissions theory where "there is no reasonable basis for the belief." *Align*, 856 F.3d at 616. Here, Enphase's record financial results provided more than a reasonable basis for optimism.

Plaintiff's puffery arguments fare no better. Plaintiff argues statements of the "strength" of Enphase's EU business are not puffery because that "division" was "critical" and the statements "were issued on earnings calls." Opp. at 15. But Plaintiff cites no authority supporting that speaking about a business division transforms puffery into a factual assertion. *Cf. Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092 (9th Cir. 2022) ("district court did not err by failing to 'consider the context' in which" challenged statements were made). Statements that Enphase's business was "strong," "doing very well," and experiencing "rapid" growth are "vague statements of optimism" upon which "investors do not rely." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010). Courts routinely dismiss claims challenging such statements. *See In re SunPower Sec. Litig.*, 2018 WL 4904904, at *4 (N.D. Cal. Oct. 9, 2018) (statements about "strong demand" are nonactionable); *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *14 (N.D. Cal. Apr. 28, 2020) ("statements like 'business remained strong' . . . are inactionable").

### 2.   The PSLRA's Safe Harbor Protects Forward-Looking Statements

Plaintiff also argues that the PSLRA's safe harbor provision does not apply because the Challenged Statements are "about current or past facts" rather than forward-looking projections. Opp. at 16. This argument ignores the safe harbor's scope. Nearly all the Challenged Statements are forward-looking expectations about Enphase's anticipated growth or predictions about future recovery from regional slowdown. Mot. at 9. For example, statements that the EU pullback would be "temporary," Europe would "recover," and Enphase remained "bullish" about EU growth concern "plans and objectives for future operations" and are protected by the PSLRA. Mot. at 9-10; *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (holding the safe harbor provisions "exempts" statements like "financial projections," "plans and objectives of management for future operations," or "future economic performances"). Plaintiff does not describe how these statements about the future are not forward-looking.

Instead, Plaintiff carves out present tense assumptions incorporated into statements about the future. Opp. at 16-17. But the PLSRA expressly protects current facts and "assumptions underlying or related to" a forward-looking statement as well. *Intuitive*, 759 F.3d at 1058. In any event, Plaintiff alleges no facts demonstrating the present-tense portions of the forward-looking statements were false or misleading when made. Mot. at 12. Indeed, when the Challenged Statements were made, Enphase had disclosed strong growth and sell-through data. *Id*. at 3. Moreover, the statements Plaintiff highlights in its Opposition clearly look to the future. For instance, the Opposition references Enphase's statement that "[o]ur European business is growing rapidly," Opp. at 16, which entirely omits the rest of the statement: that the rapid growth is the assumption underlying Enphase's prediction that "many customers have asked us for local manufacturing, and we will be able to do that *going forward*." ¶ 125.

Plaintiff also argues Defendants did not accompany the forward-looking statements with cautionary language "tailored to the statements" and that warnings of potential future risks "cannot protect Defendants because the problems had already manifested." Opp. at 10, 17. That is wrong. Enphase warned of numerous "significant risks and uncertainties," competition in a "highly competitive market," the possibility of "sustained periods of decreased demand," risks from "unfavorable macroeconomic and market conditions," and—beginning in Q3 2023—specific disclosures about risks associated with the European economic downturn, including warnings about expected "adverse effect[s] on our revenue in 2024" from Europe's "broad-based slowdown." Mot. at 10 (citing SEC filings with dozens of risk disclosures); *see also* Exs. 2-3, 5-6, 9-10 at 4 (cautionary language during earnings calls). These warnings "spoke directly to the purported misstatements." *Cutera*, 610 F.3d at 1112. Plaintiff alleges no fact suggesting EU demand had already declined at the time of any Challenged Statement made before Q3 2023. And to the extent demand problems "manifested" in Q3 2023, Defendants' October 2023 disclosure of a "substantial demand reduction in Europe" promptly addressed that manifestation in the scheduled announcement of results for Q3. Mot. at 15. As soon as demand declines manifested, moreover, Enphase included additional specific warnings about the European slowdown. *Id*. at 10. Plaintiff cannot claim the warnings were inadequate when Defendants disclosed the very "broad-

based slowdown" that Plaintiff claims was concealed. *See In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at *11 (N.D. Cal. Nov. 23, 2021) (finding no falsity where "Defendants disclosed the very risk plaintiff alleges they concealed"); *see also* Mot. at 15-16.

        **3.**        **The Former Employee Allegations Remain Unreliable and Insufficient**

Plaintiff's Opposition does not cure the fundamental deficiencies in its former employee ("FE") allegations. Mot. at 11. Courts credit FE accounts only when pled "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017); Mot. at 8. But none of the FEs possessed personal knowledge of Enphase's Europe-wide business. Mot. at 11-12. Plaintiff acknowledges that each worked in a geographically limited market: FE-1 worked in just 5% of Enphase's EU market, while FE-2 worked in a subset of the Netherlands. Opp. at 4. Plaintiff's own cited authority requires "a basis for each [witness's] knowledge about the specific statements he made." Opp. at 8-9. Plaintiff offers none. Instead, Plaintiff claims FE-1's exposure to 5% of the EU market permits him to opine on "broad European demand trends." *Id.* And Plaintiff claims FE-2's work in a subset of just one EU country is sufficient to support FE-2's vague claim that Enphase "was losing market share" in an unspecified market. Opp. at 18. The Ninth Circuit prohibits such corporate-level generalizations. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009) ("[G]eneralized claims about corporate knowledge are not sufficient."). Putting aside their lack of personal knowledge, the FEs' assertions that the market "dried up" in "early 2023" is also flatly contradicted by Enphase's record European revenues in Q1 and Q2 2023. Mot. at 13. Meanwhile, FE-3 and FE-4 were technical support employees with no alleged insight into sales or demand. *Id*. at 19-20. Plaintiff's remaining FE allegations depend on impermissible hearsay: FE-2 relies on conversations with unnamed installers purportedly relaying conversations with further unidentified individuals, while FE-3 allegedly "heard from installers" (again not identified) about competition and product issues, Opp. at 4-8. But FEs cannot "base their knowledge on vague hearsay" as this is clearly "not enough to satisfy [the] reliability standard." *Zucco*, 552 F.3d at 995; *see Oakland Cnty. Voluntary Emps.' Beneficiary Ass'n v. Tesla, Inc.*, 2025 WL 3459471, at *2 (9th Cir. Dec. 2, 2025) (CW allegations

"too vague" to support scienter even when based on "first-hand observation"); Mot. at 20.

Plaintiff's reliance on Industry Participants (CI-1 and CI-2) fares no better. Plaintiff concedes it never spoke with these individuals, and instead "copied" unverified online posts from a "credible intelligence platform." Opp. at 9. Plaintiff's Opposition attempts to rehabilitate these sources by noting that "Lead Counsel also conducted an investigation to verify the source of the information." *Id*. at 9. But Plaintiff does not explain what this "investigation" entailed, much less what it means to "verify the source" of the information. Courts routinely reject such unsubstantiated accounts. *See Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 797 (S.D.N.Y. 2020) ("statements made by anonymous—and often vaguely described—interviewees, with whom plaintiff's counsel has not had contact" are not credible); *Hurst v. Enphase Energy, Inc.*, 2021 WL 3633837, at *5 (N.D. Cal. Aug. 17, 2021) (expressing skepticism "that Plaintiff and his counsel have independently investigated" a report cited in complaint); *see also* Mot. at 12.

### 4.    Enphase's Financial Results Undermine Plaintiff's Theory

Plaintiff's Opposition attempts to sidestep the fact that Enphase reported record financial results in Q1 and Q2 2023 by arguing that "demand" is different than "revenue." Opp. at 10. Plaintiff argues, without support, that "lagging revenue recognition" can mask declining "underlying demand," so Enphase's strong financial performance says nothing about whether demand was actually collapsing. *Id.* This argument fails. Enphase disclosed both strongly growing revenues *and* sell-through data (*i.e.*, demand) to investors, which showed 25% increase revenue and 13% microinverter sell-through growth in Q2 2023. Mot. at 13. Plaintiff's Opposition does not challenge this disclosed metric. Opp. at 10. If sell-through—Plaintiff's preferred metric for "demand"—was *growing* 13% in Q2 2023, the FE accounts of a market that "dried up" in "early 2023" are simply "inconsistent with reality." *In re Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 1093247, at *5 (N.D. Cal. Apr. 11, 2025).

### 5.    Plaintiff Fails to Identify Any False Statement After 2023

Plaintiff's Opposition devotes substantial attention to statements made before Enphase's October 2023 disclosure of softening demand, but essentially ignores the Challenged Statements made after that disclosure. Opp. at 11-12. Enphase disclosed a newly observed European

slowdown in October 2023—the first slowdown in two years.  Mot. at 15; Ex. 5 at 5.  After that initial disclosure, Defendants stated their belief the challenges would be temporary and attributed them to "broad macroeconomic conditions."  ¶ 242.  Plaintiff claims these statements were misleading because they "downplayed" structural problems.  Opp. at 11.  But Plaintiff offers no support for this argument.  Plaintiff does not dispute that the FEs do not speak to any time after the summer of 2023—even though the Challenged Statements extend through 2024.  Mot. at 15. Instead, Plaintiff argues that "[e]ach witness account describes structural problems—notably, lower priced competition taking market share—not short-term macroeconomic trends that would quickly resolve." Opp. at 11.  This is a non-sequitur.  The question is not whether the FEs described vague "structural" problems, but whether Plaintiff has alleged any particularized fact about conditions in the European market at the time of each Challenged Statement, including after October 2023, that would undermine Defendants' statements about their hopes for a near-term recovery.  Plaintiff's failure to allege any such fact is fatal to its claims.  Mot. at 18.

Moreover, Enphase's subsequent financial results vindicated Defendants' optimism. Enphase's European revenue *increased 70%* in Q1 2024 over Q4 2023.  Mot. at 16.  Plaintiff's unsupported speculation about purported reduced channel-filling, Opp. at 12, does not undermine that Enphase accurately predicted recovery and delivered results consistent with that prediction. Opp. at 12.  Plaintiff cannot plead falsity by arguing, in hindsight, that Defendants should have been more pessimistic when their optimism proved well-founded.  Mot. at 16.

## B.  Plaintiff Fails to Plead a Strong Inference of Scienter

Plaintiff concedes that it pled no motive at all for Defendants to commit fraud.  Opp. at 17-18.  Because "the lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter," Plaintiff's burden to plead particularized facts giving rise to a strong inference that Defendants acted with an intent to deceive investors, or at least extreme recklessness, becomes all the more challenging. *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021).  Moreover, as the Ninth Circuit recently instructed, Plaintiff's failure to allege that any Challenged Statement was "flagrantly false," elevates their burden to an even more insurmountable level. *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1134 (9th Cir. 2025).

Plaintiff does not identify any particularized fact to meet this heavy burden.

### 1. Plaintiff Identifies No Contrary Information in Defendants' Possession at the Time of the Statements

Plaintiff identifies various sources from which Defendants may possibly have had "access to" supposed adverse facts at the time of the Challenged Statements. Opp. at 18. But Plaintiff's claims do not include any specific information known to Defendants that would have undermined any statement when made. Instead, they amount to nothing more than "[g]eneral allegations of defendants' interaction with other officers and employees, their attendance at meetings, and their receipt of weekly or monthly reports," which are "insufficient to create an inference of scienter." *Kong v. Fluidigm Corp.*, 2021 WL 3409258, at *10 (N.D. Cal. Aug. 4, 2021).

***Internal Reports.*** Plaintiff first points to various internal data and reports that they claim could have shown "that Enphase was losing market share" in Europe. Opp. at 18-19. But merely pleading that Defendants "tracked . . . demand using data" and "this data supposedly indicated that . . . demand was flat" is not sufficiently particularized to undermine any Challenged Statements or give rise to a strong inference of scienter. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002). Plaintiff claims that Defendants had access to "internal reports, "demand metrics," and its "inventory channel" but do not identify the specific data Defendants saw, and when, beyond claiming that "Defendants would have received all materially adverse information regarding declining demand and related structural issues." Opp. at 19-20. Even where Plaintiff identifies an alleged data source, the Opposition ignores a fatal timing mismatch. For example, Plaintiff cites information purportedly available on Solargraf showing "the 2023 European" market, Opp. at 18, but the Complaint alleges this platform was available for Germany only beginning in 3Q23 and for the Netherlands only in 2Q24, ¶ 197—that is, only in limited markets and *after* Enphase had already announced the demand pullback in the EU in October 2023, Ex. 5. Without specifically explaining what contrary reports Defendants viewed, and why those reports made Defendants' statements about Europe false when made, Plaintiff falls far short of the PSLRA's high pleading standard. *See Align*, 856 F.3d at 620 (allegation that adverse fact would have been "readily apparent" from available data insufficient to support scienter).

Plaintiff asserts (in a footnote) that "Courts have rejected Defendants' contention that a complaint must detail the precise numbers Defendants reviewed." Opp. at 22 n.23. Not only does this misstate Defendants' argument, it misconstrues the law. Plaintiff's allegations are insufficient not just because they lack line-item figures, but because they do not include any particularized fact about the content or timing of any purportedly adverse information in any supposed report provided to any Defendant. *See* Mot. at 20-22; *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 925 (N.D. Cal. 2017) ("Plaintiff has failed to provide any content of the original or revised forecasts that quantifies or clarifies what Defendants knew and when, and how it proves Defendants' statements were false when made."). Mere speculation about the existence of contradictory internal reports does not give rise to a strong inference of scienter. *Lipton*, 284 F.3d at 1036 ("general assertion about what they think the [internal] data shows" insufficient to plead scienter because "plaintiffs do not allege with particularity any specific information" known to defendants that undermined challenged statements). By contrast, in *Nvidia* (Opp. at 19), the plaintiffs alleged particular facts about the content of adverse reports. *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 940 (9th Cir. 2023). Here, Plaintiff alleges only that Defendants "would have received" undefined adverse information about allegedly declining demand without saying what that information was or when it was seen. Opp. at 19; *see NVIDIA*, 81 F.4th at 940-41 (no scienter for executive defendant who only allegedly "had access to contradictory information").

Additionally, Plaintiff relies on FEs 1-3 to allege Defendants knew information contradicting their statements. Opp. at 18-20. But while the FEs are "high on alarming adjectives"—like Enphase "was losing market share" and "on the Titanic," Opp. at 4, 18; ¶ 69, or that "retraction in demand" was "significant," Opp. at 20; ¶ 214—they are "short on the facts," *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020). At most, the FEs broadly describe data to which Defendants purportedly had access, like "demand metrics for the Netherlands," "sales quality" data, and "reports and overviews of clients." Opp. at 18. But no FE identifies "any specific, inconsistent report or information that was reviewed by Defendants before they made their public statements." *In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *12 (N.D. Cal. Mar. 29, 2013). The FEs claim Enphase was falling short of internal forecasts, Opp. at 19, but

missed forecasts do not undermine Defendants' stated optimism for Europe—both for continued growth before the disclosed demand pullback and for a speedy recovery thereafter—at the time of their statements. *See Kong*, 2021 WL 3409258, at *10 ("An unsuccessful sales strategy and [FEs'] disagreement within the company over its approach to selling [a line of products] does not support an allegation that [the company] misled investors or was somehow reckless with projections.").

*Meetings.*    Plaintiff also alleges Kothandaraman attended periodic sales meetings—somehow demonstrating his scienter. Opp. at 19-20.  But "[g]eneral allegations of . . . attendance at meetings . . . are insufficient to create an inference of scienter." *Kong*, 2021 WL 3409258, at *10.  Plaintiff claims one of those meetings included a supposed discussion of "declining demand," but provides no particularized facts about the nature or magnitude of that decline, much less which markets were involved.  Opp. at 19.  And this vague information was purportedly shared during "a summer 2023 meeting," *id.*—in other words, during the exact period covered by Enphase's disclosure about a European demand pullback.  Mot. at 17.

Plaintiff's reliance on *Funko* is unavailing.  Opp. at 20.  In *Funko*, plaintiffs cited "regular meetings" executives attended that were dedicated to the specific project at the heart of the challenged statements. *Constr. Laborers Pension Tr. of Greater St. Louis v. Funko Inc.*, 166 F.4th 805, 834 (9th Cir. 2026).  And the plaintiffs alleged specific discussions at those meetings between executives about the COO's "first-hand" observation of issues relevant to that specific project. 166 F.4th at 834.  The project-specific meetings and specific content allegations in *Funko* are a far cry from the generic sales meetings and unspecific content Plaintiff points to here.

*Defendants' Roles and Statements.*  Plaintiff's reference to Kothandaraman's leadership style or public statements also does not give rise to a strong inference of scienter.  Opp. at 21; *see In re Sona Nanotech, Inc. Sec. Litig.*, 562 F. Supp. 3d 715, 728 (C.D. Cal. 2021).  While Plaintiff claims "Kothandaraman repeatedly emphasized his detailed knowledge of European markets," Opp. at 21, it ignores that Kothandaraman told investors that Enphase could have as little as "3-month visibility" in "bad times" and gave guidance only for the next quarter because they did not "have a crystal ball."  *See* Mot. at 21-22; Ex. 2 at 21; *id.* at 4, 9; *see Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *20 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019)

(statements about review of internal information insufficient to support scienter where complaint lacked any "specific allegation about what the Officer Defendants knew" about data).  Plaintiff cites no authority—because there is none—holding that a CEO's knowledge about his company's markets is sufficient to allege a strong inference of scienter.

***Customer Interactions.***  Plaintiff argues Defendants' "communication with installers" demonstrates scienter. Opp. at 6, 20-21.  It does not.  Plaintiff cannot identify a *single* conversation between Kothandaraman and installers where the alleged "structural problems" were discussed, nor that any installer talked to Kothandaraman or any Enphase executive about purported Chinese competition.  *See id*. at 20-21.  Plaintiff is required to plead *particularized* facts demonstrating a strong inference of scienter; vague statements about interactions with customers without specifics about any adverse information learned from those interactions fails to meet Plaintiff's burden.  *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 871 (N.D. Cal. 2004) ("[P]remising scienter on the undated discussions with . . . unidentified customers is insufficient.")

## 2.      The Core Operations Doctrine Does Not Apply

Because Plaintiff lacks particularized facts supporting scienter, it tries to resort to the core operations doctrine. Opp. at 21-22.  But that theory applies only in "rare circumstances" where it would be "absurd" to suggest that Defendants did not know of the alleged fraud. *Prodanova*, 993 F.3d at 1111.  Here, Plaintiff pleads no particularized fact suggesting Defendants knew their optimism about the European market was so unfounded as to be fraudulent.  Plaintiff largely relies on the same "generalities about management's access to data" discussed above, *supra* Section II.B.1, but Plaintiff still fails to identify any particular adverse data point that would have told Defendants European demand was contracting earlier than Q3 2023 or, after Q3 2023, that it would not recover as Defendants expected it to.  *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020), *aff'd*, 848 F. App'x 278 (9th Cir. 2021) (rejecting argument that "[i]f Fitbit had performed the research and development, internal studies and testing that it claimed to have done," management "would have been aware of the technological issues . . . in real time" as too generic to support core operations); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *18 (N.D. Cal. July 21, 2020) ("generalized access to sales reports" insufficient).  This case is again not like

*Funko*, where the court credited Plaintiff's arguments that the scope of the projects at issue—including involving "approximately 80%" of company's U.S. products, a project personally overseen by the COO, and overall inventory management that Defendants "admitted" was "critical" to the business—could lead a reasonable trier of fact to conclude it would be absurd to believe the executives did not know about the alleged issues. 166 F.4th at 831-33. Plaintiff does not (nor can it) allege that the European markets were that central to Enphase's business. Nor can they allege that the allegedly structural problems were so endemic: as plaintiff has pled, before Q3 2023, Enphase had experienced multiple consecutive quarters of growth in Europe, growth that continued during the class period and even after the 2023 demand pullback—the first slowdown observed in two years. Mot. at 2-4. Against the backdrop of these strong (and unchallenged) financial results, Plaintiff falls short of adequately alleging that it would be absurd for Defendants not to have known their optimism for the EU business was unfounded.

Because core operations is Plaintiff's only basis for alleging scienter against Belur, Opp. at 22 n.24, the claims against him must be dismissed. Plaintiff's reliance on an off-hand reference by Kothandaraman to "Enphase's senior leadership['s]" access to "market intelligence," *id.*, fails because "general identifications" of unnamed "management" are "improper" under the PSLRA. *Dalarne Partners, Ltd. v. Sync Rsch., Inc.*, 103 F. Supp. 2d 1209, 1213 (C.D. Cal. 2000).

### 3. The Competing Nonfraudulent Inference Is Far More Compelling Than Plaintiff's Story of Fraud

Finally, Plaintiff offers no plausible fraud theory more compelling than the nonfraudulent inference that Defendants kept investors informed of EU market conditions, including strong growth and a demand pullback. Mot. at 23-24; *see Bodri*, 252 F. Supp. 3d at 933. Plaintiff claims that waning European demand "would have eviscerated Enphase's value proposition and . . . their European growth story would have collapsed." Opp. at 23. But this manufactured narrative "does not make a whole lot of sense." *Nguyen*, 962 F.3d at 415. Putting aside that Plaintiff ignores Enphase's EU revenue growth, both in 2023 and even after the demand pullback was initially observed, Plaintiff's theory depends "on the supposition that defendants would rather keep the stock price high for a time and then face the inevitable fallout once" the alleged problem was

revealed. *Id.* But that theory is implausible given no "defendants had sought to profit from this scheme in the interim." *Id.* "The more plausible inference" is that "defendants made promising statements . . . but then modulated their optimism" after learning new information. *Id.* at 419; *Sona*, 562 F. Supp. 3d at 728 (rejecting "unreasonable inference that Defendants sought for some unspecified reason to inflate stock prices by withholding bad information it later released at specific times in pursuit of some unspecified strategy to accrue some unspecified benefit"); *City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*, 2024 WL 235183, at \*16 (N.D. Cal. Jan. 22, 2024) (crediting "plausible, nonculpable explanation" that defendants "were trying to provide open and regular communication to their shareholders during uncertain economic times"). Defendants' updates to investors amid evolving market conditions in Europe do not give rise to an inference of fraud.

### C.    Plaintiff Fails to Plead Loss Causation

Plaintiff still has not identified what "truth" about any Challenged Statement the alleged corrective disclosures actually revealed. Plaintiff argues all it must do is provide "some indication of the loss and the causal connection that the plaintiff has in mind." Opp. at 23. But Plaintiff must "show a 'causal connection' between the fraud and the loss by tracing the loss back to 'the very facts about which the defendant lied.'" *Mineworkers Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018). It fails to do so. Mot. at 25.

Plaintiff cites *First Solar* for the proposition that missed financial guidance alone can establish loss causation even absent a revelation of fraud. Opp. at 24. But *First Solar* merely acknowledged that plaintiffs can establish loss causation if they "show[] that the stock price fell upon the revelation of an earnings miss" when the miss itself resulted from "the very facts misrepresented." 881 F.3d at 753-54. The "causal connection" standard does not dispense with the requirement that something new must be *revealed* to the market. *Menora Mivtachim Ins. Ltd. v. Meta Platforms, Inc.*, 2026 WL 508834, at \*1 (9th Cir. Feb. 24, 2026). And pointing simply to missed financial guidance or lowered go-forward guidance, without tethering those results to the revelation of the "truth" of the Challenged Statements, is insufficient. *Dolly v. GitLab Inc.*, 2025 WL 2372965, at \*3, 15 (N.D. Cal. Aug. 14, 2025) ("lower-than-expected guidance" that "said

nothing to suggest improprieties" about "prior statements, much less . . . reveal a fraud" insufficient). Here, Defendants disclosed "softening in demand" and a "substantial demand reduction in Europe," Opp. at 6, 24, but that the observed pullback was due to changed circumstances observed for the first time in two years. Mot. at 15; Ex. 5 at 5. Intervening events do not mean prior optimistic statements were false. *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043 1071 (C.D. Cal. 2012) ("The fact that the company modified its public stance does not necessarily demonstrate that the optimistic statements were false").

Nor can Plaintiff plead loss causation by citing updated go-forward guidance. Mot. at 25. Plaintiff argues that in October 2023 and October 2024, Enphase "blamed the guidance reductions on already existing problems." Opp. at 24-25. But estimating the future impact of newly observed demand issues does not make prior statements false. In October 2023, for instance, Enphase explained the "situation ha[d] dramatically changed from the last quarter." Mot. at 3. This disclosure described "changed economic circumstances" not an "earlier misrepresentation." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005).

Plaintiff also identifies no new information disclosed in October 2024 that had not already been disclosed. *Fitbit*, 2020 WL 1465932, at *12 (rejecting additional "corrective disclosure" where "Defendants had already disclosed the flattening demand" that impacted financial results). Plaintiff claims Enphase's October 2024 results were impacted by "structural issues" (namely, Chinese competition) based on one third-party analyst's opinion. Opp. at 25 (citing ¶ 120). But *Enphase* made no such disclosure; it referenced slower demand in Europe with hope that it was temporary in October 2024, just as in October 2023. ¶ 116; *In re Nektar Therapeutics*, 2020 WL 3962004, at *18 (N.D. Cal. July 13, 2020) ("If every analyst . . . opinion based on already-public information could form the basis for a corrective disclosure, then every investor who suffers a loss in the financial markets could sue . . . using an analyst's negative analysis of public filings as a corrective disclosure."); *Curry v. Yelp, Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017) ("market speculation about fraud, without more, is insufficient to plead loss causation"); Mot. at 25.

## III.    CONCLUSION

Defendants respectfully request the Court grant Defendants' Motion with prejudice.

DATED: March 27, 2026

**LATHAM & WATKINS LLP**

_/s/ Colleen C. Smith_

Colleen C. Smith (SBN 231216)
Katherine E. Bruce (SBN 361220)
Anastasia Pyrinis (SBN 352395)
12670 High Bluff Drive
San Diego, California 92130
T: (858) 523-5400
Email: colleen.smith@lw.com
Email: kathy.bruce@lw.com
Email: anastasia.pyrinis@lw.com

Daniel R. Gherardi (SBN 317771)
140 Scott Drive
Menlo Park, California 94025
T: (650) 328-4600
Email:  daniel.gherardi@lw.com

Thomas J. Giblin (_pro hac vice_)
1271 Avenue of the Americas
New York, NY 10020
T: (212) 906-1200
Email:  thomas.giblin@lw.com

_Attorneys for Defendants Enphase Energy,
Inc., Badrinarayanan Kothandaraman, and
Raghuveer Belur_

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 4:24-CV-09038-JST

16